## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HARRY T. NUCKOLS,**       ) | |
| ) | |
| **Plaintiff,**     ) | |
| ) | |
| **v.**     ) | **Civil Action No. 07-1181 (RJL)** |
| ) | |
| **FEDERAL BUREAU OF PRISONS, et al.**    ) | |
| ) | |
| **Defendants.**     ) | |
| ) | |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR TO TRANSFER

Defendants, Federal Bureau of Prisons ("BOP") and Harley Lappin, Director, Federal Bureau of Prisons, by and through undersigned counsel, respectfully move this Court to dismiss plaintiff's claim for lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(1), (b)(3) and (b)(6). In the alternative, defendants move for summary judgment because there is no genuine issue as to any material fact, and the defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Should the Court deny defendants' motions, defendants request that the Court transfer this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a), because transfer would promote the interests of justice and the Court there would be a more convenient forum.

In support of this motion, Defendants respectfully refer the Court to the accompanying memorandum of points and authorities and Statement of Material Facts As to Which There Is No Genuine Dispute. A proposed Order consistent with this Motion is attached hereto.

Plaintiff, who is proceeding pro se, is hereby advised that failure to respond to this motion may result in the district court granting the motion. See Fox v. Strickland, 837 F.2d 507,

509 (D.C. Cir. 1988). Plaintiff should also take notice that any factual assertions contained in the affidavits and other attachments in support of defendants' motion may be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendants' attachments. See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Respectfully submitted,


 /s/
JEFFERY A. TAYLOR, D.C. Bar # 498610
United States Attorney


 /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


 /s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **HARRY T. NUCKOLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1181 (RJL)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

Defendants, Federal Bureau of Prisons ("BOP") and Harley Lappin, Director, Federal Bureau of Prisons, submit this Statement of Material Facts As To Which There Is No Genuine Dispute in accordance with Local Rule 7(h).

1. Plaintiff brings this action pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701. See Complaint, Plaintiff's Memorandum of Law ("Cmplt. Memo.") at 1.

2. Plaintiff is incarcerated in a Federal Correctional Institution in Fairton, New Jersey ("FCI-Fairton").[1] See Complaint ("Cmplt"), Declaration of Harry T. Nuckols ("Nuckols Dec.") at 1.

3. On February 2, 2006, Plaintiff submitted a request to the FCI-Fairton Drug Program Coordinator requesting that a determination be made regarding whether he is eligible for the Residential Drug Abuse Program ("RDAP"). See Cmplt. Memo. at 4.

---

[1]On April 11, 2005, in the United States District Court for the District of Vermont, Plaintiff pleaded guilty to manufacturing marijuana and possession of a firearm after having been convicted of a previous felony. See Cmplt. Memo. at 6-7. Plaintiff was sentenced to 75 months of incarceration, followed by four years of supervised release. Id. at 7. Plaintiff has a release date of January 24, 2011. See Response to Request for Administrative Remedy ("Exhibit A").

4.   That request was denied because such eligibility determinations are made when an inmate is within thirty-six months of his projected release date.  See id.

5.   On December 27, 2006, Plaintiff submitted a Request for Administrative Remedy to the FCI-Fairton Warden's Office.  See Request for Administrative Remedy ("Exhibit B").

6.  On January 3, 2007, the Warden's Office at FCI-Fairton denied Plaintiff's Request. See Exhibit A.

7.   On January 8, 2007, Plaintiff submitted a Regional Administrative Remedy Appeal to BOP's Northeast Regional Office.  See Regional Administrative Remedy Appeal ("Exhibit C").

8.  On February 5, 2007, the Regional Office denied Plaintiff's appeal.  See Response to Plaintiff's Regional Administrative Remedy Appeal ("Exhibit D").

9.  On February 10, 2007, Plaintiff submitted a Central Office Administrative Remedy Appeal to BOP Central Office.  See Central Office Administrative Remedy Appeal ("Exhibit E").

10.  On April 19, 2007, the Central Office denied Plaintiff's appeal.  See Response to Central Office Administrative Remedy Appeal ("Exhibit F").

11.   Plaintiff contends that BOP's failure to interview him for placement in the RDAP was in violation of BOP Program Statement § 5330.10, Section 2.3.1.  See Cmplt. at 1.

12.   On June 29, 2007, Plaintiff filed the instant Complaint requesting an order from the Court compelling the BOP to conduct an eligibility interview.  See Cmplt. at 3.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. Bar # 4998610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| HARRY T. NUCKOLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1181 (RJL) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR TO TRANSFER

### I. FACTS

Defendant hereby incorporates its Statement of Material Facts Not in Genuine Dispute, filed together with this memorandum.

### II. LEGAL STANDARDS

#### A. Motion to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) "presents a threshold challenge to the court's jurisdiction." Gardner v. U.S., No. 96-1467, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001) (quoting, Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987)); see also 4 Wright & Miller: Federal Prac. & Proc. § 1350 (R12)(2002 Supplement)(". . . subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.") A court may resolve a motion to dismiss brought pursuant to Rule

12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. Herbert v. Nat'l Acad. of Science, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id.; see also Cureton v. United States Marshal Serv., 322 F. Supp.2d 23, 2004 WL 1435124, *2 (D.D.C. June 28, 2004).

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is appropriate if it "appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle [him] to relief." Conley v. Gibson, 355 U.S. 41, 45-46, (1957); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000). See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). The Court must treat the Complaint's factual allegations as true, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993), and must grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979). However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions." Akintomide v. United States, 99-MS-0055, 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); See Equal Employment Opportunity Comm'n. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## B.    Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one

that would change the outcome of the litigation.  Id. at 247.  "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence

of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting

Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

        Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid

summary judgment, the plaintiff must present some objective evidence that would enable the

court to find he is entitled to relief.  In Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), the

Supreme Court held that, in responding to a proper motion for summary judgment, the party who

bears the burden of proof on an issue at trial must "make a sufficient showing on an essential

element of [his] case" to establish a genuine dispute.

        In Anderson the Supreme Court explained under what circumstances summary judgment

is appropriate:

                If the evidence is merely colorable, . . . or is not significantly
                probative, . . . summary judgment may be granted . . . [T]he mere
                existence of a scintilla of evidence in support of the Plaintiff's
                position will be insufficient; there must be evidence on which the
                jury could reasonably find for the Plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir.  1987)

(the non-moving party is "required to provide evidence that would permit a reasonable jury to

find" in its favor).  In Celotex, the Supreme Court further instructed that the "[s]ummary

judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an

integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III. ARGUMENT

### A. Relitigation of this Matter is Precluded by the Doctrine of Res Judicata.

The doctrine of <u>res judicata</u> was designed to prevent "repetitious litigation involving the same causes of action or the same issues." <u>I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.</u>, 723 F.2d 944 (D.C. Cir. 1983). The doctrine is divided into two distinct parts. The first is issue preclusion, also known as collateral estoppel, which provides that "a judgment on the merits in a prior suit precludes subsequent relitigation of issues actually litigated and determined in the prior suit, regardless of whether the subsequent suit is based on the same cause of action." <u>Id</u>. The second is claim preclusion which provides that "a final judgment on the merits in a prior suit involving the same parties or their privies bars subsequent suits based on the same cause of action." <u>Id</u>.

Pursuant to 18 U.S.C. § 3621(b), the BOP "shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addition or abuse." "[E]very prisoner with a substance abuse problem [shall] have the opportunity to participate in appropriate substance abuse treatment. . . ." 18 U.S.C. § 3621(e)(1).

In the instant matter, on February 2, 2006, Plaintiff submitted a request to the BOP to make a determination of his eligibility for subsequent placement in a Residential Drug Abuse Program ("RDAP"). According to BOP Program Statement 5330.10, Section 5.3.3, "[a]ll inmates applying for admission to residential treatment . . . must be interviewed . . . ." 28 C.F.R. § 550.56. <u>See</u> Exhibit G (Program Statement 5330.10, Chapter 5, Residential Drug Abuse

4

Treatment Programs).  In order to be considered eligible for placement in a RDAP:

> (1) The inmate must have a verifiable documented drug abuse problem . . .
> (2) The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program . . . .
> (3) The inmate must sign an agreement acknowledging his/her program responsibility . . .
> (4) Ordinarily, the inmate must be within thirty-six months of release.  Inmates are selected for admission to residential programs based upon the time remaining on their sentence. . .
> (5) The security level of the residential program institution must be appropriate for the inmate.

28 C.F.R. § 550.56; BOP Program Statement 5330.10, Section 5.4.1 (Program Procedures, Eligibility)(emphasis added).  See Exhibit G.[2]  Because Plaintiff submitted his request for an eligibility determination on February 2, 2006, and his scheduled release date was January 24, 2011, his request was not within thirty-six months of his release.  Therefore, his request for an eligibility determination was denied.

Plaintiff argues that the BOP should have not have followed BOP Program Statement 5330.10, Section 5.4.1.  Rather, it but should have followed Section 2.3.1, of the same program statement which states that "[o]nce an inmate requests residential drug abuse treatment programming, the drug abuse staff shall determine the inmate's eligibility for the program."  See Exhibit H, Program Statement 5330.10, Chapter 2, Orientation, Screening and Referral.  Plaintiff contends that the use of the word "shall" in Section 2.3.1 imposes a "discretionless obligation" upon BOP staff to conduct an eligibility interview when an inmate requests it.  Cmplt Memo. at 7.  In addition, Plaintiff argues that because the thirty-six-month time requirement of Section

---

[2]As an incentive for prisoners who seek treatment, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year . . . ."  18 U.S.C. § 3621(e)(2)(B).

5

5.4.1 does not appear in Section 2.3.1, the BOP did not "intend[] to base an eligibility determination upon the time remaining on an inmate['s] sentence[, but upon the timing of his request]." Cmplt. Memo. at 9.

In <u>Nuckols v. Schultz</u>, however, Plaintiff previously challenged the same decision of the BOP which denied Plaintiff's request that the BOP "conduct a determination as to whether [he was] eligible to participate in the residential drug treatment program . . . ." No. 07-2319, 2007 WL 1723409, at *1 (D.N.J. June 8, 2007). <u>See</u> Memorandum in Support of Harry T. Nuckols['] Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, at 4 ("Exhibit I"). In that matter, plaintiff styled his complaint as a <u>habeas</u> <u>corpus</u> petition under 28 U.S.C. § 2241. Plaintiff argued that "the BOP's reliance on the term 'ordinarily' [in Section 5.4.1(4) which sets forth the eligibility determination at thirty-six months before release] to deny [his] immediate evaluation as to his eligibility to [a] RDAP . . . violated [his] rights[.]" <u>Id</u>.

The District Court for the District of New Jersey found that Plaintiff's claim was "unripe and may never ripen[,]" because the only violation Plaintiff allegedly suffered was "his need to wait for BOP's determination" until he was within thirty-six months of his release date. <u>Id</u>. at 3-4. There was no denial of an eligibility interview. Rather, that interview was merely postponed. <u>See</u> <u>id</u>. at 2. Therefore, Plaintiff lacked standing to bring the action.

Importantly, the Court also stated that, even if Plaintiff had standing, Plaintiff's "[p]etition would still be subject to dismissal on the merits." <u>Id</u>. The Court stated:

> the language used by BOP appears to mean exactly what it says: (a) ordinarily, inmates must be within 36 months of release to be interviewed for admission to the RDAP, and (b) the BOP retains discretion to administer RDAP interviews and reach RDAP determinations at an earlier stages (sic) of confinement, for example, in extraordinary cases or for any other reason which the BOP deems sufficient.

6

<u>Id</u>.  The Court determined that BOP's application of Program Statement 5330.10 to Plaintiff was reasonable, and should not be disturbed.  <u>Id</u>.  Hence, the Court held that plaintiff's "substantive argument [was] without merit, [and] his Petition . . . was dismissed . . . " <u>Id</u>. at 5.

Pursuant to the rule of issue preclusion or collateral estoppel, the judgment on the merits in the District Court for the District of New Jersey bars relitigation of the same issue in the instant lawsuit.  Although Plaintiff filed the action in New Jersey as a <u>habeas corpus</u> petition, the same issue was litigated in that suit as that raised in the instant Complaint - - whether the BOP properly denied Plaintiff's request for an immediate eligibility determination for a RDAP.   The District Court in New Jersey considered the matter on the merits and dismissed the suit. Therefore, this Court cannot relitigate the matter, and Plaintiff's claim here is barred.  <u>See</u> <u>Milton S. Kronheim & Co. v. District of Columbia</u>, 91 F.3d 193, 197 (D.C. Cir. 1996); Fed. R. Civ. P. 12(b)(1).

## B.  <u>Plaintiff's Claim Under the Administrative Procedures Act Must Fail.</u>

Plaintiff argues that the plain language of Section 2.3.1, "clearly makes the time for an eligibility determination predicated on the time an inmate requests residential drug abuse treatment programming.'" Cmplt. Memo. at 9 (internal quotation marks omitted).  Plaintiff, therefore, states that BOP's reliance upon the language of Section 5.4.1, calling for an inmate to be within thirty-six months of release before an eligibility determination can be made, "is arbitrary, capricious and manifestly contrary to [law under the APA] . . . ." <u>Id</u>. at 14.[3]   Plaintiff

---

[3]Plaintiff refers to the determinations to be made in Section 2.3.1 as "pre-enrollment eligibility decisions." Cmplt. Memo. at 12.  He refers to the determinations to be made in Section 5.4.1 as "intermediate eligibility decisions."  <u>Id</u>.  However, Plaintiff has invented these terms.  These terms do not exist in Program Statement 5330.10.  Section 2.3.1 (Eligibility Determination) outlines the steps that must be used to determine eligibility, (e.g. complete

is incorrect.

1.  Judicial Review of BOP Decisions Regarding Participation in RDAP is Precluded Under 18 U.S.C. § 3625.

Title 18, United States Code, Section 3625 precludes the court from reviewing programming decisions under the APA.  Specifically, Section 3625 states that:

> [t]he provisions of sections 554 and 555 and 701 through 706 of Title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.

Decisions concerning eligibility in the RDAP, and the timing of eligibility interviews for that program, fall within the purview of 18 U.S.C. § 3625.  See Richmond v. Scibana, 387 F.3d 602, 605 (7th Cir. 2004)("A placement decision itself is not open to challenge under the APA"); Fristoe v. Thompson, 144 F.3d 627, 630-631 (10th Cir. 1998)(noting that § 3625 precludes review of the BOP's substantive decision in an individual case); Landry v. Hawk-Sawyer, 123 F.Supp.2d 17, 19 (D.D.C. 2000)(same); Tanner v. BOP, 433 F. Supp.117, 122, n. 5 (D.D.C. 2006) (noting that "the APA is inapplicable to matters of imprisonment").  Therefore, BOP's decision to deny Plaintiff's request for an eligibility interview until he reaches thirty-six months prior to his release date is not reviewable by the court.

2.  Even if Plaintiff's APA Claim Were Viable, the Agency's Decision Should Not Be Set Aside.

a) Standard of Review

Under the Administrative Procedures Act ("APA"), the court shall set aside an agency

---

Residential Eligibility Interview, substantiate inmate's self-disclosed abuse history, determine if inmate's offense qualifies him for early release consideration, determine inmates eligibility for early release based on previous criminal convictions, ensure inmate signs appropriate treatment agreement), while Section 5.4.1 (Eligibility) outlines the eligibility requirements.

action that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Am. Pub. Commc'ns Council v. FCC, 215 F.3d 51, 55 (D.C. Cir. 2000).  When reviewing an agency action, "the court must afford deference to the agency decision and may not substitute its judgment for that of the agency.  See Ethyl Corp. v. EPA, 541 F.2d 1, 34 (D.C. Cir. 1976); see also Wright v. United States, 164 F.3d 267, 268-69 (5th Cir. 1999) (affirming an agency rights determination); Arizona Pub. Serv. Co. v. United States, 742 F.2d 644, 649 (D.C. Cir. 1984).  The scope of the court's deferential review under the arbitrary and capricious standard is "'searching and careful,' but 'the ultimate standard of review is a narrow one.'"  Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989) (quoting  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).  Moreover, the court affords its "greatest deference" to the agency when the agency exercises "special competence" in the subject matter delegated to its regulation.  Am. Ship Bldg. Co. v. NLRB, 380 U.S. 300, 316 (1965).  Because the ultimate standard of review is highly deferential, to uphold an agency action the court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the court] would have reached . . . ."  Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp., 461 U.S. 402, 422 (1983).  Indeed, the arbitrary and capricious standard presumes the agency action to be valid and the burden is on the plaintiff to overcome that presumption.  Md. Nat. Capital Park & Planning Comm'n v. Lynn, 514 F.2d 829, 834 (D.C. Cir. 1975).

In addition, in determining whether the agency's action was arbitrary and capricious, the court must evaluate "whether the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made."  Jifry v. FAA, 370 F.3d 1174,

9

1180 (D.C. Cir. 2004).  Courts have considered several factors relevant in making this

determination.  For example, an agency action is arbitrary and capricious if the agency: relied on

factors not intended to be considered, failed to consider an important aspect of the problem,

explained its decision in a manner that contradicts the evidence, or reached a conclusion so

implausible that it cannot be explained by a difference in view or the product of agency expertise.

See Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463

U.S. 29, 43 (1983).

Importantly, under the APA, for "[a] court [to have] subject-matter jurisdiction to review

an agency action . . . the agency action [must] be final."  See 5 U.S.C. § 704 ("Final agency

action for which there is no other adequate remedy in a court [is] subject to judicial review").

San Juan Audubon Soc'y v. Veneman, 153 F.Supp.2d 1, 4-5 (D.D.C. 2001).  In determining

whether agency action is final, the Court must determine "whether the agency has 'impose[d] an

obligation, denie[d] a right, or fixe[d] some legal relationship . . . .'"  Bannum, Inc. v. Sawyer,

251 F.Supp.2d 7, 11 (D.D.C. 2003).  The District of Columbia Circuit Court has determined that

agency action is final if it is

> definitive and has a direct and immediate . . . effect on the day-to-day business of
> the parties challenging the action.  Final agency action mark[s] the consummation
> of the agency's decisionmaking process and is one by which rights or obligations
> have been determined, or from which legal consequences flow.

Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n, 324 F.3d 726, 731

(D.C. Cir. 2003)(internal quotation marks and citations omitted).  To be final "the process of

administrative decisionmaking [must have] reached a stage where judicial review will not disrupt

the orderly process of adjudication."  Starchild v. Fed. Bureau of Prisons, No. 89-3255, 1990 WL

204689, *1 (D.D.C. Nov. 30, 1990)(citations omitted).  "It must mark the consummation of the agency's decision-making process, not be merely interlocutory in nature . . . ."  Gem County Mosquito Abatement Dist. v. EPA, 398 F.Supp.2d 1 (D.D.C. 2005).

b.  Plaintiff's Claim is Not Ripe for Review Under the APA.

Plaintiff's request for a RDAP eligibility interview was denied because he was not within thirty-six months of his release date.  Importantly, Plaintiff was not determined to be ineligible for a RDAP eligibility interview.  Rather, Plaintiff was required to wait until he was within thirty-six months of his release date - - January 24, 2008 - - before the interview would be conducted.

As a result of the denial, Plaintiff availed himself of BOP's administrative remedy procedures and appealed.  See Exhibit B (Request for Administrative Remedy); Exhibit C (Regional Administrative Remedy Appeal); Exhibit D (Central Office Administrative Remedy Appeal.  In response to each appeal, Plaintiff was informed that inmates must be within thirty-six months of release to be considered for RDAP participation.  Indeed, in response to the Administrative Remedy Appeal Plaintiff filed with BOP's Central Office, he specifically was informed that: "eligibilities for the RDAP and early release under the provisions of 18 U.S.C. § 3621(e) have not been officially determined to date.  Such determinations will be made when [plaintiff is] within 36 months of [his] projected release date."  See Exhibit F (Response to Central Office Administrative Remedy Appeal).

Plaintiff completed the stages of the administrative process.  However, because his eligibility to participate in the RDAP has not been determined, but merely postponed until thirty-six months before his release date, the denial of an eligibility determination at this point cannot

11

fairly be determined to "mark the consummation of the agency's decision-making process."
Gem County Mosquito Abatement Dist., 398 F.Supp.2d at 1.  Moreover, by postponing the time
in which Plaintiff will be granted an eligibility interview, the BOP has not "'impose[d] an
obligation, denie[d] a right, or fixe[d] some legal relationship . . . .'"  Bannum, Inc. v. Sawyer,
251 F.Supp.2d at 11.  Cf. Nuckols, 2007 WL 1723409, at *3 (the need to wait for a determination
does not constitute a violation of one's constitutional rights.)(internal quotation marks omitted);
Venegas v. Henman, 126 F.3d 760, 765 (5th Cir.1997) ("The loss of the mere opportunity to be
considered for discretionary early release [under § 3621(e)(2)(B)] is too speculative to constitute
a deprivation of a constitutionally protected liberty interest.").  Rather, within a mere three
months, when plaintiff is within thirty-six months of his release date, such rights can be
determined.  Assuming that review under the APA is available for such decisions (which it is
not), if Plaintiff is otherwise eligible, denied an eligibility interview, and properly exhausts his
administrative remedies, at that time Plaintiff's claim could be ripe for review.

     3.  BOP's Decision Was Not Arbitrary or Capricious, an Abuse of Discretion,
        or Otherwise Contrary to Law.

     Plaintiff argues that "[n]o where (sic) in the plain text of the procedures for eligibility
determinations does a time requirement appear to make plain that the Bureau intended to base an
eligibility determination upon the time remaining on a (sic) inmates (sic) sentence.  Id.
Therefore, he argues the BOP "violated it's (sic) duty" by denying him an eligibility interview
upon his request.  See Cmplt. Memo. at 4.

     When courts review legal challenges to an agency's interpretation of its authorizing
statute, they must use the two-part test adopted by the Supreme Court in Chevron, USA, Inc. v.

Natural Res. Defendant. Counsel, Inc., 467 U.S. 837, 842-43 (1984).  Under the first part of this test, the court must determine whether Congress has directly spoken to the precise question at issue. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id.

Under second part of the test, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  Id. at 843.  In reviewing an agency's interpretation of its authority under a statute it administers, the court will uphold that interpretation as long as it is a reasonable interpretation of the statute.  See EPA v. Nat'l Crushed Stone Ass'n, 449 U.S. 64, 83 (1980)("When construing statutes, we show 'great deference to the interpretation given the statute by the officers or agency charged with its administration.'"); Vill. of Bergen v. FERC, 33 F.3d 1385, 1389 (D.C. Cir. 1994).

Ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion.  Filling these gaps involves difficult policy choices that agencies are better equipped to make than courts.  Chevron, 467 U.S. at 865-866.  If a statute is ambiguous, and if the implementing agency's construction is reasonable, Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation.  Id. at 843-844.

a)  First Step of the Chevron Test

Congress enacted 18  U.S.C. § 3621(e) to provide "every inmate with a substance abuse problem . . . [with] the opportunity to participate in appropriate substance abuse treatment."  18

U.S.C. § 3621(e).  While the statute defines the term"eligible inmates," see §3621(e)(5)(B), it

does not set forth when, during the incarceration, the eligibility interview should occur.  Because

the statute does not address the precise question at issue, one must proceed to the second part of

the Chevron test.

b) Second Step of the Chevron Test

Program Statement Section 5.4.1 states that to be determined eligible for placement in the

RDAP, "[o]rdinarily the inmate must be within thirty-six months of release."  28 C.F.R. §

550.56(a)(4).   Program Statement Section 2.3.1 states that "[o]nce an inmate requests residential

drug abuse treatment programming, the drug abuse treatment staff shall determine the inmate's

eligibility for the program."  Therefore, one may argue, that the intent of the Program Statements

is ambiguous.  However, if statutes are "ambiguous with respect to [a] specific issue, the . . .

court [must determine if] . . . the agency's answer is based on a permissible construction of the

statute."  Chevron, 467 U.S. at 843.

In reviewing an agency's interpretation of its authority under a statute it administers, the

court must grant great deference to the agency's interpretation and uphold that interpretation as

long as it is reasonable.  See Nat'l Crushed Stone Ass'n, 449 U.S. at 83; Vill. of Bergen, 33 F.3d

at 1389.  In addition, to the extent that Congress left a gap in the statutes to be filled, BOP is

better equipped to make policy choices and its interpretation is entitled to deference.  Lopez v.

Davis, 531 U.S. 230, 231 (2001)("To the extent Congress left a gap in § 3621(e)(2)(B) for the

BOP to fill, . . . deference is owed the BOP's interpretation under Chevron . . . so long as the

interpretation is a permissible construction of the statute.")(citing Chevron, 467 U.S. at 843-845,

866).

14

Here, BOP regulations clearly state that "[i]nmates are selected for admission to residential programs based upon the time remaining on their sentence."  28 C.F.R. § 550.56(a)(4); Program Statement Section 5.4.1.  In addition, the BOP has interpreted its Program Statements to mean that an inmate must be within thirty-six months of his release date before he may granted an eligibility interview for placement in a RDAP.  In light of the explicit language of Section 5.4.1, the BOP's interpretation is reasonable and based upon a permissible construction of the statute.  See Nuckols, 2007 WL 1723409, at *4 ("[T]he language used by BOP appears to mean exact what it says: . . . ordinarily, inmates must be within 36 months of release to be interviewed for admission to the RDAP.").  Rust v. Sullivan, 500 U.S. 173, 184 (1981)(an agency's statutory construction will not be disturbed if it "reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' express intent.")  The Court must grant great deference to that interpretation, and Plaintiff's claim should be dismissed.[4]  See Fed. R. Civ. P. 12(b)(6).

    4.  In Light of Policy Considerations, BOP's Interpretation of the Statute Was Reasonable.

    a)  BOP's Residential Drug Abuse Program

According to 18 U.S.C. § 3621(b), the BOP "shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance

---

[4]In the unpublished opinion of Norwood v. Stine, No. 06-144, 2006 WL 1207712, *5 (E.D. Ky, May 3, 2006), the court stated:

> a simple reading to the provisions of Program Statement 5330.10 reveals that it does not address when a request for eligibility determination is to be made, but describes who is eligible to participate in the RDAP.  The scope of Chapter 2 was not to set out a timetable but to instruct staff on deciding which requests may be granted.  It is silent as to the proper time of events in the process described therein.

15

addiction or abuse." Subject to the availability of appropriations, [the BOP shall] provide

residential substance abuse treatment (and make arrangements for appropriate aftercare) . . . ."

18 U.S.C. § 3621(e). To be eligible for a residential drug abuse treatment program the inmate

must meet all of the eligibility requirements. See 28 C.F. R. § 550.56; Program Statement

5330.10, Section 5.4.1.

When an inmate is determined to be eligible and enters the program, he must successfully

complete:

> 1 - the unit-based residential program (six to twelve months);
> 2 - the institution transition phase (twelve months); and
> 3 - the community transitional services at a Community
> Corrections Center or home confinement (six months).

See Program Statement 5330.10, 5.2.1 (Program Components).

The residential program stage is followed by a transitional drug treatment phase because:

> [r]esearch and experience demonstrate that treatment upon the
> inmate's release to the community is a critical component of
> effective substance abuse treatment. Successful transitional service
> programs require a systemic community transition procedure which
> includes effective transfer/sharing of information between the
> institution and the community.

Program Statement 5330.10, Section 7.1 (Transitional Services). The transitional phase is

followed by a transfer to a Community Corrections Center (half way house), or to home

confinement, so inmates can participate in a community based treatment program. Program

Statement 5330.10, Section 7.3 (Transition to a Community Corrections Center).

b) BOP's Policy Considerations

The BOP has promulgated policies which are consistent with Congressional intent to

provide residential substance abuse treatment to qualified inmates. See 18 U.S.C. § 3621(e).

16

The stages of the drug treatment program are synchronized to maximize the success of the program. The behaviors taught in the program are reinforced as the inmate enters the community, and the value of participating in the RDAP program is at its highest when the inmate is closest to release. See Nuckols, 2007 WL 1723409, at * 5, n.12. Because the program requirements necessitate that an inmate enter the program close to his release date, the BOP has interpreted its regulations to require that an inmate's eligibility for participation in the drug abuse treatment program be determined within thirty-six months of release.

This interpretation of the regulations is reasonable for several reasons. First, treatment immediately prior to an inmate's release maximizes the effectiveness of the treatment. Second, if there is a protracted delay before the inmate enters the RDAP, an inmate's behavior could render him ineligible for the program. For instance, criminal activity or poor discipline while in custody could extend the inmate's sentence and change his release date. Third, the existence of RDAP programs are subject to the availability of funding. Determining eligibility too early would be a misuse of resources and could present false hope to an inmate.

Despite the BOP's reasonable interpretation of its regulations, Plaintiff contends that regardless of the inmates' release date, eligibility determinations must be made immediately upon each inmate's request. Plaintiff claims his position is supported by the holdings in Engels v. Daniels, 459 F.Supp.2d 1053 (D.Or. 2006), Wade v. Daniels, 373 F.Supp.2d 1201 (D.Or. 2005) and Cort v. Crabtree, 113 F.2d 1081 (9th Cir. 1997)." Cmplt. Memo. at 13. Plaintiff's contention is incorrect, and each of these cases is easily distinguishable from the matter at hand.

In Engels, an "inmate filed a habeas corpus petition alleging that the [BOP] violated his constitutional rights by refusing to process his request to be placed in a drug and alcohol

17

treatment program (DAP)." 459 F.Supp.2d at 1053. The court determined that the inmate's right

had been violated, but did so because the inmate was within thirty-six months of his release date

when he applied for entry into the treatment program. Here, Plaintiff was not within thirty-six

months of his release date.

    In Wade, an inmate filed a habeas corpus petition alleging that the BOP

unconstitutionally denied him early release eligibility. 373 F.Supp.2d at 1201. The Court

granted the inmate's petition, but did so because the "prisoner was eligible for early release

incentive at the time he requested admission to [the] treatment program." Id. Specifically, after

the prisoner made a request for entry into the program, the BOP promulgated a regulation which

made him ineligible for early release. However, the Court determined that this interim regulation

was invalid. Therefore, "had BOP considered [the prisoner's] request in 1998, [he] should have

been accepted into the program." Id.

    In the matter at hand, however, Plaintiff has not been denied early release eligibility.

Rather, his eligibility interview for placement into a RDAP has been postponed. When Plaintiff

is within thirty-six months of his release date, his early release eligibility will be determined.

    Finally, in Cort, inmates who had been convicted of unarmed bank robbery filed habeas

petitions alleging that the BOP refused to allow them one-year sentence reductions upon their

completion of the substance abuse treatment program. 113 F.3d at 1081. The inmates had been

qualified for, and enrolled in, the treatment program. However, "[b]efore [they] had completed

the . . . program, the BOP altered its interpretation of what constituted a "nonviolent offense" for

purposes of 18 U.S.C. § 3621(e)(2)(B), and . . . informed [the inmates] that, because they were

convicted of bank robbery, they were no longer eligible for sentence reduction." Id. at 1082.

18

The Court held that BOP could not apply its "new interpretation of 18 U.S.C. § 3621(e)(2)(B)

retroactively, and [the inmates were] therefore eligible for discretionary sentence reduction." Id.

Here, Plaintiff's claim involves program eligibility. He has not qualified for, enrolled in,

or successfully completed a RDAP. Upon his qualification, enrollment and successful

completion, Plaintiff can be eligible for sentence reduction.[5]

**D. Plaintiff is Not Entitled to Injunctive Relief.**

The Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626(a)(1), puts substantial

limitations on the issuance of injunctive relief. Specifically, the PLRA provides that:

> [p]rospective relief in any civil action with respect to prison conditions shall
> extend no further than necessary to correct the violation of the Federal right of a
> particular plaintiff . . . The court shall not grant or approve any prospective relief
> unless the court finds that such relief is narrowly drawn, extends no further than
> necessary to correct the violation of the Federal right, and is the least intrusive
> means necessary to correct the violation of the Federal right.[6]

For purposes of the PLRA's prospective relief provisions, 'federal rights' are limited to those

rights created by federal law. See Thompson v. Gomez, 993 F.Supp. 749, 754-55

---

[5]Moreover, even if the APA applied, the inconsequential error of not interviewing him immediately upon his request was harmless. See 5 U.S.C. § 706; Gerber v. Babbitt, 146 F. Supp.2d 1, 4-5 (D.D.C. 2001) (procedural violation that clearly had no bearing on the substance of the decision reached was harmless) (citing 5 U.S.C. § 706; Steel Mfrs. Ass'n v. EPA, 27 F.3d 642, 649 (D.C. Cir. 1994); and Chemical Mfrs. Ass'n v. EPA, 870 F.2d 177, 202, clarified, 885 F.2d 253 (5th Cir. 1989)). Thus, even if Plaintiff should have been permitted an immediate eligibility interview, he still would not be selected for admission until he was within thirty-six months of his release date. Under Article III of the Constitution, the federal courts have jurisdiction only over cases or controversies, may not render advisory opinions and must, accordingly, assess whether it may afford meaningful relief. See McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of Judicial Conference of U.S., 264 F.3d 52, 55 (D.C. Cir. 2001).

[6]The Supreme Court has defined prison conditions as "any aspect of prison life." Porter v. Nussle, 534 U.S. 516 (2002).

(N.D.Cal.1997), rev'd on other grounds in Gilmore v. People of the State of Cal., 220 F.3d 987, 1005 (9th Cir. 2002).

Here, a determination of RDAP eligibility is not a right created by federal law. A fortiori the timing of the RDAP eligibility interview is not a right created by federal law. See Nuckols, 2007 WL 1723409, at *3 (the need to wait for a determination does not constitute a violation of one's constitutional rights)(internal quotation marks omitted). Therefore, Plaintiff is not entitled to injunctive relief.[7]

### E.  This Matter Should Be Transferred to the District of New Jersey.

Alternatively, if the Court determines that litigation of this matter is not precluded under the doctrine of res judicata, and decides that the other grounds explained above are insufficient to dismiss the case, this matter should be transferred to the District of New Jersey. Title 28, United States Code, Section 1391 (e) provides that:

> [a] civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity . . . may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

Title 28, United States Code, Section 1404(a) provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The District of Columbia Circuit in Starnes v. McGuire, set out a number of factors for a

---

[7]Moreover, court interference with the time of eligibility determinations would work an adverse impact on the function of the federal prison system to protect staff and inmates, and service the public interest.

District Court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside of the District of Columbia. 512 F.2d 918 (D.C. Cir. 1974) (en banc). The factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C. Starnes, 512 F.2d at 929-33.

These factors strongly support the appropriateness of transferring this case to New Jersey. Here, plaintiff is acting pro se. He presently is incarcerated in Fairton, New Jersey, and would have to be transferred to the District of Columbia for litigation of this matter. The witnesses and files related to the matter are located in Fairton, New Jersey. Given that the witnesses and files are located in New Jersey, there is no indication that resolution would be quicker if the matter were litigated in the District of Columbia. Moreover, the implementation of the policy at issue took place in New Jersey, and the case does not require the testimony of high-level administrators located in Washington, D.C. See Levitan v. U.S. Dep't of Justice, No. 03-1916, slip op. at 4 (D.D.C. Aug. 12, 2004)("Because the implementation of policy is at issue, and because that implementation took place [in the plaintiff's place of incarceration], venue is more appropriately laid [there]."); Meyer v. Fed. Bureau of Prisons, 9292 F.Supp. 10, 14 (D.D.C. 1996)(where alleged incident took place in Springfield, Missouri; defendant resides in Missouri as do other prison officials; there is no factual connection between the plaintiff's claim and Washington, D.C.; and plaintiff has not set forth any reason why Washington, D.C. is a more convenient venue for the case, transfer to the Western District of Missouri is in order.). Cf. Montgomery v. U.S., No. 97-2514, 1998 WL 1749286, at * 2 (D.D.C. June 16, 1998)(not an

abuse of discretion to transfer action challenging a BOP Program Statement to district where prisoner is incarcerated "where jurisdiction and venue would lie whether the case arises under the Administrative Procedure Act, 28 U .S.C. § 2241, or both.")(citing <u>In re Daves</u>, No. 98-8019, 1998 WL 1749249 (C.A.D.C., May 29, 1998).   Hence, it is clear that transfer, pursuant to § 1404(a) would preserve resources and serve the interests of justice.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, plaintiff's Complaint should be dismissed because plaintiff lacks subject matter jurisdiction and has failed to state a claim upon which relief may be granted. In the alternative, summary judgment should be granted in defendants' favor.  Should the Court deny defendants' motions, this matter should be transferred to the District of New Jersey.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant


Of Counsel:
Alma G. Lopez
Sarah Schuh
Assistant General Counsel
Litigation Branch
Office of General Counsel
Federal Bureau of Prisons
320 First Street, N.W.,
Washington, D.C.  20534

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on this ____ day of October, 2007, a copy of the foregoing

was sent by First-Class Mail, postage prepaid, to:


Harry T. Nuckols
Fed. Reg. No. 05521-082
FCI Fairton-Satellite Camp
P.O. Box 420
Fairton, New Jersey 08320


/s/_____
MARIAN L. BORUM
Assistant United States Attorney

24

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HARRY T. NUCKOLS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Civil Action No. 07-1181 (RJL)** |
| | ) |
| **FEDERAL BUREAU OF PRISONS, et al.** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## <u>ORDER</u>

This matter is before the Court on defendants' Motion to Dismiss.  Upon consideration of

this Motion and the entire record of this case, it is this _____ day of _____, 2007,

**ORDERED** that Defendants' Motion to Dismiss should be and hereby is GRANTED.

_____
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **HARRY T. NUCKOLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-1181 (RJL)** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>ORDER</u>

This matter is before the Court on defendants' Motion for Summary Judgment.  Upon

consideration of this Motion and the entire record of this case, it is this _____ day of

_____, 2007,

**ORDERED** that Defendants' Motion for Summary Judgment should be and hereby is

GRANTED.

_____
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HARRY T. NUCKOLS,<br><br>                              Plaintiff,<br><br>      v.<br><br>FEDERAL BUREAU OF PRISONS, et al.<br><br>                         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 07-1181 (RJL) |

**ORDER**

    This matter is before the Court on defendants' Motion to Transfer.  Upon consideration of this Motion and the entire record of this case, it is this _____ day of _____, 2007,

    **ORDERED** that Defendants' Motion to Transfer should be and hereby is GRANTED.

_____
UNITED STATES DISTRICT JUDGE

Copies to:

Marian L. Borum
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, DC 20530

Harry T. Nuckols
Fed. Reg. No. 05521-082
FCI Fairton-Satellite Camp
P.O. Box 420
Fairton, New Jersey 08320

# Harry T. Nuckols

## v.

# Federal Bureau of Prisons, et al.,
## Civil Action No. 07-1181 (RJL)

# Exhibit A

INMATE NAME: NUCKLES, HARRY
Register Number: 05521-082
Administrative Remedy Number: 437986-F1

## Part B - Response

This is in response to your request for an Administrative Remedy received on December 28, 2006. You express dissatisfaction that you have not yet been given a definitive answer as to whether you will receive a sentence reduction upon completion of the Residential Drug Abuse Program (RDAP). You request that this determination be made now.

A review of this matter found that your good conduct time release date is January 24, 2011. As you acknowledge already being informed, per policy (Program Statement 5330.10, <u>Drug Abuse Programs Manual, Inmate</u>), inmates must be within thirty-six months of release to be considered for RDAP participation. At that time, you would first be interviewed to assess whether you meet the admission criteria for the program. If you do qualify for RDAP, your eligibility for sentence reduction would then be evaluated. Both your current offense and past adult criminal conviction history would be reviewed for violence or other exclusionary offenses under the Director's discretion according to Program Statement 5162.04, <u>Categorization of Offenses</u> in making this determination. Should you wish to pursue residential drug treatment, you will need to submit a request to be interviewed for the program once you are within thirty-six months of release.

Accordingly, your appeal is denied. If you are dissatisfied with this response, you may appeal to the Regional Director, Northeast Regional Office, U.S. Customs House - 7th Floor, 2nd and Chestnut Streets, Philadelphia, PA 19106. Your appeal must be received in the Regional Office within 20 days from the date of this response.

_____
Paul M. Schultz, Warden

_____ 1-3-07 _____
Date

# Harry T. Nuckols

## v.

# Federal Bureau of Prisons, et al.,
## Civil Action No. 07-1181 (RJL)

# Exhibit B

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | NUCKOLS, HARRY T. | 05521-082 | CAMP | F.C.I. FAIRTON |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST**

Consistent with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), I submit this grievance seeking a definitive determination at this time as to whether, if I am admitted to the Bureau of Prisons Residential Drug Abuse Program (RDAP), I may receive up to a one-year sentence reduction upon successful completion of same. Assuming arguendo that I am eligible for RDAP and that I successfully complete the program, I would like to know if I will then be eligible for a reduction of sentence; and if not, why not.

For the past year, I have been seeking a definitive answer to to whether I may receive a sentence reduction upon the successful completion of RDAP, should I be admitted. My efforts began on February 2, 2006 via an inmate request form (a so-called "cop-out") addressed to Dr. Barbara Flaxington, the RDAP coordinator at F.C.I. Fairton. Dr. Flaxington replied that my "eligibility for the program and sentence reduction will be evaluated" once I am interviewed for eligibility for participation in RDAP within 36 months of my release (see Exhibit A).

| 12/27/06 | CONTINUED | *Harry Nuckols* |
|---|---|---|
| DATE | | SIGNATURE OF REQUESTER |

**Part B- RESPONSE**

JAN 1 0 2007

BOP REGIONAL COUNSEL
PHILADELPHIA

See attached (Darkins) response

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

SECOND COPY: RETURN TO INMATE          CASE NUMBER: 437926-F

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

| | |
|---|---|
| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

BP-229(13)
APRIL 1982

**REQUEST FOR ADMINISTRATIVE REMEDY**                Conintuation Page

Because this response was not satisfactory, I submitted a more formal comm-
unication to Dr. Flaxington seeking "a determination regarding my eligibility
for a sentence reduction" (see Exhibit B). This communication was circu-
lated to various parties within the B.O.P. Subseqeuntly, I received two
responses from Mr. Paul M. Schultz, Warden at F.C.I. Fairton, dated March 16,
2006 (see Exhibit C) and May 16, 2006 (see Exhibit D), essentially reiter-
ating Dr. Flaxington's response and deferring any assessment of whether I am
eligible for a sentence reduction until such time that I may be interviewed
for RDAP, which will not be until January 2008.

Because these responses are not satisfactory and I cannot obtain a defin-
itive answer regarding my potential eligibility (or ineligibility) for a
sentence reduction, I initiated an informal grievance (see Exhibit E). The
response which I received thereto was identical to previous responses and
is similarly unsatisfactory.

It is my understanding that my offense of conviction (felon in possession of
firearms in violation of 18 U.S.C. § 922(g)) and/or the sentencing enhance-
ment which I received in my Pre-Sentence Investigation Report (P.S.R.) (see
Exhibit F at 7, ¶¶ 25 and 26) may preclude me from receiving a post-RDAP
sentence reduction.

Such a finding by the B.O.P. would be contrary to the express findings and
recommendations of the U.S. District Court which sentenced me (see Exhibit G
at 22; at 24-25; see also Exhibit H at 2, ¶ 10(1) and at 4, ¶ 14). Such a
determination would also contravene holdings of the U.S. Court of Appeals
for the Third Circuit. See <u>United States v. Bowers</u>, 432 F.3d 518 (3rd Cir.
2005) (18 U.S.C. § 922(g) is not a violent crime for purposes of the bail
statute); <u>Royce v. Hahn</u>, 151 F.3d 116 (3rd Cir. 1998) (applying categorical
approach to 18 U.S.C. § 922(g) and holding offense not to be a crime of
violence); <u>Roussos v. Menifee</u>, 122 F.3d 159 (3rd Cir. 1997) (B.O.P. acted
arbitrarily in denying sentence reduction to inmate who completed drug pro-
gram based upon sentence enhancement for guns possessed in drug conspiracy
conviction). But see <u>Stiver v. Mako</u>, 130 F.3d 574 (3rd Cir. 1997) (inmate
properly denied sentence reduction after participation in drug program
because of prior convictions for specifically enumerated crimes of violence).

In an effort to learn whether I will be in a position to seek a sentence
reduction prospectively upon successful completion of RDAP; and to learn
whether the mandate of my sentencing court will be fulfilled, I submit this
grievance at this time.

DATED: 12/27/06                         _Harry Nuckols_
                                        HARRY NUCKOLS  #05521-082

## Harry T. Nuckols

## v.

## Federal Bureau of Prisons, et al.,
## Civil Action No. 07-1181 (RJL)

## Exhibit C

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: | NICKOLS,   HARRY T. | 05521-082 | CAMP | F.CII. FAIRTON |
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

This is an appeal of an unsatisfactory response to an inquiry directed to the Warden of F.C.I. Fairton **regarding** determination of eligibility for the B.O.P.'s Residential Drug Abuse Program (R.D.A.P.).

Consistent with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), I submit this grievance appeal seeking a definitive determination at this time as to whether, if I am admitted to the Bureau of Prisons Residential Drug Abuse Program, I may receive up to a one-year sentence reduction upon successful completion of same. Assuming arguendo that I am eligible for RDAP and that I successfully complete the program, I would like to know if I will then be eligible for a reduction of sentence; and if not, why not.

For the past year, I have been seeking a definitive answer as to whether I may receive a sentence reduction upon the successful completion of RDAP, should I be admitted. My efforts began on February 2, 2006 via an inmate request form (a so-called "cop-out") addressed to Dr. Barbara Flaxington, the RDAP coordinator at F.C.I. Fairton. Dr. Flaxington replied that my eligibility for the program

| _/9/07 | **CONTINUED** | Harry Nickols |
| DATE | | SIGNATURE OF REQUESTER |

**Part B - RESPONSE**

| | |
| DATE | REGIONAL DIRECTOR |

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE          CASE NUMBER: 437986-R2

---

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

| DATE | SIGNATURE, RECIPIENT OF REGIONAL APPEAL |

BP-229(13)

# Harry T. Nuckols

## v.

# Federal Bureau of Prisons, et al.,
## Civil Action No. 07-1181 (RJL)

# Exhibit D

**NUCKOLS, Harry**
Reg. No. 05521-082
Appeal No. 437986-R2
Page One

---

### Part B - Response

In your appeal, you state staff at FCI Fairton has refused to advise if you will be eligible for a reduction in your sentence without first determining your eligibility for admission to a Residential Drug Abuse Program (RDAP). You request an immediate evaluation of your status and to be told whether or not you would qualify for a sentence reduction upon successful completion of the RDAP.

A review of your appeal revealed that you have a good conduct time projected release date of January 2011. Pursuant to Program Statement 5330.10, <u>Drug Abuse Program Manual</u>, inmates must be within 36 months of release to be interviewed for admission to the RDAP. No determination can be made regarding your eligibility for a sentence reduction until it is decided whether or not you are appropriate for the RDAP. Once this determination is made, if you are not satisfied, you may appeal the decision by filing a new Request for Administrative Remedy with the Warden. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: February 5, 2007

D. SCOTT DODRILL
Regional Director

# Harry T. Nuckols

## v.

# Federal Bureau of Prisons, et al.,
## Civil Action No. 07-1181 (RJL)

# Exhibit E

Federal Bureau of Prisons

---

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: __NUCKOLS, HARRY T.__     __05521-032__     __CAMP__     __FCI FAIRTON__
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A—REASON FOR APPEAL**

This is an appeal of an unsatisfactory response to an appeal of the Regional Administrative Remedy Appeal wherein I requested the BOP to correct it's denial of my request to be interviewed regarding a determination of eligibility for the B.O.P.'s Residential Drug Abuse Program (RDAP). In the Regional Director's response dated February 5, 2007, he stated that "inmates must be within 36 months of release to be interviewed for admission to the RDAP." See Part B Response, at page one. "A review of your appeal revealed that you have a good conduct time projected release date of January 2011." Id. "Accordingly, your appeal is denied." Id. Petitioner now asserts that the BOP's use of Program Statement 5330.10, wherein a 36 month from release requirement for RDAP determination is contained to deny me an immediate evaluation for RDAP violates my right to consideration under [continued]

__2/10/07__
DATE

_Harry Nuckols_
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

**RECEIVED**

FEB 2 0 2007

Administrative Remedy Section
Federal Bureau of Prisons

---

DATE

FIRST COPY: WASHINGTON FILE COPY

GENERAL COUNSEL

CASE NUMBER: __437966-A1__

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL     BP-231(13)

CENTRAL OFFICE ADMINISTRATIVE REMEDY APPEAL                    Continuation Page


18 U.S.C. § 3621(e)(2)(B).  "BOP rules require an eligibility determination
to be made when a prisoner request admission into DAP, **and there are no re-
strictions on when that request can be made.**" WADE v. DANIELS, 373 F. Supp.2d
1201, 1202 (D.Or.2005) (emphasis added); McCOMB v. WAMBAUGH, 934 F.2d 474,
481 (3rd Cir. 1991)("[I]n any conflict between a statute and a reulation
purporting to implement the statutes provisions, the regulation must, of
course, give way."); RENO v. KORAY, 515 U.S. 50, 61 (1995)("Bureau of Prisons
Program Statement's entitled to less deference because not promulgated under
APA").

According to the case law cited above and the plain language of 18 U.S.C.
§ 3621(b) and (e)(2)(B), the regional response should be corrected and my
remedy granted in the interest of justice.  Therefore, I submit this
grievance appeal at this time.




DATED: 2/10/07                              _Harry Nuckols_____
                                           HARRY NUCKOLS    # 05521-082

# Harry T. Nuckols

## v.

# Federal Bureau of Prisons, et al.,
## Civil Action No. 07-1181 (RJL)

# Exhibit F

**Administrative Remedy No. 437986-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal in which you request to be interviewed for a determination
as to your eligibility for early release following successful
completion of the Residential Drug Abuse Program.

Program Statement 5330.10, <u>Drug Abuse Programs Manual, Inmate</u>,
stipulates an inmate must have a verifiable, documented drug or
alcohol abuse problem to be eligible for participation in the
Residential Drug Abuse Program (RDAP) and subsequent early
release incentive eligibility under 18 U.S.C. § 3621(e).  P.S.
5330.10 further stipulates that ordinarily, the inmate must be
within 36 months of release to be eligible for the RDAP.  Inmates
are selected for admission to residential programs based upon the
time remaining on their sentence.

Records indicate your current projected release date is
January 24, 2011, via Good Conduct Time release.  Your
eligibilities for the RDAP and early release under the provisions
of 18 U.S.C. § 3621(e) have not been officially determined to
date.  Such determinations will be made when you are within 36
months of your projected release date.  If you are not satisfied
with the written notification of the determination when issued,
you may initiate a Request for Administrative Remedy at your
local institution.

Based on the foregoing, your appeal is denied.


April 19, 2007
_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

# Harry T. Nuckols

## v.

# Federal Bureau of Prisons, et al.,
# Civil Action No. 07-1181 (RJL)

# Exhibit G

## CHAPTER 5

<u>RESIDENTIAL DRUG ABUSE TREATMENT PROGRAMS</u>

**5.1 [Institution residential drug abuse·treatment program §550.56. Residential drug abuse treatment is available at selected Bureau of Prisons institutions. It is a course of individual and group activities provided by a team of drug abuse treatment specialists and the drug abuse treatment coordinator in a treatment unit set apart from the general prison population, lasting a minimum of 500 hours over a six to twelve-month period. Inmates enrolled in a residential drug abuse treatment program shall be required to complete subsequent transitional services programming in a community-based program and/or in a Bureau institution.]**

\*    All participants must adhere to program rules, behave in a manner consistent with the program philosophy, and comply with Bureau of Prisons rules and regulations.         \*

### 5.2  <u>Program Structure</u>

\*    5.2.1  <u>Program Components</u>. The entire residential drug abuse treatment program in the Bureau consists of three components. Successful completion of the residential drug abuse program occurs when the inmate has successfully completed each of these three components:

    ■ the unit-based residential program lasting between six-to-12 months (minimum 500 hours);

    ■ the institution transition phase, which requires participation for a minimum of one hour a month over a period of 12 months after successfully completing the unit-based program (however, if an inmate is scheduled for a transfer to a community-based program before he or she can begin or complete the institution transitional services component, this component is not required); and

    ■ the community transitional services, lasting up to six months when the inmate is transferred to a community corrections center or to home confinement.        \*

\*    5.2.2  <u>Duration and Staffing</u>. Ordinarily, inmates can complete a residential treatment program in six-to-12 months through half-time participation in programming and half-time assignment to an institution work detail. All residential program participants must be housed in a separate drug treatment unit for a minimum of six months (defined as 180 days) and receive a minimum of 500 hours of drug abuse treatment. When limited time remaining on  \* a sentence precludes participation in a six-to-12 month program, the inmate shall be referred for non-residential drug abuse

treatment services.

   To provide the full course of treatment to all participants, it
is essential that a treatment staff to inmate ratio of 1:24 is
maintained at all times.  Treatment staff is defined as the drug
abuse treatment program coordinator and the Drug Abuse Treatment
Specialists assigned to the unit.

   5.2.3  <u>Locations</u>.  Residential Drug Abuse Treatment programs are
located at the following institutions:

| <u>Mid-Atlantic Region</u> | <u>North Central Region</u> |
|---|---|
| FPC-Alderson, WV | FCI-Englewood, CO |
| FCI-Butner, NC | USP-Leavenworth, KS |
| FMC-Lexington, KY | FCI-Oxford, WI |
| FCI-Milan, MI | FMC-Rochester, MN |
| FCI-Morgantown, WV | FPC-Yankton, SD |
| FPC Cumberland, MD | FCI-Florence, CO[1] |
| | |
| <u>Northeast Region</u> | <u>Southeast Region</u> |
| FPC-Allenwood, PA | USP-Atlanta, GA |
| FCI-Danbury, CT | FCI-Coleman-Low, FL[1] |
| FCI-Fairton, NJ | FCI-Marianna, FL |
| FCI-Fort Dix, NJ | FPC-Talladega, AL |
| FCI-McKean, PA | FCI-Tallahassee, FL |
| | |
| <u>South Central Region</u> | <u>Western Region</u> |
| FCI-Bastrop, TX | FPC-Dublin, CA |
| FPC-Bryan, TX | FCI-Dublin, CA |
| FCI-El Reno, OK | FCI-Lompoc, CA |
| FCI-La Tuna, TX | USP-Lompoc, CA |
| FCI-Seagoville, TX | FCI-Phoenix, AZ |
| FPC-Texarkana, TX◆ | FCI-Sheridan, OR |
| FCI-Three Rivers, TX | FPC-Sheridan, OR |
| FMC-Fort Worth, TX | FCI-Terminal Island, CA |

[1]  Programs activated in Fiscal Year 1996.

   5.2.4  <u>Program Proposals</u>.  Wardens who wish to develop a
residential drug abuse treatment program, or move an existing
residential program, must submit a written proposal through the
Regional Director to the Assistant Director, Correctional Programs
Division, Central Office.

5.3  <u>Program Elements</u>.  The following are considered to be the
minimum requirements for all Residential Drug Abuse Treatment
programs in the Bureau of Prisons:

   5.3.1  <u>Unit-based Housing</u>.  All residential drug abuse treatment
program participants must reside together in the same unit.  This
is critical to building a sense of community and cohesiveness
among participants and staff and promotes conformity and
compliance with program rules and philosophy.  The social and
physical environment of all residential treatment units should
reinforce program goals and objectives at all times.

All inmates living on the unit must be:

- participating in the program,
- waiting to begin participating in the program, or
- waiting to transfer out of the unit for reasons of
completion, expulsion, or withdrawal.

When space is available, inmates who have completed the unit-based component of the program may remain on the unit while in institutional transitional services.                                    *

5.3.2  <u>Treatment Phases</u>.  The Residential Treatment Program Handbook, (Volumes 1-5), specifies the required phases of treatment, the content of treatment modules, and required treatment services for at least 450 of the 500 required hours of programming.  The treatment regimen outlined in the Handbook is based on current research and practice in drug abuse treatment and is consistent with the Bureau's philosophy of treatment discussed above.  Optional programming offered should be consistent with and supportive of the goals, objectives, and substantive content of the Handbook.

*   5.3.3  <u>Assessment</u>.  All inmates applying for admission to residential treatment after October 31, 1994 must be interviewed using the <u>Residential Drug Abuse Program Eligibility Interview</u> prior to program acceptance.  Drug abuse treatment staff at residential programs will also use the <u>Residential Drug Abuse Treatment Planning Interview</u> as the foundation for treatment planning prior to the inmate's completion of the Orientation Phase of treatment (see 5.3.4 below).                                    *

5.3.4  <u>Treatment Plans</u>. A treatment plan must be completed on each inmate participant prior to completion of the Orientation Phase of treatment.

5.3.5  <u>Incentive Program</u>.  All residential treatment programs must offer an incentive program to enhance inmate participation in treatment (see Section 5.5 below for further discussion).

5.4  <u>Program Procedures</u>

5.4.1  **[a.  <u>Eligibility</u>. An inmate must meet all the following criteria to be eligible for the residential drug abuse treatment program.**

   **(1)  The inmate must have a verifiable documented drug abuse problem.]**  Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the <u>Residential Drug Abuse Program Eligibility Interview</u> followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information.  The inmate must meet the diagnostic criteria for substance abuse or dependence

indicated in the <u>Diagnostic and Statistical Manual of the Mental Disorders, Fourth Edition, (DSM - IV)</u>. This diagnostic impression must be reviewed and signed by a drug abuse treatment program coordinator.

Additionally, there must be verification in the Presentence Investigation (PSI) report or other similar documents in the central file which supports the diagnosis. Any written documentation in the inmate's central file which indicates that the inmate <u>used</u> the <u>same substance</u>, for which a diagnosis of abuse or dependence was made via the interview, shall be accepted as verification of a drug abuse problem.                                      *

When a positive urinalysis in the institution is the only documentation of substance use, the inmate shall be referred to drug education or non-residential treatment. While in drug education and/or non-residential drug abuse treatment services, the inmate shall be further observed and examined regarding

*    his/her substance use problem. If counseling indicates the need for more intensive treatment, the inmate may subsequently be referred to a residential drug program.                              *

**[(2)  The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program.**

**(3)  The inmate must sign an agreement acknowledging his/her program responsibility.]** (BP-S550.053 (Attachment B)).

*    **[(4)  Ordinarily, the inmate must be within thirty-six months of release.]** Inmates are selected for admission to residential programs based upon the time remaining on their sentence. Most inmates will complete residential drug abuse treatment, participate in institution transitional services (if time allows), and then transfer to a CCC. When a residential       * treatment program is not appropriate due to time constraints, staff may refer the inmate for the institution's non-residential drug treatment (see Chapter 4).

*    **[(5)  The security level of the residential program institution must be appropriate for the inmate.]** When it is necessary to transfer an inmate to a residential treatment program at another facility, and the security level of that institution is not consistent with the inmate's assigned security level, the drug abuse treatment program coordinator shall ask the unit team to submit a request for redesignation and application of a management variable for program participation to the appropriate Regional Designator. If the request is approved, the Regional Designator shall enter the appropriate management variable into SENTRY. When an inmate completes, fails, withdraws, or is expelled from the residential program, the drug abuse treatment program coordinator shall notify the unit team so

that appropriate action can be taken regarding movement or
transfer of the inmate (see Chapter 2, Section 2.3).                  *

**5.4.2  [b  <u>Application/Referral/Placement</u>.  Participation in the
residential drug abuse treatment program is voluntary.  An inmate
may be referred for treatment by unit or drug treatment staff or
apply for the program by submitting a request to a staff member
(ordinarily, a member of the inmate's unit team or the drug abuse
treatment coordinator).  The decision on placement is made by the
drug abuse treatment coordinator.]**

If an inmate is applying or being referred to a residential drug
abuse treatment program at another institution, see Chapter 2,
Section 2.3 for specific procedures.

**5.4.3  [c  <u>Completion</u>.  Completion of the residential drug abuse
treatment program requires attendance and participation in
scheduled individual and group activities and a passing grade on
examinations covering each separate subject module of the program.
An inmate who fails an examination on any subject module
ordinarily shall be allowed to retest one time.  A certificate of
achievement will be awarded to all who successfully complete the
program.  A copy of this certificate will be forwarded to the unit
team for placement in the inmate's central file.]**

*        <u>Module Testing Requirements</u>.  Testing will be conducted after
the completion of each module of the Drug Abuse Program Handbook.
A passing grade of 70 percent is required for each test before an
inmate may be considered a successful program completion.  Inmates
who do not pass the test shall be required to repeat the module
they fail prior to residential program graduation.

Modules may be repeated using a variety of methods,
including, but not limited to:

  ♦  self-study;
  ♦  tutoring by DAP staff or a graduate-mentor; or
  ♦  requiring the inmate to join a new cohort.

After the drug abuse treatment coordinator is satisfied the
inmate has had sufficient opportunity to repeat the module, the
inmate may take the module test again.                               *

**5.4.4  [d  <u>Withdrawal/Expulsion</u>.  (1) An inmate may withdraw
voluntarily from the program.]**  Withdrawals must be documented on
the Change in Drug Abuse Treatment Program Status Memorandum
(Attachment C) and forwarded to the unit team.  If the inmate was
previously determined eligible for early release, Attachment C
*    must also be forwarded to the Inmate Systems Manager to remove

# Harry T. Nuckols

## v.

# Federal Bureau of Prisons, et al.,
## Civil Action No. 07-1181 (RJL)

# Exhibit H

## CHAPTER 2

### ORIENTATION, SCREENING AND REFERRAL

2.1  **[Admission and Orientation Program § 550.52.  Drug abuse treatment coordinators at all institutions shall ensure that inmates are informed during the Admission and Orientation program about local and Bureau-wide drug abuse treatment programming and treatment opportunities.]**  This presentation should be made by a drug abuse treatment specialist, Drug Abuse Treatment Coordinator, or psychologist.  A videotape entitled "Choice and Change", which describes BOP drug abuse programs, has been distributed to all institutions and is recommended for use in this presentation.

2.2  **[Screening and Referral § 550.53.  A psychologist or drug abuse treatment specialist shall interview all new institution admissions for drug abuse problems.  A record review will be performed by a case manager in the normal course of his/her duties.  Based on these reviews and interviews, drug abuse treatment staff shall make an appropriate drug education/treatment referral.]**  The Drug Abuse Treatment Coordinator shall be responsible for ensuring that the screening procedures that follow are in place at all institutions.  The screening of each inmate shall have two operational components:

\*    a.  Unit staff shall determine whether an inmate meets any of the criteria for the required Drug Abuse Education course and enter the appropriate DRG I assignment within 30 days of the inmate's arrival at the institution to which he or she was designated initially.  Unit staff shall also conduct a new review for inmates returned as failures in a community-based program, and enter the appropriate DRG I assignment based on this updated review.  In this situation, inmates who receive a new DRG I RQ assignment upon return to an institution must repeat the drug abuse education course.

Unit team staff completion of a hard copy of the Drug Use Review/Referral Form (DURRF) is no longer required.  Unit team staff are now required to review the inmate central file documentation, apply the criteria described in Attachment A, and enter one of the four DRG I assignments directly into SENTRY.  Once entered, a DRG I assignment must always be a current SENTRY DRG assignment while the inmate is in Bureau custody (see section 9.4 for further clarification).

At all satellite and independent camps, the Warden may establish alternate local procedures to refer appropriate inmates for drug education/treatment.                                                          \*

b.  Ordinarily, when a screening is required, the interviewing psychologist shall screen each inmate for substance abuse problems.

The Drug Abuse Treatment Coordinator shall ensure that information from both the Central File review and the Psychology Screening operations are used to determine programming needs and recommendations for each inmate.  If the recommended program is available locally, inmates are to be referred accordingly and will be asked to sign an Agreement to Participate (BP-S550.053) in that particular program.

2.3  <u>Referral and Redesignation</u>.  In order to best manage the growing number of inmates requesting residential drug abuse treatment, the first priority shall be to consider the transfer of inmates within the same region whenever possible.  If the region where the sending institution is located does not have a drug program at an institution with the appropriate security level to accommodate an inmate's request for treatment, a management variable should be considered.  Appropriate waivers shall be obtained for this option.  Only after same-region redesignations have been examined and found to be inadequate, e.g. such as separatee issues, should a transfer between regions be considered.

The following procedures shall be used to refer and redesignate inmates to residential drug abuse treatment programs.

 2.3.1  <u>Eligibility Determination</u>.  Once an inmate requests residential drug abuse treatment programming, the drug abuse treatment staff shall determine the inmate's eligibility for the program.  Drug abuse treatment staff shall:

    (1)  complete the Residential Eligibility Interview;

    (2)  substantiate the inmate's self-disclosed drug history with documentation in the central file;

    (3)  coordinate with unit staff to determine if the inmate's instant offense qualifies him/her for early release consideration;

    (4)  determine the inmate's eligibility for early release based on previous criminal convictions; and if deemed eligible; and

    (5)  ensure the inmate signs the appropriate treatment agreement.

 2.3.2  <u>SENTRY Assignment</u>.  Having determined the inmate's eligibility for a residential drug abuse treatment program, the drug abuse treatment staff shall enter the appropriate SENTRY `DRG' assignment, documenting that the inmate is now in "waiting" status for a residential drug abuse treatment program and whether the inmate is eligible or ineligible for early release consideration (see Chapter 9 for specific SENTRY codes).

2.3.3  <u>Redesignation Priorities</u>.  When the inmate's Projected Release Date (PRD) is within 36 months, the unit team, at the drug abuse treatment staff's request, shall initiate a request for redesignation.  The institution's Coordinator shall monitor these inmates through the local `DAP WAIT' list, (by PRD).

2.3.4  <u>Security Level</u>.  The Regional Designator shall attempt to redesignate within his/her region according to security level.  If the region has more than one institution at the same security level with a residential drug abuse program, he/she shall try to rotate redesignations to distribute inmates evenly across programs.  In some circumstances, the Regional Designator may transfer an inmate to an institution that does not match his/her security level by applying a management variable.

2.3.5  <u>Inter-Regional Transfers</u>.  When an inmate is transferred outside the region, the Regional Designator may contact his/her Regional Coordinator.  When contacted, the Regional Coordinator shall assist the designator to determine where treatment slots are available at same-security institutions in other regions.  The "sending" Regional Coordinator may contact the "receiving" Regional Coordinator who shall assist to determine where an individual placement should be made.

2.3.6  <u>Monitoring</u>.  All Regional and Institution Coordinators shall monitor incoming transfers via SENTRY:

     e.g. SENTRY Code - DST EQ XXX + DRG EQ DAP WAIT,
                XXX = institution.

2.3.7  <u>Program Failure Redesignation</u>.  If an inmate is transferred to an institution for residential treatment and then fails to enter that program, is expelled from that program, or withdraws from that program, he/she shall be redesignated for return to the institution from which he/she was received.

# Harry T. Nuckols

# v.

# Federal Bureau of Prisons, et al.,
# Civil Action No. 07-1181 (RJL)

# Exhibit I

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

## FORM TO BE USED BY FEDERAL PRISONERS IN FILING A
## PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

HARRY T NUCKOLS Fed. No. 05521-082

_____ Petitioner,
FCI FAIRTON, Satellite Camp

P.O. BOX 420

Fairton, New Jersey 08320

**(Address or place of confinement and prison number.
Full name which you were convicted under.)**

RECEIVED

MAY 17 2007

M T. WALSH ——M
CLERK

vs.                                        Case No. _____

PAUL SCHULTZ, WARDEN

_____ **Respondent.**
FCI FAIRTON, Satellite Camp

P.O. BOX 280

FAIRTON, NEW JERSEY 08320

**(Name of Warden or other authorized person having
custody of petitioner.)**

## PLEASE COMPLETE THE FOLLOWING: (check appropriate number)

This petition concerns:

1.   a. _____ a conviction.

     b. _____ a sentence.

     c. _____ jail or prison conditions

     d. _____ prison discipline.

     e. _____ a parole problem.

     f.   The Residential Drug Program other.

Page 2

2.    Place of detention ___FCI Fairton-CAMP, P.O. 420, Fairton, New Jersey 08320

3.    Name and location of court which imposed sentence___U.S.D.C. for Vermont
      (Brattleboro), 204 Main Street, P.O. 339, Brattleboro Vt. 05302-0339

4.    The indictment number or numbers (if known) upon which, and the offense or
      offenses for which, sentence was imposed:

      (a) ___1:04-CR-139_____

      (b) _____

      (c) _____

5.    The date upon which sentence was imposed and the terms of the sentence:

      (a) ___August 16, 2005,sentenced to 75 month's(4 years supervised rel.)

      (b) ___See Petitioner's memorandum in support, at 6 - 7._____

      (c) _____

6.    Check whether a finding of guilty was made:

      (a) After a plea of guilty _____X_____

      (b) After a plea of not guilty _____

      (c) After a plea of nolo contendre _____

7.    If you were found guilty after a plea of not guilty, check whether that finding was
      made by:

      (a) a jury _____N/A_____

      (b) a judge _____N/A_____

8.    Did you appeal from the judgment of conviction or the imposition of sentence?

      _____(   ) Yes_____(  x ) No

Page 3

9.    If you appealed, give the following information for each appeal:

    a.    (1) Name of court _____ N/A _____

        (2) Result _____ N/A _____

        (3) Date of result _____ N/A _____

        (4) Citation or number of opinion _____ N/A _____

        (5) Grounds raised (list each)

            (a) _____ N/A _____

            (b) _____ N/A _____

            (c) _____ N/A _____

            (d) _____ N/A _____

    b.    (1) Name of court _____ N/A _____

        (2) Result _____ N/A _____

        (3) Date of result _____ N/A _____

        (4) Citation or number of opinion _____ N/A _____

        (5) Grounds raised (list each)

            (a) _____ N/A _____

            (b) _____ N/A _____

            (c) _____ N/A _____

            (d) _____ N/A _____

    CAUTION:    If you are attacking a sentence imposed under a federal judgment,
                you must first file a direct appeal or motion under 28 U.S.C. § 2255
                in the federal court which entered the judgment.

10.    State CONCISELY every ground on which you claim that you are being held
       unlawfully. Summarize briefly the facts supporting each ground. If necessary,
       attach a SINGLE page only behind this page.

    CAUTION:    If you fail to set forth all grounds in this petition, you may be barred
                from presenting additional grounds on a later date.

Page 4

10.   Continued

a.   Ground One   P.S. § 5330.10 Confers Upon The Bureau a duty to evaulaute

Petitioner's request for the Bureau to make an [See continuation page] ..

Supporting **FACTS**  (tell your story **BRIEFLY** without citing cases or law.)

CAUTION:   you must state facts not conclusions in support of your grounds.  A rule of
thumb to follow is – who did exactly what to violate your rights at what time
or place.

Warden Paul Schultz denied Petitioner's request for an eligibility

determination on January 03, 2007, which was a violation of my

right to due process. See Pet. Mem. in support, at 1 – 20.

b.   Ground Two   Respondent's construction of P.S. § 5330.10 violates

the object and policy of the plain language   [see continuation page]

Supporting **FACTS**  (tell your story **BRIEFLY** without citing cases or law.)

The Bureau relied on section 5.4.1(a)(4)(Chapter 5) of P.S.

§ 5330.10, to deny Petitioner an eligibilty determination which

was an erroneous interpretation of that section due to  section 5.4.1(a)(4)

read in context with the other sections of § 5330.10, provides the

opposite i.e., the Bureau can make the evaulation for admission into

RDAP without any time restrictions. See Mem. in support, at 13 – 20.

**Page 5**

10.    Continued

   c.    Ground Three _____ N/A _____

   Supporting **FACTS**  (tell your story **BRIEFLY** without citing cases or law.)

N/A

_____

_____

_____

_____

_____

_____

   d.    Ground Four _____ N/A _____

   Supporting **FACTS**  (tell your story **BRIEFLY** without citing cases or law.)

N/A

_____

_____

_____

_____

_____

_____

11.    Have you filed previous petitions for habeas corpus, motions under Section 2255
       of Title 28, United States Code, or any other applications, petitions, or motions
       with respect to this conviction?

              (    ) Yes              ( X ) No

Page 6

12.    If your answer to question number 11 was "yes," give the following information:

a.        (1)  Name of Court _____ N/A _____

           (2)  Nature of proceeding _____ N/A _____

           (3)  Grounds raised _____ N/A _____

           _____

           _____

           _____

           (4)  Result _____ N/A _____

           (5)  Date of result _____ N/A _____

           (6)  Citation or number of any written opinion or order entered pursuant to
                 each such disposition.
                                         N/A
           _____

b.        (1)  Name of Court _____ N/A _____

           (2)  Nature of proceeding _____ N/A _____

           (3)  Grounds raised _____ N/A _____

           _____

           _____

           _____

           (4)  Result _____ N/A _____

           (5)  Date of result _____ N/A _____

           (6)  Citation or number of any written opinion or order entered pursuant to
                 each such disposition.
                                         N/A
           _____

Page 7

13.    If you did not file a motion under Section 2255 of Title 28, United States Code, or
       if you filed such a motion and it was denied, state why your remedy by way of
       such motion is inadequate or ineffective to test the legality of your detention:

N/A

_____

_____

_____

_____

_____

_____

_____

_____

_____

14.    Are you presently represented by counsel?    (    ) Yes        ( X ) No

       If so, please give the name, address, and telephone number:    N/A

       _____

       Case name and court    N/A

       _____

15.    If you are seeking leave to proceed in forma pauperis, have you completed the
       declaration setting forth the required information:

       (    ) Yes            ( X ) No

Wherefore, petitioner prays that the court grant petitioner relief to which he may be
entitled in this proceeding.

Signed on this _15th_ day of _MAY_, _2007_

_____
Petitioner

Page 8

## DECLARATION

I, _HARRY T. Nuckols_____, declare under penalty of perjury that I have read and subscribe to the above and state that the information contained therein is true and correct to the best of my knowledge.

Executed _MAY. 15th, 2007_ at _FCI FAIRTON, SAtellite CAmp_
           (date)                         (place)

_Harry T. Nuckols_____
(Signature of Petitioner)

[Continuation page of page 4, #10(a)(GROUND ONE)]


eligibilty determination for access to the RDAP program. <u>See</u> Petitioner's
memorandum in support, at 1 - 12.


[Continuation page of page 4, #10(b)(GROUND TWO)]

explicated therein and the object and policy of 18 U.S.C. § 3621(e) as
a whole. <u>See</u> Id. at 12 - 20.

PETITIONER HARRY T. NUCKOLS

WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. 2241,
AND

AFFIDAVIT OF HARRY T. NUCKOLS IN SUPPORT
WITH ACCOMPANYING ATTACHMENTS.

TABLE OF CONTENTS

JURISDICTION...................................Pages 2 - 3.

INTRODUCTION...................................Pages 3 - 4.

EXHAUSTION OF REMEDIES........................Pages 4 - 5.

THE ISSUES PRESENTED..........................Pages 5 - 6.

STAEMENT OF FACTS.............................Pages 6 - 7.

**ARGUMENT**

    ISSUE I.

        THE B.O.P.'S DENIAL OF PETITIONER'S REQUEST
        FOR A DETERMINATION OF ELIGIBILITY FOR PLACE-
        MENT INTO THE RDAP PROGRAM WAS A VIOLATION
        OF ITS DUTY UNDER P.S. § 5330.10 AND IT'S
        DUTY TO EXERCISE AUTHORITY IN A MANNER
        CONSISTENT WITH CONGRESSIONAL INTENT.

..............................................Pages 7 - 12.


    ISSUE II.

        THE B.O.P.'S INTERPRETATION THAT P.S. § 5330.10
        ONLY CONTAIN ONE PHASE OF ELIGIBILTY DETERMIN-
        ATION PROCEDURE FOR THE RDAP PROGRAM IS
        ERRONEOUS, BECAUSE THE PROGRAM STATEMENT READ
        AS A WHOLE, CLEARLY PROVIDES FOR THREE PHASES
        i.e., PRE-ENROLLMENT, INTERMEDIATE REDISGNATION,
        AND FINAL SUCCESFUL COMPLETION ELIGIBILTY
        DETERMINATIONS.

..............................................Pages 13 - 18.

RULES AND STATUTES

P.S. § 5330.10 ...............................Passim

28 CFR § 550.50-60...........................Pages 8 n.1, 9,
19.

18 U.S.C. § 3621(b)................................Pages 5, 7, 20.

18 U.S.C. § 3621(e)(2)(B)..........................Pages 5, 8, 20.

18 U.S.C. § 3621(e)................................Pages 7, 8.

18 U.S.C. § 922(g)(1)..............................Page 6.

21 U.S.C. § 841(a)(1)..............................Page 6.

21 U.S.C. § 846....................................Page 6.

28 U.S.C. § 1746...................................Pages 21,22.

28 U.S.C. § 2241...................................Passim.

<u>CASES</u>

Ameria Corp. v. Venemen, 347 F.Supp.2d 225, 226 (M.D.N.C. 2004)...........................................Page 12.

American FarmLines v. Black Ball Freight Serv., 397 U.S. 532, 538-39 (1970)...................................Page 2.

Anderson v. Yungkau, 329 U.S. 482, 485 (1947) .................................................Page 11.

Board v. Trustees v. BES Servs. Inc., 469 F.3d 369, 372 (4th Cir. 2006)...................................Page 15.

Cort v. Crabtree, 113 F.3d 1081, 1085 (9th Cir. 1997) ...............................................Pages 3, 16.

Downey v. Crabtree, 100 F.3d 662, 666 (9th Cir. 1996) .................................................Page 8.

Engel v. Daniels, 459 F.Supp.2d 1053, 1054 (D.Or. 2006) .................................................Pages, 2, 11, 12,18.

Exportal Ltda. v. United States, 902 F.2d 45, 50 (D.C. Cir. 1990) .................................................Page 11.

(ii)

F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994)
................................................Page 9 n.2.

Fowler v. United States Parole Comm'n, 94 F.3d 835, 838
(32d Cir. 1996)...................................Page 6.

Goldstein v. S.E.C., 451 F.3d 873, 878 (D.C. Cir. 2006)
................................................Page 17.

Gose v. Postal Service, 451 F.3d 831, 836 (Fed. Cir. 2006)
................................................Page 18.

Haines v. Kerner, 404 U.S. 519, 520-21 (1972)
................................................Page 20.

Irwin v. Hawk, 40 F.3d 347, 349 n.2 (11th Cir. 1994)
................................................Page 5.

Mitchell v. Andrews, 235 F.Supp.2d 1085(2002)
................................................Page 17.

Olim v. Wakinekona, 461 U.S. 238, 249 (1983)
................................................Page 19.

Root v. New Liberty Hosp. Dist., 209 F.3d 1068, 1070
(8th Cir. 2000)...................................Page 11.

Simmat v. B.O.P., 413 F.3d 1225, 1236-38 (10th Cir. 2005)
................................................Page 5.

United States v. Boynton,63 F.3d 337, 342 (4th Cir. 1995)
................................................Page 12.

United States v. Heffner, 420 F.2d 809, 811 (4th Cir.
1969)..............................................Page 12.

United States v. Morgan, 193 F.3d 252, 267 (4th Cir.1999)
................................................Page 2.

United States v. Tupone, 442 F.3d 145, 150 (3rd Cir. 2006)
................................................Pages 10,
14.

U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,
508 U.S. 439, 455 (1993)..........................Page 9.

(iii)

Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 241
(3rd Cir. 2005)...................................Pages 3,
16.

CONCLUSION

...........................................Pages 18 - 19.

RELIEF SOUGHT

...........................................Page 20.

CERTIFICATION OF WRIT

...........................................Page 21.

CERTIFICATE OF SERVICE

...........................................Page 22.

ATTACHMENT LIST OF AFFIDAVIT

ATTACHMENT A ( ADMINISTRATIVE APPEAL-INSTITUTION with Exhibit's)

ATTACHMENT B ( ADMINISTRATIVE APPEAL-REGIONAL)

ATTACHMENT C (ADMINISTRATIVE APPEAL-CENTRAL OFFICE)

(iv)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                              )
                              )
                              )
HARRY T. NUCKOLS,             )
          Petitioner,         )
                              )
                              )
v.                            )        Civil No._____
                              )
PAUL SCHULTZ, WARDEN,         )
          Respondent.         )
                             /
```

MEMORANDUM IN SUPPORT OF HARRY T. NUCKOLS
PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241

COMES NOW, Petitioner Harry T. Nuckols, acting pro se, and hereby respectfully request this Honorable Court to issue an order pursuant to 28 U.S.C. § 2241, directing the above-referenced respondent to grant Petitioner's request for the Federal Bureau of Prisons (hereinafter "B.O.P." or "Bureau") to make an eligibility determination for his placement into the residential drug and alchohol treatment program (RDAP), in accordance with Program Statment § 5330.10, as that statute infers a duty on the Bureau to make such determination without any time restrictions.""BOP rules require an eligibilty deter-

-1-

mination to be made when a prisoner requests admission into
DAP, and there are no restrictions on when that request can
be made.'" ENGEL v. DANIELS, 459 F.Supp.2d 1053, 1054 (D.
Or. 2006)(quoting Wade v. Daniels, 373 F.Supp.2d 1201, 1203
(D. Or.2005)).

Petitioner asserts that he can demonstrate prejudice
resulting from the respondent's failure to comply with
P.S. § 5330.10, Chapter 2, section 2.3.1 (1997) and 18 U.S.C.
§ 3621(b), as the aforementioned were intended primarily to
"confer important procedural benifits upon individuals in the
face of otherwise unfettered discretion..." AMERICAN FARM LINES
v. BLACK BALL FREIGHT SERV., 397 U.S. 532, 538-39 (1970);
United States v. Morgan, 193 F.3d 252, 267 (4th Cir. 1999)
("Where an entire procedural framework, designed to insure fair
processing of an action affecting an individual is created
but then not followed by an agency, it can be deemed prejudi-
cial.").

## THE COURT HAS JURISDICTION OVER THIS HABEAS PURSUANT TO TITLE 28 U.S.C. § 2241

Petitioner asserts that the United States District
Court For the District of New Jersey has jurisdiction to ent-
ertain the instant matter because § 2241 allows a federal pri-
soner to challenge the 'execution" of his sentence in habeas.

"[F]ederal prisoners challenge some aspect of the
execution of their sentence, such as denial of
parole, may proceed under Section 2241.  This
difference arises from the fact that Section 2255,
which like Section 2241 confers habeas corpus
jurisdiction over petitions from federal prisoners,
is expressly limited to challenges to the validity
of the petitioner's sentence.  Thus, Section 2241
is the only statute that confers habeas jurisdiction
to hear the petition of a federal prisoner who is
challenging not the validity but the execution of
his sentence."

See WOODALL v. FEDERAL BUREAU OF PRISONS, 432 F.3d 235, 241

(3rd Cir. 2005)(quoting Coady v. Vaughn, 251 F.3d 480, 485

(3rd Cir. 2001)(footnote omitted and emphasis added); Cort v.

Crabtree, 113 F.3d 1081, 1085 (9th Cir. 1997)("A prisoner's

right to consideration  for early release is a valuable one

that we have not hesitated to protect.")(citation omitted)

(emphasis in original).

        In support of this habeas action, Petitioner asserts

the following:

                            INTRODUCTION


        Petitioner is a federal prisoner, currently confined

at Federal Correctional Institution-Fairton, Satellite Camp.

Before being transferred to FCI-Fairton, Petitioner had been

sentenced on August 16, 2005. by the Honorable Judge J. Garvan

Murtha, who recommended that the Bureau designate Petitioner

at a facility that will allow him to participate in a 500-hour

                               -3-

RDAP program. See Affidavit(of Harry T. Nuckols,-herein after Affidavit, at 1, ¶¶).

On February 2, 2006, Petitioner submitted a request for the Fairton Drug Program Coordinator,Ms. Barbra Flaxington, to determine Petitioner's eligibility for the residential drug abuse program in accord with P.S. § 5330.10, Chapter 2, section 2.3.1 (1997).   However, the Bureau rejected Petitioner's request finding that such determination can only be made within 36 months  of his projected release date. See Affidavit, at 2 , ¶ 2 ).

Petitioner avers that after the Court review the relevant Program Statement in its entirety, the Court should find that the Bureau has violated it's duty under 18 U.S.C. § 3621(b) and (e); and P.S. § 5330.10.

## EXHAUSTION OF REMEDIES

Petitioner, as mentioned above submitted a request to the B.O.P. for an interview to have determined whether he was eligible for admission into the RDAP program.  The request was denied. See Supra, this page.

Petitioner thereafter initiated and exhausted all of his available Administrative Remedies, as enumerated as

follows:

      A.    A December 6, 2006, Fairton Attempt at Informal Resolution Form. <u>See</u> Affidavit at 2, ¶3's sub ¶ A.

      B.    A December 27, 2006, BP-229(13)(Request for Administrative Remedy). <u>See</u> Id. at 2, ¶3's sub ¶ B.

      C.    A January 8, 2007, BP-230(13)(Request For Administrative Remedy-Regional). See Id. at 2, ¶3's sub ¶ C.

      D.    A February 10, 2007, BP-231(13)(Request for Central Office Administrative Remedy). <u>See</u> Id. at 2, ¶ 3's sub ¶ D.

Petitioner avers that he has exhausted all available administrative remedies regarding his right to have the B.O.P. make a determination whether he is eligible for the RDAP program under 18 U.S.C. § 3621(b),(e)(2)(B), in accordance with 28 CFR §§ 542.12 through 542.18. <u>See</u> <u>Simmat v. BOP</u>, 413 F.3d 1225, 1236-38 (10th Cir. 2005); <u>Irwin v. Hawk</u>, 40 F.3d 347, 349 n.2 (11th Cir. 1994). Therefore, this habeas corpus should be granted.

## THE ISSUES PRESENTED

1).    WHETHER PROGRAM STATEMENT § 5330.10, Chapter 2, Section 2.3.1, CONFERS UPON THE BUREAU A DUTY TO EVALUATE PETITIONER'S REQUEST FOR THE BUREAU TO MAKE A DETERMINATION OF HIS ELIGIBILITY FOR PLACEMENT IN THE RDAP PROGRAM WITHOUT ANY TIME RESTRICTIONS ?

2).    WHETHER THE B.O.P.'S INTERPRETATION OF THE TERM "SELECTED FOR ADMISSION" EXPLICATED IN P.S. § 5330.10, Chapter 5, Section 5.4.1(a)(4), AS ENCOMPASSING THE ELIGIBILITY DETERMINATION COMPONENTS SET FORTH IN Chapter 2, Section 2.3.1 (i.e. such interpretation cross reference the time restraint of the former into the latter), IS A PERMISSIBLE CONSTRUCTION OF THE STATUTE ?

## STATEMENT OF FACTS

### THE UNDERLYING OFFENSE

On September 23, 2004, a Federal Grand Jury in the United States District Court of Vermont (Burlington), returned a 1 count indictment charging Petitioner and co-defendant Robert R. Yost and others unkown to the Grand Jury to knowingly and intentionally distribute marijuana, a Schedule I Controlled Substance in violation of 21 U.S.C. 841(a)(1).

On November 18, 2004, a Federal Grand Jury in the United States District Court of Vermont (Brattleboro), returned a 4-count indictment against Petitioner, charging, to wit, that he conspired with Yost and others to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. § 846; a violation of 21 U.S.C. § 841(a)(1); and did knowingly and intentionally possess in and affecting Commerce firearms in violation of 18 U.S.C. § 922(g)(1); and, a count of Forfeiture pursuant to 21 U.S.C. § 853.

On April 11, 2005, Petitioner plead guilty to Counts

2 & 3 of the Superseeding Indictment, and agreed to the Forfeiture in Count 4.

On August 16, 2005, the District Court sentenced Petitioner to a prison term of 75 months on each count, to be served concurrently, to be followed by 4 years of Supervised Release.

## ARGUMENT

ISSUE I.

THE B.O.P.'S DENIAL OF PETITIONER'S REQUEST FOR A DETERMINATION OF ELIGIBILITY FOR PLACEMENT IN THE RDAP PROGRAM WAS A VIOLATION OF THE BUREAU'S DUTY UNDER P.S. § 5330.10, CHAPTER 2, 2.3.1 (1997) AND TITLE 18 U.S.C. §§ 3621(b) and (e).

On April 19, 2007, the Bureau denied Petitioner's appeal for the Bureau to change it's decision denying him an eligibility determination for placement in the RDAP program. See Affidavit at 2, ¶3's sub ¶ D. Relying on an interpretation of

-7-

P.S. § 5330.10, the respondent held that:

> "...per policy (<u>Program Statement 5330.10,</u>
> <u>Drug Abuse Programs Manual, Inmate</u>), inmates
> must be within thirty-six month's of release
> to be considered for RDAP participation. At
> that time, you would first be interviewed to
> assess whether you meet the admission criteria
> for the program. If you do qualify for RDAP,
> your eligibility for sentence reduction would
> then be evaluated. ... Should you wish to pur-
> sue residential drug treatment, you will need
> to submit a request to be interviewed for the
> program once you are within thirty-six months
> of release."

<u>See</u> Affidavit at 2, ¶ 3's sub ¶ D's Attachment C(Part B), at 1,
¶2.    Petitioner now challenges the validity of the Bureau's
construction of section 5.4.1(a)(4)(Chapter 5) of P.S. § 5330.10,
as cross referencing section 2.3.1(Chapter 2) of that same
program statement providing a time restriction for eligibility
determinations.    While some deference is accorded the B.O.P.
in interpreting the statutes that it is to administer, "[t]he
[Federal] courts... have responsibility to resolve issues of
statutory construction." <u>DOWNEY v. CRABTREE</u>, 100 F.3d 662,
666 (9th Cir. 1996).[1]

---

[1]

18 U.S.C. § 3621(e) provides "that every prisoner with a substance abuse
problem [shall] have the opportunity to participate in appropriate sub-
stance abuse treatment ...." In 1994, as an incentive for prisoners to
seek treatment, Congress made one-year sentence reductions available to
prisoners convicted of nonviolent offenses who successfully completed
the substance abuse treatment programs. 18 U.S.C. § 3621(e)(2)(B).
    Accordingly, the BOP promulgated regulation 28 C.F.R. § 550.50-60
(1995) and Program Statement 5330.10(1997).

-8-

It is an accepted rule of statutory construction that the Court look first to the plain language of the statute to determine its meaning. "The interpretation of any statute obviously begins with an analysis of the text itself." FOWLER v. U.S. PAROLE COMM'N, 94 F.3d 835, 838 (3rd Cir. 1996). In undertaking the task of statutory construction, the Court "must not be guided by a single sentence or member of a sentence," but instead must "look to the provisions of the whole law, and to its object and policy." U.S. NAT'L BANK OF OR. v. INDEP. INS. AGENTS OF AM., INC., 508 U.S. 439, 455 (1993)(internal citations omitted).

The overall statutory scheme of P.S. § 5330.10, reveals that the Bureau elected to omit a time requirement from its eligibility determination section of P.S. § 5330.10, which Petitioner asserts was a valid exercise of discretion because the regulations, see 28 C.F.R. § 550.56(a)(4)(1995), when enacted used the term ordinarily to confer that the time requirements were not mandatory. Id.[2]   Moreover,

---

[2]

The regulation reads: "Residential drug abuse treatment is available at selected Bureau of Prisons institutions."..."(a) Eligibility. An inmate must meet all of the following criteria to be eligible for the residential drug abuse treatment program." ..."(4) Ordinarily, the inmate must be within thirty-six months of release." 28 C.F.R. § 550.56(a)(4)(1995)(emphasis added). The word "ordinarily" is defined as (a): in the ordinary course of events:USUALLY (b): to the usual extent:modestly. See Websters Third International Dictionary unabridged (2002); F.D.I.C. v. Meyer, 510 U.S. 471, 476 (1994)("...we construe a statutory term in accordance with it's ordinary or natural meaning."). Thus, the policy's use of the term ordinarily instead of shall or must infers that the restrictions are not mandatory.

-9-

Petitioner avers that the respondents position is not
supported by the plain language of it's own policy. In
B.O.P. program statement § 5330.10, the policy states
that:

> "ONCE AN INMATE REQUESTS RESIDENTIAL DRUG ABUSE TREATMENT
> PROGRAMMING, THE DRUG ABUSE TREATMENT STAFF SHALL
> DETERMINE THE INMATE'S ELIGIBILITY FOR THE PROGRAM. DRUG
> ABUSE TREATMENT STAFF SHALL:
> > (1) Complete the Residential Eligibility Interview;
> > (2) substantiate the inmates self-disclosed drug history
> > with documentation in the central file;
> > (3) coordinate with unit staff to determine the inmates
> > instant offense qualifies him/her for early release
> > consideration;
> > (4) determine the inmate's eligibility for early release
> > based on previous criminal convictions; and if deemed
> > eligible; and
> > (5) ensure the inmate signs the appropriate treatment
> > agreement."

See P.S. § 5330.10, Chapter 2, Section 2.3.1(1997)(emphasis
added).  No where in the plain text of the component's for
eligibility determination does a time requirement appear to
make plain that the Bureau intended to base an eligibility
determination upon the time remaining on a prisoner's sent-
ence. See Id. at Chapter 2, Section 2.3.1;  See also
UNITED STATES v. TUPONE, 442 F.3d 145, 150 (3rd Cir. 2006)
("...'[w]here the language of the statute is clear ... the
text of the statute is the end of the matter.'")(quoting
Steele v. Blackman, 236 F.3d 130, 133 (3rd Cir. 2001).

    Contrary to the plain language of the policy the
respondent's now request the Court to embellish Section 2.3.1,
to include a time restriction which Petitioner asserts is a

-10-

violation of the cannon of statutory construction that court's
are obligated to refrain from embellishing rules and statutes
by inserting language that the legislative body "has opted to
omit." ROOT v. NEW LIBERTY HOSP. DIST., 209 F.3d 1068, 1070
(8th Cir. 2000)(citation omitted). Not only did the Bureau
omit a time restriction from the eligibility determination
section of P.S. 5330.10, to confer that there are no time
restrictions on when a request can be made, the Bureau on the
other hand, included the term shall in the plain language of
section 2.3.1 of Chapter 2, P.S. 5330.10 to make it mandatory
for the the drug abuse treatment staff to determine Petitioner's
eligibility once he so requested. See Supra, at 10; See also
Exportal Ltda. v. United States, 902 F.2d 45, 50 (D.C. Cir.
1990)("The word 'shall' generally indicates a command that
admits of no discretion on the part of the person instructed
to carry out the directive."); Anderson v. Yungkau, 329 U.S.
482, 485 (1947)("The word 'shall' is ordinarily 'The language
of command.'").

By its October 27, 2006, decision in Engel v. Daniels,
a United States District Court of Oregon(the only other court
to consider the validity of the Bureau's interpretation that a
time restriction applies to eligibility determinations under
P.S. § 5330.10), rejected. the Bureau's interpretation rea-

-11-

soning that the theory that P.S. § 5330.10 "permits a time
restriction is flatly contradicted by the rule itself. 459
F.Supp.2d 1053, 1054 (citing Wade v. Daniels, 373 F.Supp.
2d 1201, 1202 (D.Or.2005).    "BOP rules require an eligibil-
ity determination to be made when a prisoner requests admiss-
ion into DAP, and there are no restrictions on when that
requests can be made." WADE, at 1202; See also United States
v. Boynton, 63 F.3d 337, 342 (4th Cir. 1995)(Although an
agency's interpretation of its own regulations is entitled
to deference from the courts, the interpretation will not be
enforced if it is plainly erroneous or inconsistent with reg-
ulations language or the intent of the regulation as manifest
by the agency at the time of the regulation's promulgation.").

Petitioner now asserts that the Court should follow
the reasoning of the WADE decision and reject again the
Bureau's attempt to make restrictions when an eligibility
determination can be made under P.S. § 5330.10, because such
"[a]n agency of the government must scrupulously observe rules,
regulations, or procedures which it has established. When it
fails to do so, it's action cannot stand and courts will
strike it down." UNITED STATES v. HEFFNER, 420 F.2d 809, 811
(4th Cir. 1969); Ameria Corp. v. Veneman, 347 F.Supp.2d 225,
226 (M.D.N.C. 2004)(same).

ISSUE II.

THE PROGRAM STATEMENT § 5330.10, WHEN READ AS A
WHOLE, DEMONSTRATES THAT THE TIME RESTRICTIONS
SET FORTH IN SECTION 5.4.1(a)(4) of CHAPTER 5
ONLY ENCOMPASSES SECTION 2.3.3 of CHAPTER 2
(Referring to when the Bureau must initiate a
request for redisignation), THUS THE TERM
"SELECTED FOR ADMISSION"(section 5.4.1(a)(4))
CAN NOT BE DEFINED TO INCLUDE SECTION 2.3.1
INTERVIEW COMPONENTS.

The Respondent argues that B.O.P. Program statement
§ 5330.10 instructs Bureau personnel that they should not
consider an inmates request for a eligibility determination
for admission into the RDAP program until he or she is within
36 month's his projected good conduct time release date. See
Supra, at 8.    Petitioner asserts that respondents reliance
on section 5.4.1(a)(4) of Chapter 5(36 month restrictions) to
deny Petitioner a determination of eligibility is without merit
because that section under P.S. § 5330.10 only relates to the
procedures for redisgnation(selection for admission), which
is irrelevant to the determination of eligibility.    Again,
section 2.3.1 of Chapter 2, excludes any mention of a time
restriction in the  plain language of P.S. § 5330.10's

-13-

eligibility determination components. See Supra, at 10 - 11.
The only places in P.S. § 5330.10, where a time restriction
can be found are set forth in sections 2.3.3(chapter 2) and
5.4.1(a)(4)(Chapter 5).  "In matters of statutory interpre-
tation, the plain meaning of statutory language is often
illuminated by considering not only the particular statutory
language at issue, but also the structure of the section in
which the key language is found, the design of the statute
as a whole and its object...." UNITED STATES v. TUPONE, 442
F.3d 145, 151 (3rd Cir. 2006)(quoting United States v. Sch-
neider, 14 F.3d 876, 879 (3d Cir. 1994)(internal quotation
marks omitted).

        Significantly, Program Statement § 5330.10 reads
as follows:

> "Redesignation Priorities. When the inmate's Projected
> Release Date (PRD) is within 36 months, the unit team,
> at the drug abuse treatment staff's request, shall ini-
> tiate a request for redisignation.  The institution's
> Coordinator shall monitor these inmates through the
> local 'DAP WAIT' list, (by PRD)."

See P.S. § 5330.10, Chapter 2, page 2, Section 2.3.3 (1997)
(emphasis in original).

> "Ordinarily, the inmate must be within thirty-six months
> of release. Inmates are selected for admission to res-
> idential programs based upon the time remaining on their
> sentence."

See P.S. § 5330.10, Chapter 5, page 4, Section 5.4.1(a)(4)
(1997)(emphasis in original).   Both sections cited above have

-14-

in their plain language a 36 month time restriction, unlike the aforementioned section of 2.3.1(Chapter 2). Where an agency includes particular language in two sections of a program statement but omits it in another section of the same program statement(chapter 2), Petitioner avers that it should be generally presumed that the agency "acts intentionally and purposely in the disparate inclusion or exclusion." BOARD OF TRUSTEES v. BES SERVS. INC., 469 F.3d 369, 372 (4th Cir. 2006)(quoting INS v. Cardoza-Fonsesca, 480 U.S. 421, 432 (1987)(citations omitted). This is especially true when the disparate exclusion and inclusion are only lines away from each other. See P.S. § 5330.10, Chapter 2, Sections 2.3.1 and 2.3.3(1997).

On the other hand, the inclusion of a reference to Section 5.4.1(a)(4)(Chapter 5)'s 36 month time restrictions in Section 2.3.3(Chapter 2) strongly evinces that Section 5.4.1(a)(4)(selected for admission) procedures must be taken into account only during redisignation proceedings. Thus, if the District Court construes Section 2.3.3(Chapter 2) together with Section 5.4.1(a)(4)(Chapter 5), the court should find that the Bureau intended the terms "request for redisignation" and "selected for admission" to serve the same purpose. "[N]oting the 'fundamental principle of statutory construction...

-15-

that the meaning of a word cannot be determined in isolat-
ion, but must be drawn from the context it is used.'"
WOODALL v. FEDERAL BUREAU OF PRISONS, 432 F.3d 235, 245
(3rd Cir. 2005); United States v. Morton, 467 U.S. 822,
828 (1984)("[w]e do not construe statutory phrases in
isolation; we read statutes as a whole.").

        Petitioner's position is supported by the fact that
Congress when enacting 28 U.S.C. § 3621(b) and (e) intended
for prisoners to know there eligibility prior to enrollment
because "...some prisoner's may be willing to enroll, and
even to complete treatment, simply on the basis of a reason-
able expectation that they will be found eligible...."
CORT v. CRABTREE, 113 F.3d 1081, 1085 (9th Cir. 1997).
Indeed, an interpretation of § 3621(e) to suggest that the
Bureau of Prisons did not have the authority to render
eligibility decisions prior to inmates becoming within 36
months of their projective release dates "would hinder the
very purpose of the statute." Id. at 1085.  Thus, the Bureau's
ability to render: (1) pre-enrollment eligibility decisions
under Section 2.3.1(Chapter 2)(in order to enter the appropriate
SENTRY 'DRG" assignment, documenting that the inmate is now in
"waiting" status for a RDAP program and whether the inmate is
eligibile or ineligibile for early release, see Section 2.3.2
(SENTRY Assignment) of Chapter 2);(2) intermediate eligibility

-16-

decisions under Section 2.3.1(Chapter 2) and Section 5..4.1(a)(4) (Chapter 5)(upon request by the institution's drug staff in order for inmates to be selected for redisignation for admission into the RDAP program);and, (3) "...**final** eligibility decisions that are subject only to completition of the drug treatment program enables it to make more effective use of the program." CRABTREE, at 1085.(emphasis added).

Petitioner avers that the Court should follow the decision held in Crabtree, because it was found in accordance with the principle's of statutory construction that"statutes should be read in context... and the problems Congress sought to solve ... taken into account to determine whether Congress has forclosed the agency's interpretation." GOLDSTEIN v. S.E.C., 451 F.3d 873, 878 (D.C. Cir. 2006)(citing PDK Labs,Inc. v. DEA, 362 F.3d 786, 796 (D.C. Cir. 2004)("PDK I"))(internal quotation marks omitted).  Moreover, the Court should also find that Petitioner's right to consideration of his request for admission into the RDAP program was violated.  The "agency's interpretation of a statute that it is entrusted to administer is entitled to considerable weight unless it is arbitrary, capricious, or manifestly contrary to statute." MITCHELL v. ANDREWS, 235 F.Supp.2d 1085,____(2002).  Here, the Respondents interpretation is inconsistent with the letter and spirit of

-17-

Congress's intent under §§ 3621(b) and (e). See ENGEL
v. DANIELS, 459 F.Supp.2d 1053, 1054 (D.Or. 2006)("The
BOP retains discretion as to whether to grant a reduction
in an enrollee's sentence upon completion of the program,
but such discretion is irrelevant to the determination of
eligibility for the reduction upon the request of the
inmate for placement into DAP.")(citing Cort v. Crabtree,
113 F.3d 1081, 1085 (9th Cir. 1997))(emphasis in original).

Thus, the Respondents interpretation in the
instant matter is arbitrary, capricious and manifestly
contrary to the statute which cannot survive judicial
review. See GOSE v. POSTAL SERVICE, 451 F.3d 831, 836 (Fed.
Cir. 2006)("We have held that '[a]n abuse of discretion
occurs where the decision is based on an erroneous interp-
retation of the law...'")(quoting Lacauera v. Dudas, 441
F.3d 1380, 1383 (Fed. Cir. 2006))(internal quotations omitted).

## CONCLUSION

The District Court as a matter of statutory const-
ruction should find that the B.O.P.'s interpretation of
Program Statement § 5330.10, as requiring an inmate to be
within 36 month's of his or her projective release date in order

-18-

to have their request evaluated for an eligibility det-
termination) is inconsistent with the plain language of
P.S. § 5330.10(as a whole) and conflicts with Congress's
intent for every non-violent federal prisoner to recieve
an incentive to participate in the RDAP program as del-
ineated   in 18 U.S.C. 3621(e).   Thus, Petitioner has alleged
a cognizable claim in his habeas corpus because the Respondent
has violated Petitioner's statutory and due process rights
in denying him his entitlement to an incentive under the
statute.   Moreover, a program statment or "...or regulation
may create a protected liberty interest if it uses mandatory
language[3] to place a substantive limit on official discretion."
OLIM v. WAKINEKONA, 461 U.S. 238, 249 (1983).

-------------------------------------------

[3]
    See  P.S. § 5330.10, Chapter 2, page 2, Section 2.3.1(1997); See
also  28 C.F.R. §§ 550.52; § 550.53(1995).

RELIEF SOUGHT

Petitioner is seeking the following relief:

1). For the Court to construe Petitioner's habeas corpus
liberally in accordance with the Supreme Court case <u>Haines v.
Kerner</u>, 404 U.S. 519, 520-21 (1972); and,

2). An order from the Court compelling the Respondent to
evaluate Petitioner's request for placement in the RDAP pro-
gram and make a determination of his eligibility in accord
with P.S. § 5330.10, Chapter 2, page 2, Section 2.3.1 (1997)
and 18 U.S.C. § 3621(b),(e)(2)(B); and,

3). For the Court to take any further action that the Court
deems appropriate and just.

WHEREFORE, Petitioner prays that the Court will
grant him the relief that he is respectfully seeking, in
an expeditious manner.

Respectfully Submitted,

DATED: <u>MAY 15th, 2007</u>

_Harry F. Nichols_

## CERTIFICATION OF WRIT

I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief under Title 28 U.S.C. § 1746 (West. Revised Ed. 2005).

Executed On *May 15th*/2007

*Henry T. Chabola*

-21-

## CERTIFICATE OF SERVICE


This is to certify pursuant to Title 28 U.S.C. § 1746, that I have on this _15th_ day of May 2007, served a copy of the foregoing upon the below listed party by placing the same in the FCI Fairton Satellite Camp Institution prison mail box, addressed as follows:


        PAUL SCHULTZ, WARDEN
        FCI FAIRTON
        P.O. BOX 280
        FAIRTON, NEW JERSEY 08320


                        _Harry T. Chebote_
                        Petitioner, Pro Se.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|                              |     |                          |
|------------------------------|-----|--------------------------|
|                              | )   |                          |
|                              | )   |                          |
|                              | )   |                          |
| HARRY T. NUCKOLS,            | )   |                          |
|          Petitioner,         | )   | Affidavit                |
|                              | )   | Civil Action No._____  |
| v.                           | )   |                          |
|                              | )   |                          |
| PAUL SCHULTZ, WARDEN.        | )   |                          |
|          Respondent.         | )   |                          |
|                              | )   |                          |
|_____| /  |                          |

AFFIDAVIT OF HARRY T. NUCKOLS, IN
SUPPORT OF WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241

I, HARRY T. NUCKOLS, a Federal Prisoner, presntly
incarcerated at Federal Correctional Institution-Fairton,
Satellite Camp located at Fairton, New Jersey, 08320, hereby
aver under the penalty of perjury, and affirm that I am com-
pentent to testify to the matters stated herein, and wit.

1).    On August 16, 2005, I was sentenced by the Honorable
Judge J. Garvan Murtha, to a prison term of 75 months and
4 years of supervised release.  At sentencing Judge Murtha
recommended that the Bureau make available the 500-hour drug
program(residential) and all the incentives under 18 U.S.C.

§ 3621(e)(2)(B) and 28 CFR § 550.57.  Specifically, the

sentencing court stated:

"[THE COURT]:  I'll recommend that the Bureau of Prisons designate
the defendant to a facility that will allow him to
participate in a 500 Comprehensive drug and alcohol
treatment program and any early-release program which
is available to successful participants in such a
program."

See Attachment A's Exhibit G(sentencing hearing transcript of United States

v. Harry T. Nuckols, case number 1:04-CR-139, dated 8/16/05), at 24, ¶3,

lines 17-21.(emphasis added).

2).   On or about February 2, 2006, I submitted a request

for the Fairton Drug Program Coordinator, Ms. Barbra Flaxington,

to make an eligibility determination in my case i.e., a

decision on whether or not I could participate in the 500-hour

drug program and Incentive program set forth in 18 U.S.C.

§ 3621(e). See Attachment A's Exhibit's A - G.   However,

the Respondent rejected my request(reasoning that P.S.

§ 5330.10 precludes such evaluation until I was within 36

months of my projective release date.  See Attachment A's

Exhibit A(Disposition Section); See also Id.'s Exhibit's

C and D.

3).   I thereafter initiated and exhausted all of my

available Remedies, as enumerated as follows:

A.   A December 6, 2006, Fairton Attempt at Inf-
ormal Resolution Form, which contains a response
from Ms. B. Flaxington, id. at Attachment A's
Exhibit E;

-2-

B.   A December 27, 2006, BP-229(13) Request
for Administrative Remedy that was submitted
to Paul M. Schultz(Warden), and his response
in part B, id. at Attachment A, at 1;

C.   A January 8, 2007, BP-230(13) Request for
Regional Administrative Remedy(Appeal No.
437986-R2) that was submitted to D. Scott
Dodrill, Regional Director, and his response
in Part B, id. at Attachment B, at 1;

D.   A February 10, 2007, BP-231(13) Request
for Central Office Administrative Remedy Appeal
(appeal No. 437986-A1) that was submitted to
Harrell Watts, Administrator National Inmate
Appeals, and his response in Part B, id. at
Attachment C, at 1.

4).    Petitioner avers that he has exhausted all available
administrative remedies.

5).    That any and all other material facts, whether set-out
above or newly discoverd are not waived but are presented in
support of my writ of habeas corpus petition filed under

-3-

28 U.S.C. § 2241.

FURTHER AFFIANT SAYETH NO MORE         )
STATE OF NEW JERSEY                    )  SS
COUNTY OF CUMBERLAND
Executed On: _MAy / 15th /_ 2007. Signed By: _Harry T. Wuckols_
                                                    Affiant

    I _Harry T. Nuckols_ , declare pursuant to 28 U.S.C.
§ 1746, under the penalty of perjury that the foregoing is :
true and correct to the very best of my recollection, belief
and understanding.

Subscribed and Sworn to before me this _15_ Day of _MAy_
20_07_.

THOMAS R. LESOSKY
NOTARY PUBLIC
STATE OF NEW JERSEY
COMM. ID 2318068
MY COMMISSION EXPIRES AUG. 9, 2009

Notary Public

-4-

CERTIFICATE OF SERVICE

This is to certify pursuant to Title 28 U.S.C. § 1746, that I have on this _15th_ Day of May 2007, served a copy of the foregoing upon the below listed party by placing the same in the FCI Fairton Satellite Camp Institution prison mail box, addressed as follows:

PAUL SCHULTZ, WARDEN
FCI FAIRTON
P.O. BOX 280
FAIRTON, NEW JERSEY 08320

_____
Affiant, Pro Se

-5-

# Attachment



U.S. DEPARTMENT OF JUSTICE                    **REQUEST FOR ADMINISTRATIVE REMEDY**    **RECEIVED**
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | NUCKOLS, HARRY T. | 05521-082 | CAMP | FCI FAIRTON |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

Consistent with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), I submit this grievance seeking a definitive determination at this time as to whether, if I am admitted to the Bureau of Prisons Residential Drug Abuse Program (RDAP), I may receive up to a one-year sentence reduction upon successful completion of same. Assuming arguendo that I am eligible for RDAP and that I successfully complete the program, I would like to know if I will then be eligible for a reduction of sentence; and if not, why not.

For the past year, I have been seeking a definitive answer as to whether I may receive a sentence reduction upon the successful completion of RDAP, should I be admitted. My efforts began on February 2, 2006 via an inmate request form (a so-called "cop-out") addressed to Dr. Barbara Flaxington, the RDAP coordinator at F.C.I. Fairton. Dr. Flaxington replied that my "eligibility for the program and sentence reduction will be evaluated" once I am interviewed for eligibility for participation in RDAP within 36 months of my release (see Exhibit A).

**CONTINUED**

_12/27/06_
DATE                                                    _Harry Nuckols_
                                                        SIGNATURE OF REQUESTER

**Part B– RESPONSE**

See attached Warden's response

_____
DATE

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE

                                    WARDEN OR REGIONAL DIRECTOR

                                    CASE NUMBER: _43-7986-F1_

                                    CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____
DATE                                    RECIPIENT'S SIGNATURE (STAFF MEMBER)        BP-229(13)
                                                                                    APRIL 1982

INMATE NAME: NUCKLES, HARRY
Register Number: 05521-082
Administrative Remedy Number: 437986-F1

### Part B - Response

This is in response to your request for an Administrative Remedy
received on December 28, 2006. You express dissatisfaction that
you have not yet been given a definitive answer as to whether you
will receive a sentence reduction upon completion of the
Residential Drug Abuse Program (RDAP). You request that this
determination be made now.

A review of this matter found that your good conduct time release
date is January 24, 2011. As you acknowledge already being
informed, per policy (Program Statement 5330.10, <u>Drug Abuse
Programs Manual, Inmate</u>), inmates must be within thirty-six
months of release to be considered for RDAP participation. At
that time, you would first be interviewed to assess whether you
meet the admission criteria for the program. If you do qualify
for RDAP, your eligibility for sentence reduction would then be
evaluated. Both your current offense and past adult criminal
conviction history would be reviewed for violence or other
exclusionary offenses under the Director's discretion according
to Program Statement 5162.04, <u>Categorization of Offenses</u> in
making this determination. Should you wish to pursue residential
drug treatment, you will need to submit a request to be
interviewed for the program once you are within thirty-six months
of release.

Accordingly, your appeal is denied. If you are dissatisfied with
this response, you may appeal to the Regional Director, Northeast
Regional Office, U.S. Customs House - 7th Floor, 2nd and Chestnut
Streets, Philadelphia, PA 19106. Your appeal must be received in
the Regional Office within 20 days from the date of this
response.

_____                    _____1-3-07_____
Paul M. Schultz, Warden                     Date

INMATE NAME: NUCKLES, HARRY
Register Number: 05521-082
Administrative Remedy Number: 437986-F1

---

### Part B - Response

This is in response to your request for an Administrative Remedy received on December 28, 2006. You express dissatisfaction that you have not yet been given a definitive answer as to whether you will receive a sentence reduction upon completion of the Residential Drug Abuse Program (RDAP). You request that this determination be made now.

A review of this matter found that your good conduct time release date is January 24, 2011. As you acknowledge already being informed, per policy (Program Statement 5330.10, Drug Abuse Programs Manual, Inmate), inmates must be within thirty-six months of release to be considered for RDAP participation. At that time, you would first be interviewed to assess whether you meet the admission criteria for the program. If you do qualify for RDAP, your eligibility for sentence reduction would then be evaluated. Both your current offense and past adult criminal conviction history would be reviewed for violence or other exclusionary offenses under the Director's discretion according to Program Statement 5162.04, Categorization of Offenses in making this determination. Should you wish to pursue residential drug treatment, you will need to submit a request to be interviewed for the program once you are within thirty-six months of release.

Accordingly, your appeal is denied. If you are dissatisfied with this response, you may appeal to the Regional Director, Northeast Regional Office, U.S. Customs House - 7th Floor, 2nd and Chestnut Streets, Philadelphia, PA 19106. Your appeal must be received in the Regional Office within 20 days from the date of this response.

Paul M. Schultz, Warden

1-3-07
Date

# EXHIBIT

# A

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff/Member) MRS. BARBRA FLAXINGTON (Drug Treatment Coord) | DATE: 2/2/06 |
|---|---|
| FROM: HARRY NUCKOLS | REGISTER NO.: 05521-082 |
| WORK ASSIGNMENT: GARAGE | UNIT: CAMP |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

MRS. Flaxington,

The Judge in my case authorized me for the 500 Hour Drug Program. I need something in writing telling me if I will receive credit for Sentence Reduction.

THANK-You

Harry Nuckols
05521-082

(Do not write below this line)

DISPOSITION:

Interviews for RDAP are conducted within 36 months of release. Your eligibility for the program and sentence reduction will be evaluated at that time if you request to be interviewed.

| Signature Staff Member | Date |
|---|---|
| B. Flaxto, DAPL | 2/10/06 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

# EXHIBIT

# B

HARRY NUCKOLS
REG.# 05521-082
FCI FAIRTON CAMP
P.O. BOX 420
FAIRTON, NJ 08320



# RECEIVED

## MAR - 7 2006

FCI FAIRTON
WARDEN'S OFFICE

February 20, 2006

Ms. Barbara Flaxington
Drug Treatment Coordinator
U.S. Department of Justice
Federal Bureau of Prisons
Federal Correctional Institution
Fairton, New Jersey 08320

Re:   USA v. Nuckols
      Docket# 1:04-cr-A39-01
      FBOP Reg.# 05521-082

Dear Ms. Flaxington:

Please accept this letter as a follow up to my initial BP-8 and formal request for a determination regarding my eligibility for a sentence reduction pursuant to 18 U.S.C. 3621(e)(2)(B).

It is my understanding that the Honorable J. Garvan Murtha, the judge, who presided at my sentence recommended that the Bureau of Prisons designate me to a facility that will allow my participation in a drug treatment program. Please see the attached statement of reasons, page 4, para. 14, also, the highlighted contents of (page 3) - statement of reasons. It is my further understanding that the judge's recommendation contemplates my early release for successful completion as provided by the referenced statute.

The concern for my present request arises as a result of an initial discussion with case manager, Mr. J. Bruce here at FCI Fairton Camp. Mr. Bruce indicated to me that I am, "ineligible for a sentence reduction because of the gun enhancement," that attaches to my sentence. His opinion seems to be contrary to the court's recommendation.

Notwithstanding Mr. Bruce's "gut reaction" response to my inquiry concerning sentence reduction, the sentencing court specifically recommends that I participate in a 500 hour program that will offer early release. Please refer to the court's statement of reasons, attached. Furthermore, the preliminary

research that I have performed has yielded information
contrary to Mr. Bruce's response to me, and in accord
with judge murtha's recommendation.

Kindly review my file and furnish me a response
as reasonably soon as possible. I eagerly await your
response.

Very truly yours,

Harry Nuckols

cc:

Hon. J. Garvan Murtha
D. Scott Dodrill, Reg. Dir.
Paul M. Schultz, Warden
T.A. Jones, Camp Administrator
J. Bruce, Case Manager

# EXHIBIT

# C

Inmate Name: Nuckles, Harry
Register Number: 05521-082

## Disposition

This is in response to your letter received in my office on March 7, 2006. Copies of this letter were also sent to the Honorable J. Garvan Murtha, D. Scott Dodrill, Regional Director, T. A. Jones, Camp Administrator, J. Bruce, Case Manager, and B. Flaxington, Drug Abuse Program Coordinator. In your letter you express concern that you may not be eligible for a sentence reduction upon completion of the Residential Drug Abuse Program (RDAP). You request a determination regarding your eligibility for early release consideration.

A review of this matter found that your good conduct time release date is January 24, 2011. According to Program Statement 5330.10, Drug Abuse Programs Manual, Inmate, inmates must be within thirty-six months of release to be considered for RDAP participation. At that time, you would first be interviewed to assess whether you meet the admission criteria for the program. If you do qualify for RDAP, your eligibility for sentence reduction would then be evaluated. Both your current offense and past adult criminal conviction history would be reviewed for violence or other exclusionary offenses under the Director's discretion according to Program Statement 5162.04, Categorization of Offenses in making this determination. Should you wish to pursue residential drug treatment, you will need to submit a request to be interviewed for the program once you are within thirty-six months of release.

I trust this information addresses your concerns.

_____          3/13/06
Paul M. Schultz,  Warden                          Date

# EXHIBIT

# D

**Inmate Name: Nuckles, Harry**
**Register Number: 05521-082**

---

### Disposition

This is in response to your letter dated April 12, 2006, to Harley G. Lappin, Director Federal Bureau of Prisons, and forwarded to me for a response. In your letter you express concern that you may not be eligible for a sentence reduction upon completion of the Residential Drug Abuse Program (RDAP). You request a determination regarding your eligibility for early release consideration.

A review of this matter found that your good conduct time release date is January 24, 2011. According to Program Statement 5330.10, Drug Abuse Programs Manual, Inmate, inmates must be within thirty-six months of release to be considered for RDAP participation. At that time, you would first be interviewed to assess whether you meet the admission criteria for the program. If you do qualify for RDAP, your eligibility for sentence reduction would then be evaluated. Both your current offense and past adult criminal conviction history would be reviewed for violence or other exclusionary offenses under the Director's discretion according to Program Statement 5162.04, Categorization of Offenses in making this determination. Should you wish to pursue residential drug treatment, you will need to submit a request to be interviewed for the program once you are within thirty-six months of release.

I trust this information addresses your concerns.

Paul M. Schultz,  Warden

Date   5/16/06

# EXHIBIT

# E

FAI 1330.07D
SEPTEMBER 3. 1993
Attachment 1

Federal Correctional Institution
and Federal Prison Camp
Fairton, New Jersey

ADMINISTRATIVE REMEDY PROCEDURES FOR INMATES
INFORMAL RESOLUTION FORM

This form is to be completed by the Correctional Counselor.

DATE: December 6, 2006

INMATE: Nuckols, Harry          REG. NO.: 05521-082          Unit: Camp

1) THE INMATES COMPLAINT: I have been informed that although I am eligible for
the Residential Drug Abuse Program (R.D.A.P.), I have also been informed that I may
not be eligible for up to one year of sentence reduction.  I am attempting to learn
whether I may receive time credit upon completion of the program; and if not, why not.

2) THE RELIEF HE IS REQUESTING: I would like to definitively know at this time
whether I may receive up to one year of sentence reduction upon successful com-
pletion of the R.D.A.P. program.

3) EFFORTS MADE BY THE INMATE TO INFORMALLY RESOLVE THE COMPLAINT,
INCLUDING THE NAMES OF STAFF HE CONTACTED.: On Feb. 2, 2006, I communicated with
Dr. Barbara Flaxington, the drug treatment coordinator, via inmate request form; on
Feb. 20, 2006, I communicated again with Dr. Flaxington via correspondence; and on
March 6, 2006, I communicated via correspondence with the national office regarding
my interest in participating in R.D.A.P.

4) EFFORTS MADE BY STAFF TO INFORMALLY RESOLVE THE COMPLAINT: On March 13, 200
and again on May 16, 2006, I received communication from Warden Paul M. Schultz in-
forming me that my eligibility for sentence reduction would be determined at the
time of my application for participation in R.D.A.P., which in turn can only occur
within 36 months of my release.

SEE ATTACHED. REF; TO B. FLAXINGTON  DAP COORD.
Br policy, interviews for R.DAP are conducted within 36 months of release. It must first
be determined whether you even qualify to participate in the program before consider
for early release is reviewed. Your FRD is 10/24/08. If you submit a request VOB you co
be interviewed at that time. - B. Flaxington, date

DATE INFORMALLY RESOLVED:_____

OR DATE BP-229 WAS ISSUED:_____

_____          _____
CORRECTIONAL COUNSELOR          UNIT MANAGER

# EXHIBIT

# F

**U.S. DISTRICT COURT**         - 7 -         **NUCKOLS, HARRY**

enter a guilty plea, thereby permitting the Government to avoid preparing for trial and permitting both the Government and the Court to allocate their resources efficiently. Therefore, it appears that the Defendant has demonstrated an acceptance of responsibility for his offense conduct and is entitled to the appropriate reduction in his offense level.

<u>Offense Level Computations</u>

23.     Pursuant to the decision of the Supreme Court in <u>United States v. Booker</u>, 125 S.Ct 738 (2005), and the Second Circuit Court of Appeal's subsequent decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), application of the sentencing guidelines is not mandatory and the following guideline analysis is provided to the Court for its consideration in determining an appropriate sentence in this case.

24.     The November 1, 2004 Edition of the United States Sentencing Commission <u>Guidelines Manual</u> has been used to determine the appropriate guideline applications in this case.

25.     **Base Offense Level:**                               24

The guideline for the offense is found in section 2K2.1 of the guidelines.[4] The base offense level is 24. Under the guidelines, the Defendant committed the instant offense conduct subsequent to sustaining two felony controlled substance offenses. The predicate felony convictions include the Defendant's conviction on March 9, 1986, in New Jersey for Manufacturing, Distributing and Possessing Controlled Substances With Intent to Distribute, and his February 27, 1996, conviction in New Jersey for Manufacturing, Distributing, and Dispensing Controlled Substances.

26.     **Specific Offense Characteristics:**                       +8

     a.     Pursuant to U.S.S.G. §2K2.1(b)(1)(C), the Defendant's offense level is increased by 4 because he possessed 8 firearms.

     b.     Pursuant to U.S.S.G. §2K2.1(b)(5), the Defendant's offense level is increased by 4 because he possessed a firearm in connection with another felony offense. In this case, the evidence shows that the Defendant possessed firearms in connection with the possession of marijuana offense that is contained in Count Two, because the weapons were found inside the residence that contained the marijuana grow operation.

27.     **Victim-Related Adjustment:**                          None

28.     **Adjustments for Role in the Offense:**               None

29.     **Adjustment for Obstruction of Justice:**             None

---

[4]Pursuant to U.S.S.G. §3D1.2(c), because the offense conduct alleged in Count Two, the marijuana offense, embodies conduct that is treated as a specific offense characteristic in the guideline applicable to Count Three, the firearm offense, these offenses are grouped. Pursuant to U.S.S.G. §3D1.3(a), the base offense level is determined by the count, in this case Count Three, which has the highest offense level.

**U.S. DISTRICT COURT**                    **- 8 -**                    **NUCKOLS, HARRY**

30.     **Adjusted Offense Level (Subtotal):**                                        **32**

31.     **Chapter Four Enhancements:**                                               **34**

    a.    Career Offender: In accordance with the provisions found in U.S.S.G. §4B1.1, because the Defendant was at least 18 years old at the time he committed the instant offense, the instant offense of conviction is a felony controlled substance offense, and the Defendant has at least two prior felony controlled substance convictions as detailed below, the Defendant is a Career Offender. Therefore, pursuant to U.S.S.G. §4B1.1(b), his offense level is increased to 34[5].

    b.    The predicate felony convictions include the Defendant's conviction on March 9, 1986, in New Jersey for Manufacturing, Distributing and Possessing Controlled Substances With Intent to Distribute, and his February 27, 1996, conviction in New Jersey for Manufacturing, Distributing, and Dispensing Controlled Substances.

32.     **Acceptance of Responsibility:**                                             **-3**

33.     **Total Offense Level:**                                                      **31**

    Offense Behavior Not Part of Relevant Conduct

34.     None.

**PART B: DEFENDANT'S CRIMINAL HISTORY**

    Juvenile Adjudication(s)

35.     Unknown.

    Adult Criminal Conviction(s)

| Date of Arrest | Conviction/Court | Imposed/ Disposition | Guideline/ Score |
|---|---|---|---|
| 36.  01/12/77 (Age 20) | Attempted Larceny, Galloway Township Municipal Court, Galloway, NJ, Dkt.# SA77260 | 01/19/77: Guilty plea, fined $35.00, court costs of $15.00 | §4A1.2(e)(3)  0 |

---

[5]The predicate offense contained in Count Two has a statutory maximum sentence of 40 years imprisonment, therefore, the offense level associated with that offense under the Career Offender guideline is 34.

**U.S. DISTRICT COURT**                    - 9 -                    **NUCKOLS, HARRY**

According to police records, on January 12, 1977, the Defendant and Clifford T. McCord attempted to steal an electric motor located on the roof of an abandoned factory building. Police were summoned to the factory by an anonymous caller, and upon arrival, they observed Nuckols and McCord on the roof of the factory unbolting the motor. McCord and Nuckols had attached a cable to the motor and were about to lower it to the ground when they were confronted by police officers. Both men were arrested and charged with Attempted Larceny. On January 19, 1977, Nuckols pled guilty and he was fined as noted above.

| 37. | 04/09/77<br>(Age 21) | (1) Larceny;<br>(2) Possession of Stolen Property,<br>Galloway Township Municipal Court,<br>Galloway, NJ,<br>Dkt.# W39377 | 05/04/77: Guilty, sentenced to serve 30 days in jail | §4A1.2(e)(3) | 0 |

According to court documents, on April 9, 1977, the Defendant and Clifford T. McCord stole 25 sheets of tongue-and-groove pine plywood from a residential construction site located at 4th and Magnolia Avenue in Galloway Township, New Jersey. The Toyota truck in which Nuckols and McCord were riding was stopped by a police officer who noticed that it lacked a front license plate. The officer asked them where they were going at that time of night (1:25 a.m.) With a load of wood, and McCord replied "I'm not going to lie to you, we just got plywood from Magnolia Avenue." Both men then admitted stealing the plywood and they were arrested. The plywood was valued at $264.00. On May 4, 1977, Nuckols pled guilty and he was sentenced to serve 30 days in jail.

| 38. | 07/21/77<br>(Age 21) | Resisting Arrest,<br>Egg Harbor Township Municipal Court,<br>Bargaintown, NJ,<br>Dkt.#WC59841 | 08/08/78: Guilty, fined $125.00 | §4A1.2(e)(3) | 0 |

According to police records, on July 15, 1977, the Defendant resisted a lawful arrest being conducted by New Jersey police officers. On August 8, 1978, Nuckols was convicted and fined $125.00. The Defendant was initially also charged with Marijuana Production, however, he was acquitted of that charge. No further information is available regarding the facts of this conviction.

| 39. | 09/10/86<br>(Age 30) | (1) & (2) Manufacturing with Intent to Distribute Controlled Substances (felony),<br>Superior Court of New Jersey, Atlantic County,<br>Indictment #86-09-1728 | 03/09/87: Guilty plea.<br>06/03/88: sentenced to 3 years in New Jersey State Prison, credit for 26 days already served.<br>01/17/89: Paroled.<br>07/06/90: Maxed out parole. | §4A1.1(a) | 3 |

**U.S. DISTRICT COURT**       - 10 -       **NUCKOLS, HARRY**

On July 1, 1986, an undercover police officer in the Mays Landing area of Atlantic County New Jersey conducted a controlled purchase of methamphetamine from Harry Nuckols. The officer set up the transaction by telephoning Nuckols and asking to "borrow 100" which was a code meaning that the officer wanted to purchase one ounce of methamphetamine. Nuckols informed the officer to call back in 45 minutes. The officer called back and Nuckols agreed to sell him the requested quantity of methamphetamine. The officer met Nuckols at the Gravely Run Bar which was closed for renovations at the time of the transaction. Nuckols lived in an apartment over the Bar with his girlfriend Mary Diego, who was also involved in the sale of methamphetamine. The undercover officer purchased one ounce of methamphetamine for $975.00, and made arrangement to purchase a half-pound of methamphetamine in the near future. Nuckols agreed to the future sale, but cautioned that he would need time to arrange for that much weight. During the transaction, Nuckols appeared to be very knowledgeable regarding the manufacture of methamphetamine as he was able to describe the process to the undercover officer. After the transaction was complete, the officer left the bar and returned to the New Jersey State Police Barracks where the drugs were inventoried and stored as evidence. The entire incident was observed by a surveillance officer stationed outside the Bar. On September 10, 1986, Nuckols was arrested following the return of an indictment, and originally charged with seven counts of Manufacturing, Distribution and/or Possession with Intent to Distribute Controlled Substances. On March 9, 1987, he pled guilty to two counts of Manufacturing with Intent to Distribute Controlled Substances and on June 8, 1988, was sentenced to 3 years imprisonment in the New Jersey State Prison. On January 17, 1989, Nuckols was released to parole and on July 6, 1990, he was discharged from parole after reaching his maximum expiration date.[6]

| 40. | 09/20/94<br>(Age 38) | Manufacturing Distributing and Dispensing Controlled Substance (felony), Superior Court of New Jersey, Atlantic County, Dkt.#96-02-00408-A | 02/27/96: Guilty plea.<br>05/03/96: Sentenced to 18 months probation, 1 day in jail with credit for 1 day, $2,050.00 fine, court costs of $75.00. | §4A1.1(c) | 1 |

According to police records and court documents, on August 3, 1994, a detective with the Mullica, New Jersey Police Department received an anonymous call from a concerned citizen who had discovered a marijuana crop growing near Elwood Weekstown Road in Mullica, New Jersey. Police officers investigated the complaint and discovered a horseshoe-shaped field which contained

RECEIVED<br>COMMUNITY CORRECTIONS OFFICE<br><br>AUG 2 4 2005<br><br>BOP-REGIONAL OFFICE<br>BOSTON, MA

---

[6]This conviction is assigned 3 criminal history points under U.S.S.G. §4A1.1(a) because it is within the 15 year "look back" period outlined in §4A1.2(e)(1). The look back period begins on the earliest date of the relevant conduct (see Application Note 8 to §4A1.2) which is November 2, 2002, according to police on the day of his arrest (Nuckols admitted on September 2, 2004, that he had been conducting the marijuana grow operation for the last 22 to 24 months). The 15 year look back period terminates on November 2, 1987, which predates the imposition of the sentence in the case, June 3, 1988.

**U.S. DISTRICT COURT**                 - 11 -                 **NUCKOLS, HARRY**

approximately 100 growing marijuana plants ranging in height from 6 to 8 feet. There was also evidence that the area had been used in prior years to grow marijuana. The narcotics unit began a long-term covert surveillance of the area and on September 20, 1994, they observed Harry Nuckols approach the marijuana crop and begin tending the plants. One of the hidden officers stood up and yelled "police, don't move!" to which Nuckols responded "oh fuck!" At that point Nuckols took flight and after a short foot chase he tripped, fell down, and was apprehended. Nuckols was arrested and questioned about his illegal activities. Officers also searched his house and seized $17,200.00 in U.S. currency along with a large quantity of marijuana. Officers seized the marijuana growing in the plot and determined that it had a total weight of 265 pounds. On February 27, 1996, Nuckols pled guilty and he was sentenced to 18 months probation and 1 day in jail. It should be noted that the Defendant cooperated with New Jersey officials in exchange for a non-incarcerative sentence.

Criminal History Computation

41.    The criminal convictions listed above are assigned 4 criminal history points and Nuckols would normally be assigned to criminal history category III, however, because he is a Career Offender, pursuant to U.S.S.G. §4B1.1(b), his criminal history category is VI.

Other Criminal Conduct

42.    None.

Pending Charges

43.    Other than the instant offense, the Defendant does not have any pending criminal charges that this officer is aware of.

Other Arrests

| Date of Arrest | Charge | Agency | Disposition |
|---|---|---|---|
| 44.  09/25/74 (Age 18) | Possession of Controlled Substance (marijuana) | Superior Court of New Jersey, Atlantic County, Dkt.#633-74J3 | 08/18/75: Enrolled in a 1 year conditional discharge program. 01/17/78: Conditional discharge dismissal |

No further information is available regarding this arrest.

**U.S. DISTRICT COURT**                        - 13 -                        **NUCKOLS, HARRY**

important that his or her name appear in the presentence report so that the Federal Bureau of Prisons will permit mail and/or visitation from that child.

49.    The Defendant has lived in several states throughout his life including New Jersey, New York, Florida, West Virginia, and most recently Vermont. Nuckols resided at the Victory, Vermont property for approximately the last 4 years after purchasing it with the co-defendant in 2000. At the present time, Nuckols resides in New Jersey with his sister.[7]

<u>Physical Condition</u>

50.    During the presentence investigation report the Defendant noted that he recently began having concerns regarding his physical health. Specifically, Nuckols has noticed unusual heart palpitations since his arrest on the instant offense. Nuckols has not had his concerns verified by a doctor because he does not have health insurance. Other than this concern, the Defendant is healthy and has no history of serious or chronic health problems.

<u>Mental and Emotional Health</u>

51.    The Defendant advised this officer that he attends mental health counseling in New Jersey with a counselor named Philip M. Huber L.P.C. This counseling has focused on Nuckols' depression following his arrest on the instant offense. This officer received a letter from the Defendant's mental health worker regarding Nuckols' progress in treatment. The full text of that letter, which was dated December 21, 2004, is as follows:

a.    "Mr. Nuckols was evaluated by me on December 1, 2004. And has seen me weekly since the evaluation. Mr. Nuckols came into treatment after being arrested for cultivation of cannabis. During my evaluation I found Mr. Nuckols' clinical diagnosis to be consistent according to the Diagnostic and Statistical Manual for Mental Disorders fourth edition TR: with both an Adjustment Disorder with Depressed Mood and Post Traumatic Disorder from childhood. I believe the Federal System would be better served by placing Mr. Nuckols on a lengthy probation rather than incarceration and allowing Mr. Nuckols to contribute to society by being on a work program where he is able to better contribute to society."

52.    This officer is not aware of any further mental or emotional problems of the Defendant.

<u>Substance Abuse</u>

53.    During the presentence investigation interview the Defendant disclosed prior use of alcohol, marijuana, powder cocaine and methamphetamine. According to Nuckols, he does not drink alcoholic beverages on a regular basis and last imbibed alcohol in October of 2004. The Defendant noted that he has attended Alcoholics Anonymous meetings in the past, but does not consider himself an alcoholic.

---

[7]This move to New Jersey resulted from the fact that the Victory, Vermont property is subject to seizure by the Government.

**U.S. DISTRICT COURT**                    - 14 -                          **NUCKOLS, HARRY**

54.   At age 19 or 20 the Defendant began using marijuana on a regular basis. Since that age Nuckols has smoked marijuana regularly "off and on" until his arrest on the instant offense. The Defendant noted that he used powder cocaine approximately 12 times in his life. Between ages 30 and 32 Nuckols used methamphetamine irregularly.[8]

55.   The Defendant has not attended drug treatment or counseling.

Educational and Vocational Skills

56.   The Defendant attended Absegami High School (now called Oakcrest High School) located in Hamilton Township, New Jersey and graduated in 1975. Nuckols was ranked 193rd in a class of 509 students with an overall grade point average of 80.3.

57.   In addition to the Defendant's formal education, he has also received vocational and/or on the job training in plumbing, electrical, welding, painting, and general building trades. Nuckols has not served in the armed forces of the United States.

Employment Record

58.   The Defendant is currently employed at Coastline Corporation which is a painting business located in Pleasantville, New Jersey. Nuckols is a painter journeyman at Coastline and is paid $31.00 per hour for full time work. The Defendant is a member of the Painters and Allied Trades Union #277 in New Jersey.

59.   Prior to his employment at Coastline, the Defendant worked briefly at Teamwork Labor Services Inc. of Easton, Massachusetts in 2004 where he earned $398.13, and Freeman Decorating Services Inc. located in Dallas, Texas where he earned $96.25. The nature of these jobs is unknown, however they were most likely temporary.

60.   Social Security Administration records indicate that the Defendant did not report legitimate income in tax years 2003 or 2002. In 2001, Nuckols was employed at K&J Interiors Inc. in Plymouth, Massachusetts where he earned $2,772.00, and at Sheetmetal Specialists in HVAC Inc. located in South Burlington, Vermont where he earned $15,682.25.

61.   The Defendant reported that he was self-employed as a building contractor for the majority of his life, and did not regularly report this income to relevant taxing authorities.

62.   Social Security Administration records indicate that Nuckols reported the following income between 1980 and 2004:

| | |
|---|---|
| 1980 | None |
| 1981 | None |
| 1982 | $256.00 |
| 1983 | None |
| 1984 | None |
| 1985 | None |

---

[8]As noted in the Adult Criminal Convictions section of this report, Nuckols was convicted in New Jersey on March 9, 1987 of …

# EXHIBIT

# G

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

COPY

UNITED STATES OF AMERICA        )

                                )

              VS                )    DOCKET NO:

                                )    1:04-CR-139

HARRY NUCKOLS                   )

_____)    SENTENCING HEARING


BEFORE:    HONORABLE J. GARVAN MURTHA
           U.S. DISTRICT COURT JUDGE


APPEARANCES:   JOHN M. CONROY, ESQUIRE
               Office of the U.S. Attorney
               P.O. Box 570
               Burlington, Vermont    05402
               Representing The Government

               DAVID J. WILLIAMS, ESQUIRE
               Sleigh & Williams
               364 Railroad Street, Ste. E.
               St. Johnsbury, Vermont    05819
               Representing The Defendant


DATE:          August 16, 2005


           TRANSCRIBED BY:  Anne Marie Coughlin, RPR
                            P.O. Box 1932
                      Brattleboro, Vermont    05302

1              (The Court opened at 1:10 p.m.)

2          THE CLERK:  The matter now before the Court is the

3    United States versus Harry Nuckols.  This is criminal case

4    number 04 dash CR dash 139.  Present in the courtroom is

5    Attorney John Conroy for the Government.  And also present

6    in the courtroom is Attorney David Williams for the

7    defendant.  The matter before the Court is a sentencing

8    hearing.

9          THE COURT:  Mr. Williams, I have read the

10   Pre-Sentence Report.  And you have filed, let's see, a

11   motion for downward departure, a memorandum and objections

12   to the Pre-Sentence Report.  And Mr. Conroy has -- and also

13   a motion to strike career offender enhancement.  And Mr.

14   Conroy has filed a opposition, or it's a memorandum, but

15   generally in opposition to your requests.

16          And the Court, I have reviewed substantially the

17   question of Mr. Nuckols' career offender status.  And

18   although, frankly, I don't think he fits the mold of a

19   career offender, it seems to me that because of his two

20   prior convictions occurring when they did, and for what they

21   are, that he probably fits within that category.

22          So, just to let you know that anyway.  You may go

23   ahead and argue for your various, on behalf of Mr. Nuckols,

24   of course, concerning the various matters you've raised in

25   your motions.

3

```
 1          MR. WILLIAMS:  Thank you, Your Honor.  I wanted to
 2   call to the Court's attention what seems to be an
 3   inconsistent definition of, used in 4B 1.1.  That is the
 4   date that a defendant sustains a conviction shall be the
 5   date that the defendant pleads guilty, in this case, to the
 6   1987 charge of distribution of a controlled dangerous
 7   substance.  He plead guilty to that on March 9, 1987.
 8          And I understand from our chambers conference that
 9   Your Honor had reached a conclusion that even though there
10   seems to be an ambiguity in the definitional sections of 4A
11   and 4B of the guidelines the Court considered that issue,
12   did its own research and concluded that Mr. Nuckols was, in
13   fact, a career offender.  And I wanted to put that on the
14   record so that if there is an appeal we can bring that to
15   the attention of the Second Circuit.
16          With regard to our motion for a downward
17   departure --
18          THE COURT:  Well, just so -- my research was
19   strictly on 4A.
20          MR. WILLIAMS:  Yup.
21          THE COURT:  You, you brought up, excuse me, you
22   brought up before this hearing the question of 4B, which I
23   hadn't looked at before.  But the reason that I've
24   concluded, at least without hearing your argument I guess,
25   that the 4A 1.2 E1 seems to apply it's because of the second
```

4

1   portion of that provision which calls for imposing or in

2   finding the career offender status if the defendant was

3   incarcerated during the 15 year period of time, which seems

4   to me that he was, since he was released I believe in 19,

5   January of 1989 from his '88 conviction.  And if you add the

6   15 years that brings you up to January of '04.

7         MR. WILLIAMS:  No, I understand that, Your Honor.

8   I just wanted to put that on the record that there seems to

9   be an inconsistency between the two definitional sections

10  with regard to the timing.  One is the date of the

11  imposition of sentencing, incarceration and the other is the

12  date of the actual plea or conviction at trial.

13        THE COURT:  'Right.

14        MR. WILLIAMS:  But given Your Honor's indication

15  that the Court would find that Mr. Nuckols was a career

16  offender, technically a career offender under the

17  guidelines, we would ask the Court to consider that as a

18  factor in whether or not to grant our motion for a downward

19  departure in that two of Mr. Nuckols' convictions are for

20  cultivation of marijuana.  The latest one he was growing

21  marijuana at the end of a road in Victory, Vermont.  And

22  together with his co-defendant they were selling it to

23  rather high end buyers in New Jersey, attorneys and doctors

24  and accountants.  And certainly --

25        THE COURT:  Is that a mitigating factor?

1              MR. WILLIAMS:  No.  It's just, I was just

2      indicating that, just to indicate that this, the marijuana

3      that was being processed in Victory wasn't winding up in the

4      possession of 14 and 15 year olds in Atlantic City's High

5      Schools.

6              THE COURT:  Right.

7              MR. WILLIAMS:  Two of his convictions now are for

8      growing marijuana.  The conviction that's now 18 years old

9      was for selling amphetamines to an undercover officer.

10             Mr. Nuckols may be a career offender, but he's

11     marginally so.  He's not a violent person.  He had firearms,

12     of course, in his house, but those were for sporting

13     purposes only.  And he has done a remarkable job staying out

14     of trouble since his release by this Court last year.

15             He is a member of the Painter's Union in good

16     standing.  His Union President sent a letter to me and,

17     which was forwarded to the Court, indicating that he'll have

18     a job once he's released from whatever period of

19     incarceration the Court imposes.

20             In addition, he's got a strong family ties in New

21     Jersey.  He's re-established his relations with his sister

22     and seems to be doing well.  And there's no indication that

23     once he gets out he'll go back to whatever he was up to

24     before.  And we'd ask the Court to grant the motion for a

25     downward departure and give a sentence that fits the crime.

1    Thank you.

2                THE COURT:  Okay.  Mr. Conroy?

3                MR. CONROY:  Your Honor, for purposes of

4    completion of the record I would move for admission of the

5    exhibits that were submitted by the filing dated August 11th

6    of this year being the records of the New Jersey Superior

7    Court that were previously filed with the Court.

8                THE COURT:  All right.  Any objection to that?

9                MR. WILLIAMS:  No, Your Honor.  We, we had

10   received copies of those.  They are certified copies of

11   Court records that we hadn't seen before we filed our

12   motions.  But we'd have no objection to the Court

13   considering those records.

14               THE COURT:  Those may be admitted then.

15               MR. CONROY:  And quite frankly I express concern

16   over the representation that this marijuana was destined for

17   members of the various professions of medicine and law.  We

18   have no idea where this marijuana was going.  I think those

19   statements asserted by Mr. Nuckols have to be perceived as

20   self serving statements.  Mr. Yost picked up this marijuana

21   and brought it back to Philadelphia, back to New Jersey for

22   sales in bars consistent with what the goals of this

23   conspiracy was, simply to make money.

24               There have been comparisons of Mr. Nuckols to

25   Mr. Yost.  And I think those comparisons are unfortunate

7

1    because Mr. Yost did not come before this Court with two

2    prior convictions for felony offenses in the Superior Court

3    of the State of New Jersey.

4             You know, sadly what we have here is a man who

5    simply refuses to abide his conduct by the rules of society.

6    The Pre-Sentence Report is correct in its determination that

7    this gentleman is a career offender.  The facts in the

8    records show him to be a career offender.  And that's why

9    the guideline range is as high as it is because he has

10   simply either not learned his lesson or refuses to learn his

11   lesson.

12            I think that this Court is well aware of the

13   issues that are framed by this case.  The sentence that is

14   to be imposed should be consistent with the guidelines and

15   to be reasonable.  And I'm confident that the Court will do

16   so.

17            Two points I do wish to raise.  There is an issue

18   with regard to the final order of forfeiture that this Court

19   has issued.  I would ask that the criminal judgment reflect

20   the order of forfeiture consistent with Rule 32.1 of the

21   Federal Rules Of Criminal Procedure.

22            One other item I did, consistent with the plea

23   agreement, I do intend to file a motion for permission to

24   destroy the guns that were seized in this action consistent

25   with Paragraph 6 of the plea agreement and consistent with

8

1   the authority of this Court in 18 U.S.C. Section 3665 that

2   provides for destruction of these firearms.

3           THE COURT:  Is that, does the Court have to order

4   that?

5           MR. CONROY:  Yes.  There is such a requirement.

6   And I should have filed a written motion for that.  I would

7   submit a proposed order to the Court for that, for that

8   action.

9           THE COURT:  All right.

10           MR. CONROY:  In my sentencing memorandum I tried

11   to address the issues with regard to the sentencing factors

12   of Section 3553.  And I won't rehash what I've written.  But

13   Mr. Nuckols' conduct cannot be ascribed to abhorrent

14   behavior.  It cannot be ascribed to a lack of maturity or

15   because of a lack of judgment.  He knew exactly what he was

16   doing when he engaged in this conduct.

17           He comes before this Court, a Court for the third

18   time, to be sentenced for his felonious conduct.  And the

19   guideline range that's called for is entirely appropriate.

20           THE COURT:  Thank you.  Does Mr. Nuckols wish to

21   address the Court?

22           MR. NUCKOLS:  I don't know what to say, Your Honor,

23   other than um, I thought I found myself in the last few

24   months, but I hope whatever happens, whatever sentence I get

25   I don't lose myself in the midst of it.

1        THE COURT:  That you don't what?

2        MR.NUCKOLS:  I don't lose myself when I go to do

3 time.  I just hope I don't lose what I, you know, I think I

4 found again.

5 .        THE COURT:  What have you found?

6        MR.NUCKOLS:  Well, I found that I was doing a lot

7 of things that I really shouldn't have been doing.  I didn't

8 think I was going to have to pay the price I am going to

9 pay.  I didn't realize it was going to be that drastic.

10 Because anybody in their right mind that thought they were

11 going to do the kind of time that the prosecutor's trying to

12 do to me you can bet I wouldn't have been doing what I was

13 doing.  I don't know what else to say.

14        THE COURT:  And you wouldn't have committed the

15 offense if you had known how much it was going to cost you?

16        MR.NUCKOLS:  If I had thought it was going to cost

17 me that much, no, sir.

18        THE COURT:  So what did you think it was going to

19 cost you?

20        MR.NUCKOLS:  It wasn't something I intended to do

21 for the rest of my life.  It was something I was just trying

22 to, you know, make some gains and get ahead where I could go

23 some place and get a nice little house and get some kind of

24 a job and keep on making up all the loss that I kept making.

25 That's all I was trying to do.  It wasn't something I was

1    going to do for the rest of my life.

2              THE COURT:  Well, you are a skilled painter;

3    right?

4              MR. NUCKOLS:  I'm also a, basically not really a

5    painter, I'm basically a builder.

6              THE COURT:  All right.

7              MR. NUCKOLS:  When my father passed on I more or

8    less couldn't go near it because it just, you know, my

9    father and, my ties with my father were just so close that I

10   couldn't think about him every day.  And that's what I went

11   through for years.  So I don't know how else to explain

12   that.  That's the explanation of that.  Because my father

13   was basically the only partner I had my whole life that I

14   worked with.  So --

15             THE COURT:  So, that when he died you decided to

16   try something else like growing marijuana or --

17             MR. NUCKOLS:  Nope.  I just decided that I really

18   didn't want to be in South Jersey because it was so

19   populated.  And I just wanted to go some place where it was

20   very rural and laid back.  And I didn't go right into

21   growing pot right away.  It was an agreement that I had made

22   with Bob that it might happen or it might not happen.  And,

23   and it ended up happening.  And I told him I would do it.

24   Basically it was the time his two kids graduated from high

25   school because he couldn't work.  I said, I'll do it, we'll

1    do it till then.  And I said basically it's going to be over

2    if I get far enough ahead.  And I'm just going to go some

3    place and buy a house and get a job.  And he knew that.  But

4    I didn't make it.

5              THE COURT:  Well, you had a little house.

6              MR. NUCKOLS:  Excuse me?

7              THE COURT:  I say you had a little house.

8              MR. NUCKOLS:  We had a little house, yes.  It was

9    half Bobby's house.

10             THE COURT:  All right.  So you had that part of

11   it?

12             MR. NUCKOLS:  Right.

13             THE COURT:  And --

14             MR. NUCKOLS:  It was very difficult, you know, I

15   mean, that's why I planned to try and -- probably was going

16   to leave Vermont because it's very difficult to hold a job

17   to make any money when you really weren't from up there.

18   When I had a job when I first came here I was traveling up

19   to five hours a day, okay.  And I was working eight hours.

20   And I was driving to work.  And in 13 hours only bringing

21   home $300 a week after taxes and everything besides the --

22   it was like all it was was to feed us.  I'm not going

23   anywhere.  I'm not going backwards.  And I'm hearing it from

24   Bobby.  Oh, well, when are you going to be able to do

25   something?  I said, Bobby, I said, well, if I can and when I

12

1   can we will.  So, I mean that, that has no bearing on the --

2   that's just part of the story.

3             THE COURT:  Right.  But you, I mean you had been

4   involved twice before, as you certainly know, with drugs.

5   And had been convicted.  You hadn't served much time on

6   those two convictions.  But you had to realize that if

7   you're caught the third time the penalty might be much more

8   severe or you didn't think about that?

9             MR. NUCKOLS:  I really didn't think about it.  I

10  really didn't.  I mean it would have not been to that

11  extent.  I just, I didn't.

12            THE COURT:  Well, I do feel that there are some

13  circumstances in your case that warrant a lesser sentence

14  than you could have received because you are a career

15  offender.

16            MR. NUCKOLS:  Yes, Your Honor.

17            THE COURT:  I mean you have had two prior drug

18  convictions within a certain period of time, but you still

19  have to go to prison.

20            MR. NUCKOLS:  Yes, I, I know that.

21            THE COURT:  It's going to be a relatively long

22  time.

23            MR. NUCKOLS:  Yeah.

24            THE COURT:  And I don't know what's going to

25  happen when you get out.  As you say, I hope you don't

Case 1:07-cv-01181-RJL    Document 10-10    Filed 10/17/2007    Page 79 of 113
Case 1:07-cv-02319-RBK    Document 1-3    Filed 05/17/2007    Page 42 of 76

13

1  decide again to get involved with similar types of

2  activities because for sure if you're caught again you'll

3  end up going back to prison for the rest of your life.

4        MR.NUCKOLS:  I just hope I can get somewhere when

5  I get back out.  I really do.  You know, I mean because now

6  I don't, I'm zeroed out.  You know, I have nothing.  No

7  retirement.  No nothing.  No medical.  No anything.  So I'm

8  not quite sure, you know, of course, the longer period I go

9  the harder it's going to be.  It's, you know, every working

10  construction job out there is basically a younger man's

11  trade or whatever.  And every time you are away from it

12  considering it's harder to get, you know, recognition or

13  hard to, you know, to get into the good jobs where there

14  are, you know, they are better, you know, good paying jobs.

15  And that's all I can do is hope that, you know, I don't come

16  out 57, 58 years old.  I'm 49 years old.  I don't know how

17  to face some sort of, you know, reality.  Just I'm not quite

18  sure.  It's quite staggering to me now considering that I

19  thought I had, you know, a chance.  And when I made the

20  agreement and signed it I thought what I was looking at, you

21  know, a possibility.  That was bad enough.  Now I'm not

22  quite sure.

23        THE COURT:  Well, I hope it works out for you.

24  You know, you are not going to go to prison for the hundred

25  and 88 months which probably would have, you would have been

1    how old?  Fifty something by the time you got out?

2          MR.NUCKOLS:  Yeah.  Well, probably would have made

3    me about 60.

4          THE COURT:  So, I will give you some consideration

5    because I think your case is exceptional, but you are still

6    going to prison.

7          MR.NUCKOLS:  Oh, I know that, sir.  I knew that

8    when I came in here today.

9          THE COURT:  Anything else before I deal with the

10   sentence?

11         MR.NUCKOLS:  I'm just glad you listened to me.

12   Thank you.

13         THE COURT:  What was that?

14         MR.NUCKOLS:  I said you listened to me a little

15   bit.  Thank you.

16         THE COURT:  No, I did.  I read your letter.  It's

17   an impressive letter.  You are an intelligent person.  You

18   made some bad choices.

19         MR.NUCKOLS:  There's no doubt about that.

20         THE COURT:  This was the worst one.

21         MR.NUCKOLS:  I'm saying there's no doubt about

22   that.

23         THE COURT:  There's a gentleman back there with

24   his hand up.  I don't know what he --

25         THE WITNESS:  May I say something on his behalf,

1    Your Honor?

2            THE COURT:   Yes.   I guess so if, Mr. Williams you

3    want him to say something?

4            MR. WILLIAMS:   Sure.

5            THE WITNESS:   I would just like to say Harry's my

6    brother-in-law.   And he's staying with my wife Sandy who is

7    his sister.   And um, I've known Harry for over seven years

8    now.   And um, there hasn't been a part of addiction brought

9    into this.   But I'm a recovered person myself for 25 years.

10   I, and um, a lot of this between Mr. Yost and Harry is self

11   medication.   Party time.   And that has to be brought into

12   the picture.   It's not good guy, bad guy.   I know myself.

13   When I was 14 years old I couldn't stop drinking until I was

14   29 years old.   And many people were not lucky and go to

15   they're 40, 50, 60 years old and stop.   My father died an

16   alcoholic.   I know.   And I, I think some of this ought to be

17   brought into the justice system that, you know, this is not

18   good guy, bad guy.   It's a good guy, sick guy.   And he

19   hasn't hit -- he has a good, a good job because I spoke on

20   his behalf to the business agent.   And he has a good place

21   to stay because I do have a Bachelor's Degree in Social Work

22   and in Alcohol and Drug Counseling.   And we have programs

23   we've lined up for Harry to go to that we could get him in.

24            So what we was hoping that um, the sentence, you

25   know, some of that would reflect on his sentencing.   And I

1  know, you know, third time, it, it makes, it may be the

2  third time, but what's an addictive person do?  They get

3  high.  That's their life.  They have -- I couldn't control

4  it.

5           THE COURT:  Well, you stopped at a time when --

6           THE WITNESS:  Twenty-nine years old, yes.

7           THE COURT:  Right.

8           THE WITNESS:  Yeah.  Before -- I, and I had seven

9  head on collisions and almost killed myself.  So, yes, I

10  finally stopped.  But it takes something disastrous to wake

11  a person up and say hey, wait a minute, maybe this is the

12  wrong thing to do.

13           And it's just like the justice system no matter

14  what -- they don't ever look at that.  They say, he's a bad

15  guy, he's doing this, doing that.  How about maybe he's a

16  sick person?  Maybe he's addictive.  Maybe he has a few of

17  the things that alcoholics and drug addicts are missing and

18  born with.  And, and, you know, it's, it's sad but it, you

19  know, just because oh, automatically by the book it says um,

20  all of this amount of time, that's sad because a person

21  can't recover that way.  They can't help themselves.  And

22  I'm -- it hurts me in my heart to see this whole thing.  And

23  um, and any considerations for that.  And, like I say, he

24  has a good home to go to, a stabile home and everything

25  else.  And I would just like to thank you for your time.

1       MR. CONROY:  Your Honor, Mr. Nuckols is not being

2   punished for using marijuana.  He's being punished for

3   selling it to people in the State of New Jersey, the

4   Philadelphia area.  This is not an automatic rote process.

5   Mr. Nuckols has made choices in his life with regard to his

6   1986 sale of methamphetamine, his 1996 sale of marijuana,

7   his cultivation of marijuana and then his move to Vermont to

8   resume his elicit activities.  There's nothing automatic or

9   rote about this process.  It is a severe process, but it is

10  one that Mr. Nuckols has brought upon himself through his

11  own choices.

12      THE COURT:  I think he realizes that, but what, I

13  think the difference between what you said, sir, and Mr.

14  Nuckols is you are not sitting here before me having

15  committed three felonies.  And I'm constrained by the law.

16  So I have to deal with him as a convicted felon, a three

17  time convicted felon.  And that's where he's gotten himself

18  into trouble.  And I'm not doubting that he was addicted,

19  but unfortunately many people I see finally realize after

20  they are appearing before me at sentencing that yes, they

21  are addicted and they should have taken care of it earlier.

22      So I understand what you say.  And I'm sure Mr.

23  Nuckols appreciates your coming here and saying it on his

24  behalf.  And I just, I have to take into consideration what

25  you say, what he says, what the Government says and what the

18

1    law says in imposing a sentence.

2            THE WITNESS:  Thank you, Your Honor.

3            THE COURT:  All right.  So the Court's going to

4    find then as follows:  That the offense of manufacturing

5    marijuana, a schedule one controlled substance, in violation

6    of 21 U.S. Code, Section 841A1, which is count two, occurred

7    from on or about November 1, 2002 to on or about

8    September 2, 2004.

9            The offense of possession of a firearm in or

10   affecting commerce, he having been previously convicted of a

11   crime punishable by a term of imprisonment of greater than

12   one year, in violation of 18 U.S. Code, Section 922 G1,

13   which is count three, occurred on or about September 2,

14   2004, so the guidelines apply.

15           Pursuant to Section 3D 1.2C, because the offense

16   conduct alleged in count two, which is the marijuana

17   offense, embodies conduct that is treated as a specific

18   offense characteristic in the guideline application to count

19   three, the firearm offense, these offenses are grouped.

20           So in accordance with 3D 1.3A the base offense

21   level is determined by this count, that is count three,

22   which is the highest offense level.

23           So the, the guideline for the firearms offense,

24   count three, is found in Section 2K 2.1.  The base offense

25   level is 24 because the defendant committed this offense

Case 1:07-cv-01181-RJL    Document 10-10    Filed 10/17/2007    Page 85 of 113
Case 1:07-cv-02319-RBK    Document 1-3    Filed 05/17/2007    Page 48 of 76

19

1    conduct subsequent to sustaining two felony controlled

2    substance offenses.  So the predicate felony convictions

3    include the defendant's conviction on March 9, 1986 in New

4    Jersey for manufacturing, distributing and possessing

5    controlled substances with the intent to distribute.  And

6    his February 27, 1996 conviction in New Jersey for

7    manufacturing, distributing and dispensing controlled

8    substances.

9            Pursuant to Section 2K 2.1B 1C the defendant's

10    offense level is increased by four because he possessed

11    eight firearms.  And pursuant to Section 2K 2.1 B5 the

12    defendant's offense level is increased by four levels

13    because he possessed the firearms in connection with another

14    felony offense.  So his adjusted offense level is 32.

15            Because the defendant was at least 18 years old at

16    the time he committed this offense the, this offense of

17    conviction is a felony controlled substance offense and

18    since he has two prior felony controlled substance

19    convictions he is a career offender.  So the offense level

20    is increased to 34.

21            The defendant has demonstrated an acceptance of

22    responsibility so his offense level is reduced three levels

23    to 31.

24            And he has four criminal history points which

25    would normally result in a criminal history category of

1    three.  However, since he is a career offender his criminal

2    history category is six.

3             The guideline imprisonment range for offense level

4    of 31 and a criminal history category of 6 is 188 to 235

5    months.  And the guideline range for a term of supervised

6    release is not less than four years.  And probation is not

7    authorized.

8             I might note too that even if Mr. Nuckols was not

9    a career offender and, therefore, he was in, would be in

10   offense level --

11            MR. CONROY:  Twenty-nine, Your Honor.

12            THE COURT:  Twenty-nine, right.

13   Twenty-nine-three.  He would be subject to a term of

14   imprisonment of a hundred and eight to a hundred and 35

15   months.

16            The Court is going to depart from the offense

17   level 31, criminal history category six.  And I'm doing so

18   on, I guess, a combination of factors under 5K 2.0 finding

19   that in his case it is an exceptional case for the following

20   reasons:  First, it appears to me that even though strictly

21   he comes within the career offender status because of the

22   two prior convictions, one of which is barely in the 15 year

23   range, that he does not fit, in my opinion, the, within the

24   category because the two offenses for which he, in New

25   Jersey for which he, to which he plead guilty, one of which

1   he received a three year sentence, the 1988 conviction, but

2   only served about seven months in prison. As I see it from

3   the Pre-Sentence Report he was sentenced on June 3 of 1988,

4   but paroled on January 17 of 1989. So he served about seven

5   months. And then the 1996 conviction he was given

6   probation.

7           So, that fact, along with the uncertainty about

8   when he was, when this offense was actually committed,

9   commenced I should say, based only on his statement to the

10  police when he was confronted with the marijuana growing

11  operation, that he had been doing it for about 22 or 24

12  months. That put him back another couple years from his

13  arrest.

14          So, it seems to me that that sort of evidence is

15  uncertain as to when he actually commenced the offense, this

16  offense. And combined with the, what I call peculiar nature

17  of the guideline, where we're talking about first of the,

18  the sentence imposed within 15 years and then the second

19  part about a sentence, the defendant being incarcerated

20  during any part of the 15 year period. And it being so

21  close to being 15 years or not that that's a factor that I'm

22  going to take into consideration in departing.

23          Additionally, there certainly seems to be a

24  disparity between the sentence that was imposed on Mr. Yost

25  and the sentence that is to be imposed on Mr. Nuckols,

1   although, as the Government points out, Mr. Yost did not

2   have a criminal record and he cooperated with the Government

3   as well.  And, therefore, the Government made a motion

4   pursuant to 5K 1.1 which allowed the Court to impose a

5   sentence below the guideline's range.

6           Another factor in my departure is the fact that

7   there was a relatively small amount of marijuana.

8   Seventy-eight plants were seized, which was calculated, I

9   believe, at about 40 pounds of marijuana.  Now obviously

10  other marijuana had been grown in the past.  But the amount

11  that was seized is not a major marijuana growing operation,

12  in my opinion, compared to other cases I have seen.

13          As far as the guns were concerned it appears, at

14  least from looking at the Pre-Sentence Report, that the guns

15  that were possessed were primarily for hunting or target

16  shooting and not the type possessed for protection or

17  illegal use in the drug trade.

18          And based upon the letters that I received prior

19  to sentencing it does, and also Mr. Nuckols' statement, it

20  appears that he certainly has realized at this point that

21  growing marijuana and the use of drugs is something that

22  leads to serious consequences and it's frankly doubtful that

23  he will be involved in future illegal activities.

24          And, finally the, he is forfeiting a substantial

25  amount of money and property in connection with the offense

1   which, although not to be considered alone, is a factor at

2   least in my decision to depart.

3           And in general the sentence that I'm going to give

4   Mr. Nuckols seems a serious sentence and meets the

5   requirements of punishment certainly and deterrence of this

6   sort of activity.

7           So the Court is going to depart from offense level

8   31-6, which, as I said, calls for an offense, calls for a

9   sentence of from 188 to 235 months, to offense level 19,

10  criminal history category six, which calls for a sentence of

11  63 to 78 months, which I consider to be a substantial

12  departure.   And the sentence that is to be imposed to serve

13  is 75 months in prison.  And that's to be both on count two

14  and count three.   And they are to be concurrent sentences.

15  And those are to be followed by a four year period of

16  supervised release.   And the conditions of supervised

17  release are as follows:  That he not commit any crimes;

18  federal, state or local.  That he not possess any illegal,

19  controlled substances.   That he abide by the standard

20  conditions of supervision recommended by The Sentencing

21  Commission.   That he not possess a firearm or other

22  dangerous weapon.   That he participate in a program approved

23  by the probation office for substance abuse, which may

24  include testing to determine whether he has reverted to the

25  use of drugs or alcohol.   And he shall contribute to the

24

1    cost of services rendered in an amount to be determined by

2    the probation officer based on ability to pay or the

3    availability of third party payment.  And he shall refrain

4    from the use of alcohol and other intoxicants during and

5    after treatment.

6           Further, he shall refrain from any unlawful use of

7    a controlled substance and submit to a drug test within 15

8    days of release on supervised release and at least two

9    periodic drug tests thereafter for use of a controlled

10   substance.  And he shall cooperate in the collection of DNA

11   as directed by the probation officer.

12          The guideline fine range is from $15,000 to

13   $2,250,000, plus the cost of confinement and supervision.

14   And the defendant has demonstrated an inability to pay a

15   fine so all fines are waived.  And a special assessment of

16   $200 is imposed payable immediately.

17          'I'll recommend that the Bureau of Prisons

18   designate the defendant to a facility that will allow him to

19   participate in a 500 comprehensive drug and alcohol

20   treatment program and any early release program which is

21   available to successful participants in such a program.

22          And I will make this recommendation despite,

23   noting that the offense, one of the offenses to which the

24   defendant plead guilty involved the possession of firearms

25   and finding further that the Court does not feel that the

1    defendant is a risk of danger and that the enhancement or

2    the conviction for the firearms should not affect his

3    security designation.

4              MR. CONROY:  May I address the Court's sentence,

5    Your Honor?

6              THE COURT:  Yes.

7              MR. CONROY:  I wish to note the Government's

8    objection to the Court's ruling today.  In particular, there

9    are three areas which I think the Court should reconsider.

10    First of all, with regard to the uncertainty as to when the

11    offense began, the offense of conviction.  The offense to

12    which Mr. Nuckols admitted and plead guilty is alleged to

13    have commenced November first, 2002.  It's not a relevant

14    conduct question, Your Honor.  It's the offense of

15    conviction that we're dealing with here.

16              Moreover, the Government's proof would not be

17    limited to Mr. Nuckols' own admissions, but Mr. Yost would

18    testify as to when this offense of conviction began.  So the

19    uncertainty of when the offense began I don't believe is a

20    valid reason.  Secondly --

21              THE COURT:  Of course I didn't hear Mr. Yost.

22              MR. CONROY:  No.  Because -- I understand that,

23    Your Honor.  Because the offense of conviction, the count of

24    convictions began in 2002.

25              With regard to the prior lenient treatment of Mr.

1    Nuckols, I recall a case in the Circuit, United States verse

2    Tahada (ph), which was a career offender case before Judge

3    Sessions in which an appeal was taken.  And the Circuit in

4    reversing Judge Sessions found, on the question of career

5    offender found that prior leniency in prior convictions is

6    not any reason for a downward departure.  In fact, it may be

7    a reason for an upward departure.  But I wanted to bring

8    that to the Court's attention.

9              And, finally, I believe the disparity in

10   sentencing, particularly with regard to offenders who are

11   not similarly situated, is not a proper basis for a downward

12   departure.

13             . That being said, I just wanted to note that

14   objection for the Court and ask the Court for

15   reconsideration for its ruling.

16             As part of the plea agreement the Government did

17   agree to withdraw the 851 notice that was filed in this

18   case.  And I'd ask the leave of the Court to file, to

19   withdraw that notice.  And, finally, there are counts to be

20   dismissed and we would so move.

21             THE COURT:  All right.  So the Court will, I

22   guess, reconsider what I said, but deny the

23   reconsideration.  And as far as the, the remaining counts

24   the Government's motion to dismiss is granted.

25             And then the, you, you have withdrawn your

1    previous submission for enhancement, I guess; is that right?

2            MR. WILLIAMS:  No.

3            MR. CONROY:  No, your Honor.

4            THE COURT:  Or you're moving to withdraw it?

5            MR. CONROY:  Well, the --

6            THE COURT:  I think the plea agreement --

7            MR. CONROY:  The 831 notice affects what the term

8    of supervised release should be and a fine.  It really

9    doesn't have a relevant affect on the sentence being imposed

10    today.  It was an obligation of ours under the plea

11    agreement.  So we do make that withdrawal.  But it doesn't

12    affect the guideline analysis that we gave to the Court.

13            THE COURT:  So your withdrawal is granted I guess.

14            Mr. Williams, anything else?

15            MR. WILLIAMS:  If Your Honor could just note on

16    the judgment order that the Court recommends the closest

17    facility at the appropriate security level.  And

18    Mr. Nuckols' home, it's in the Atlantic City area.  And I

19    believe that the Fairton Federal Correctional Facility is

20    close by.  And it has a number of security levels.

21            THE COURT:  Fairton?

22            MR. WILLIAMS:  Fairton, yes.

23            THE COURT:  Do you want me to recommend that?

24            MR. WILLIAMS:  That would be fine.  Thank you.

25            THE COURT:  And I assume Mr. Nuckols is going to

1    start serving his sentence today?

2          MR. WILLIAMS:  Yes.

3          THE COURT:  Okay.  Both the defendant and the

4    Government -- I will recommend Fairton by the way.

5          MR. WILLIAMS:  Thank you.

6          THE COURT:  Both the defendant and the government

7    may have the right to appeal this sentence as set forth in

8    Title 18, U.S. Code Section 3742.  If the defendant is

9    unable to pay the cost of an appeal he has a right to apply

10   for leave to appeal in forma pauperis and request the Court

11   to appoint counsel for him.

12         If the defendant so requests the Clerk of the

13   Court shall prepare and file forthwith a notice of appeal on

14   behalf of the defendant.  Notice of Appeal by the defendant

15   must be filed within 10 days of the date judgment is entered

16   on the docket pursuant to Rule 4B of the Federal Rules of

17   Appellate Procedure.

18         Anything else?

19         MR. WILLIAMS:  No.  Thank you, Judge.

20         THE COURT:  Okay.  Good luck to you, Mr. Nuckols.

21         MR. NUCKOLS:  Thank you, Your Honor.

22         (The Court recessed at 2:15 p.m.)

23

24

25

```
1                    C E R T I F I C A T E              COPY

2

3          I, certify that the foregoing is a correct

4    transcript from the record of proceedings of the above

5    entitled matter dated

6

7

8

9                                    Anne Marie Coughlin

10                                   Anne Marie Coughlin, RPR
                                     Official Court Reporter
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

# EXHIBIT

# H

RECEIVED

AUG 2 4 2005

CLERK'S OFFICE

| **Not For Public Disclosure** |

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| United States of America | ) | |
| | ) | |
| vs. | ) | Docket No. 1:04-CR-139-01 |
| | ) | |
| Harry T. Nuckols | ) | |

Statement of Reasons for Sentence

Pursuant to the decision of the Supreme Court in United States v. Booker, 125 S. Ct 738 (2005), and the Second Circuit Court of Appeal's subsequent decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), in determining the following sentence the Court has considered the United States Sentencing Guidelines applicable in this case, including all departure authority contained in the guideline's policy statements, as well as all of the factors enumerated in 18 U.S.C. § 3553(a).

The Court finds as follows in this case:

1.    The offense of manufacturing marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 2), occurred from on or about November 1, 2002, to on or about September 2, 2004. The offense of possession of a firearm in or affecting commerce, having previously been convicted of a crime punishable by a term of imprisonment of greater than one year, in violation of 18 U.S.C. § 922(g)(1) (Count 3), occurred on or about September 2, 2004. Therefore, the Sentencing Guidelines apply.

2.    Pursuant to U.S.S.G. § 3D1.2(c), because the offense conduct alleged in Count 2, the marijuana offense, embodies conduct that is treated as a specific offense characteristic in the guideline applicable to Count 3, the firearm offense, these offenses are grouped. Pursuant to U.S.S.G. § 3D1.3(a), the base offense level is determined by the count, in this case Count 3, which has the highest offense level.

3.    The guideline for the firearms offense (Count 3) is found in section § 2K2.1 of the Guidelines Manual (Nov. 2004 edition). The base offense level is 24 because the defendant committed the instant offense conduct subsequent to sustaining two felony controlled substance offenses. The predicate felony convictions include the defendant's conviction on March 9, 1986, in New Jersey for manufacturing, distributing and possessing controlled substances with intent to distribute, and his February 27, 1996,

1

conviction in New Jersey for manufacturing, distributing, and dispensing controlled substances.

4.    Pursuant to U.S.S.G. § 2K2.1(b)(1)(C), the defendant's offense level is increased 4 levels because he possessed 8 firearms. Pursuant to U.S.S.G. § 2K2.1(b)(5), the defendant's offense level is increased 4 levels because he possessed a firearm in connection with another felony offense. Therefore, the defendant's adjusted offense level is 32.

5.    Because the defendant was at least 18 years old at the time he committed the instant offense, the instant offense of conviction is a felony controlled substance offense, and the defendant has two prior felony controlled substance convictions, the defendant is a career offender. Therefore, pursuant to U.S.S.G. § 4B1.1(b), his offense level is increased to 34.

6.    The defendant has demonstrated an acceptance of responsibility for his criminal conduct, therefore, the offense level is reduced 3 levels pursuant to U.S.S.G. § 3E1.1(a) and (b), resulting in a total offense level of 31.

7.    The defendant has 4 criminal history points which would normally result in a criminal history category of III; however, because the defendant is a career offender, his criminal history category is VI. U.S.S.G. § 4B1.1(b).

8.    The guideline imprisonment range for an offense level of 31 and a criminal history category of VI is 188 to 235 months.

9.    The guideline range for a term of supervised release is not less than 4 years pursuant to U.S.S.G. § 5D1.2. Imposition of a term of probation is precluded by 21 U.S.C. §§ 841(a)(1);(b)(1)(B).

10.    The Court downwardly departs pursuant to a combination of factors, pursuant to § 5K2.0:

(1)    defendant's career offender status grossly overrepresents the seriousness of his criminal history. Both predicate offenses involved relatively minor sentences (the 1988 New Jersey conviction resulted in a three-year sentence -- defendant was paroled after serving seven months; and the 1996 New Jersey conviction resulted in a sentence of probation). The Court also takes into account the uncertainty of the actual commencement date for the offense under consideration combined with the peculiar nature of § 4A1.2(e)(1) which refers to counting prior sentences imposed within 15 years of the commencement of the offense and those resulting in incarceration during any part of such 15-year period;

(2)    the disparity with the sentence imposed in the case of United States v. Robert Yost, (No. 1:05-cr-14-01);

(3)    the relatively small amount of marijuana involved (78 plants/40 lbs.);

(4)   the firearms possessed were of the type used for hunting or target shooting, not the type of weapon ordinarily used for protection or illegal use in the drug trade;

(5)   based on letters received by the Court prior to sentencing, it appears defendant finally realizes the error of his ways and it is doubtful he will be involved in future illegal activities;

(6)   defendant has forfeited a substantial amount of money and property, although the Court recognizes this is not to be considered as a sole factor in downward departure; and

(7)   the length of the sentence is reasonable punishment for this type of offense.

The Court downwardly departs 12 levels, from an offense level 31, criminal history category VI, to an offense level 19, criminal history VI, which provides for an imprisonment range of 63 to 78 months.

11.   It is the sentence of the Court that the defendant be committed to the custody of the Federal Bureau of Prisons for a period of 75 months on Count 2 and 75 months on Count 3, to be served concurrently, to be followed by a four-year term of supervised release. The conditions of supervised release are as follows:

a.   The defendant shall not commit any crimes, Federal, state, or local.

b.   The defendant shall not possess any illegal controlled substances.

c.   The defendant shall abide by the standard conditions of supervision recommended by the Sentencing Commission.

d.   The defendant shall not possess a firearm or other dangerous weapon.

e.   The defendant shall participate in a program approved by the United States Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol. The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or the availability of third-party payment. The defendant shall refrain from the use of alcohol and other intoxicants during and after treatment.

f.   The defendant shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter for use of a controlled substance.

3

    g.    The defendant shall cooperate in the collection of DNA as directed by the probation officer.

12.    The guideline fine range in this case is from $15,000.00 to $2,250,000.00 plus the costs of confinement and supervision. The defendant has demonstrated an inability to pay a fine within the applicable guideline range, thus, all fines are waived.

13.    A special assessment of $200.00 is imposed, payable immediately.

14.    The Court recommends the Bureau of Prisons designate the defendant to a facility that will allow him to participate in a 500-hour comprehensive drug and alcohol treatment program and any early release program which is available to successful participants. The Court makes this recommendation despite noting that the offense to which the defendant pled guilty involved possession of a firearm. Further, the Court does not believe that the defendant is a risk of danger and the conviction for possession of a firearm should not affect his security designation.

15.    The Court recommends the defendant be designated to serve his sentence at FCI Fairton.

Both the defendant and the government may have the right to appeal this sentence, as set forth in 18 U.S.C. § 3742. If the defendant is unable to pay the cost of an appeal, he has the right to apply for leave to appeal in forma pauperis, and request the court to appoint counsel for him. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant. Notice of appeal by the defendant must be filed within 10 days of the date judgment is entered on the docket, pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure.

Dated at Brattleboro, in the District of Vermont, this /8th day of August, 2005.

Hon. J. Garvan Murtha
U.S. District Judge

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Attachment (Page 1) — Statement of Reasons

DEFENDANT:    NUCKOLS, HARRY T.
CASE NUMBER:    1:04-CR-139-01
DISTRICT:    Vermont

## STATEMENT OF REASONS
### (Not for Public Disclosure)

X    THE COURT ADOPTS THE PRESENTENCE REPORT AND GUIDELINE APPLICATIONS WITHOUT CHANGE.

### OR

☐    THE COURT ADOPTS THE PRESENTENCE REPORT AND GUIDELINE APPLICATIONS BUT WITH THESE
CHANGES: (Use Page 3, if necessary.)

☐    Chapter Two of the U.S.S.G. Manual determinations by court (including changes to base offense level or specific offense
characteristics):

☐    Chapter Three of the U.S.S.G. Manual adjustment determinations by court (including changes to victim-related adjustments,
role in the offense, obstruction of justice, multiple counts, or acceptance of responsibility):

☐    Chapter Four of the U.S.S.G. Manual determinations by court (including changes to criminal history category or scores,
career offender, or criminal livelihood determinations):

☐    THE COURT ADOPTS THE PRESENTENCE REPORT WITH THESE COMMENTS OR FINDINGS (including comments
or factual findings concerning certain information in the presentence report that the Federal Bureau of Prisons may rely on when it
makes inmate classification, designation, or programming decisions. Specify court comments or findings, including paragraphs in
the presentence report.) (Use Page 3, if necessary.)

## GUIDELINE RANGE DETERMINED BY THE COURT (BEFORE DEPARTURES):

Total Offense Level:    31
Criminal History Category:    VI
Imprisonment Range:    188    to    235    months
Supervised Release Range:    not less than 4 years    to    years
Fine Range: $    15,000    to $    2,250,000

X    Fine waived or below the guideline range because of inability to pay.

☐    THE SENTENCE IS WITHIN THE GUIDELINE RANGE, THAT RANGE DOES NOT EXCEED 24 MONTHS, AND THE
COURT FINDS NO REASON TO DEPART.

### OR

X    THE SENTENCE IS WITHIN A GUIDELINE RANGE, THAT RANGE EXCEEDS 24 MONTHS, AND THE SPECIFIC
SENTENCE IS IMPOSED FOR THESE REASONS: (Use Page 3, if necessary.)

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
             Attachment (Page 3) — Statement of Reasons

DEFENDANT:        NUCKOLS, HARRY T.
CASE NUMBER:      1:04-CR-139-01
DISTRICT:         Vermont

## STATEMENT OF REASONS
### (Not for Public Disclosure)

## ADDITIONAL PRESENTENCE REPORT AND GUIDELINE APPLICATION CHANGES
(If necessary.)

## SPECIFIC SENTENCE IS IMPOSED FOR THESE REASONS
(If necessary.)

(1) defendant's career offender status grossly overrepresents the seriousness of his criminal history. Both predicate offenses involved relatively minor sentences (the 1988 New Jersey conviction resulted in a three-year sentence — defendant was paroled after serving seven months; and the 1996 New Jersey conviction resulted in a sentence of probation). The Court also takes into account the uncertainty of the actual commencement date for the offense under consideration combined with the peculiar nature of § 4A1.2(e)(1) which refers to counting prior sentences imposed within 15 years of the commencement of the offense and those resulting in incarceration during any part of such 15-year period; (2) the disparity with the sentence imposed in the case of United States v. Robert Yost, (No. 1:05-cr-14-01); (3) the relatively small amount of marijuana involved (78 plants/40 lbs.);(4) the firearms possessed were of the type used for hunting or target shooting, not the type of weapon ordinarily used for protection or illegal use in the drug trade; (5) based on letters received by the Court prior to sentencing, it appears defendant finally realizes the error of his ways and it is doubtful he will be involved in future illegal activities; (6) defendant has forfeited a substantial amount of money and property, although the Court recognizes this is not to be considered as a sole factor in downward departure; and (7)the length of the sentence is reasonable punishment for this type of offense.

## ADDITIONAL COMMENTS OR FINDINGS CONCERNING INFORMATION IN PRESENTENCE REPORT
(If necessary.)

## ADDITIONAL REASONS FOR DEPARTING FROM THE GUIDELINE RANGE
(If necessary.)

Defendant's Soc. Sec. No.:      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
Defendant's Date of Birth:      March 27, 1956

Defendant's Residence Address :    108 South Leeds Point Road
Galloway, NJ 08205

Defendant's Mailing Address :    108 South Leeds Point Road
Galloway, NJ 08205

August 16, 2005
Date of Imposition of Judgment

Signature of Judge

Honorable J. Garvan Murtha, U.S. District Judge
Name and Title of Judge

August 18, 2005

AO 245B   (Rev. 8/03) Judgment in a Criminal Case
          Supplemental Statement of Reasons

DEFENDANT:      NUCKOLS, HARRY T.
CASE NUMBER:    1:04-CR-139-01
DISTRICT:       Vermont

## SUPPLEMENTAL STATEMENT OF REASONS
### (Not for Public Disclosure)
## APPLICABILITY OF FEDERAL SENTENCING GUIDELINES

X   The court applied the Guidelines and all relevant enhancements in this case.

☐   The court found the Guidelines unconstitutional in part, and imposed a sentence in accordance with the constitutionally

☐   The court did not apply the federal sentencing guidelines at all in this case and imposed a discretionary sentence.

X   The court took some other action (Please explain below.):
    Since the guidelines are no longer mandatory, but advisory, the Court imposed the sentence after also
    considering the factors set forth in 18 U.S.C. § 3553.

☐   This judgment includes an alternative sentence.

# Attachment

# B

**U.S. Department of Justice**

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: **NUCKOLS, HARRY T.**        **05521-082**        **CAMP**        **F.C.I. FAIRTON**
 LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL.**

This is an appeal of an unsatisfactory response to an inquiry directed to the Warden of F.C.I. Fairton regarding determination of eligibility for the B.O.P.'s Residential Drug Abuse Program (R.D.A.P.).

Consistent with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), I submit this grievance appeal seeking a definitive determination at this time as to whether, if I am admitted to the Bureau of Prisons Residential Drug Abuse Program, I may receive up to a one-year sentence reduction upon successful completion of same. Assuming arguendo that I am eligible for RDAP and that I successfully complete the program, I would like to know if I will then be eligible for a reduction of sentence; and if not, why not.

For the past year, I have been seeking a definitive answer as to whether I may receive a sentence reduction upon the successful completion of RDAP, should I be admitted. My efforts began on February 2, 2006 via an inmate request form (a so-called "cop-out") addressed to Dr. Barbara Flaxington, the RDAP coordinator at F.C.I. Fairton. Dr. Flaxington replied that my eligibility for the program

1/9/07        **CONTINUED**        _Harry Nuckols_
 DATE                SIGNATURE OF REQUESTER

**Part B - RESPONSE**

____ DATE ____        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE        CASE NUMBER: _437986-R2_

**Part C - RECEIPT**        CASE NUMBER: ____

Return to: ____
 LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION
SUBJECT: ____

____ DATE ____        SIGNATURE, RECIPIENT OF REGIONAL APPEAL        BP-230(13)

REGIONAL ADMINISTRATIVE REMEDY APPEAL

Continuation Page

and sentence reduction will be evaluated" once I am interviewed for eligibility for participation in RDAP within 36 months of my release (see Exhibit A).

Because this response was not satisfactory, I submitted a more formal communication to Dr. Flaxington seeking "a determination regarding my eligiblity for a sentence reduction" (see Exhibit B). This communication was circulated to various parties within the B.O.P. Subsequently, I received two responses from Mr. Paul M. Schultz, Warden at F.C.I. Fairton, dated March 16, 2006 (see Exhibit C), and May 16, 2006 (see Exhibit D), essentially reiterating Dr. Flaxington's response and deferring any assessment of whether I am eligible for a sentence reduction until such time that I may be interviewed for RDAP, which will not be until January 2008.

Because these responses are not satisfactory and I cannot obtain a definitive answer regarding my potential eligibility (or ineligibility) for a sentence reduction, I initiated an informal grievance (see Exhibit E). The response which I received thereto was identical to previous responses and is similarly unsatisfactory.

It is my understanding that my offense of conviction (felon in possession of firearms in violation of 18 U.S.C. § 922(g)) and/or the sentencing enhancement which I received in my Pre-Sentence Investigation Report (P.S.R.) (see Exhibit F at 7, ¶¶ 25 and 26) may preclude me from receiving a post-RDAP sentence reduction.

Such a finding by the B.O.P. would be contrary to the express findings and recommendations of the U.S. District Court which sentenced me (see Exhibit G at 22; at 24-25; see also Exhibit H at 2, ¶ 10(1) and at 4, ¶ 14). Such a determination would also contravene holdings of the U.S. Court of Appeals for the Third Circuit. See United States v. Bowers, 432 F.3d 518 (3rd Cir. 2005) (18 U.S.C. § 922(g) is not a violent crime for purposes of the bail statute); Royce v. Hahn, 151 F.3d 116 (3rd Cir. 1998) (applying categorical approach to 18 U.S.C. § 922(g) and holding offense not to be a crime of violence); Roussos v. Menifee, 122 F.3d 159 (3rd Cir. 1997) (B.O.P. acted arbitrarily in denying sentence reduction to inmate who completed drug program based upon sentence enhancement for guns possessed in drug conspiracy conviction). But see Stiver v. Mako, 130 F.3d 574 (3rd Cir. 1997) (inmate properly denied sentence reduction after participation in drug program because of prior convictions for specifically enumerated crime of violence).

In an effort to learn whether I will be in a position to seek a sentence reduction prospectively upon successful completion of RDAP; and to learn whether the mandate of my sentencing court will be fulfilled, I submit this grievance appeal at this time.

DATED: 1/8/07

_Harry Nuckols_
HARRY NUCKOLS #05521-082

**NUCKOLS, Harry**
Reg. No. 05521-082
Appeal No. 437986-R2
Page One

---

### Part B - Response

In your appeal, you state staff at FCI Fairton has refused to advise if you will be eligible for a reduction in your sentence without first determining your eligibility for admission to a Residential Drug Abuse Program (RDAP). You request an immediate evaluation of your status and to be told whether or not you would qualify for a sentence reduction upon successful completion of the RDAP.

A review of your appeal revealed that you have a good conduct time projected release date of January 2011. Pursuant to Program Statement 5330.10, <u>Drug Abuse Program Manual</u>, inmates must be within 36 months of release to be interviewed for admission to the RDAP. No determination can be made regarding your eligibility for a sentence reduction until it is decided whether or not you are appropriate for the RDAP. Once this determination is made, if you are not satisfied, you may appeal the decision by filing a new Request for Administrative Remedy with the Warden. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: February 5, 2007

D. SCOTT DODRILL
Regional Director

# Attachment



U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

| From: | NUCKOLS,  HARRY T. | 05521-082 | CAMP | FCI FAIRTON |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

This is an appeal of an unsatisfactory response to an appeal of the Regional Administrative Remedy Appeal wherein I requested the BOP to correct it's denial of my request to be interviewed regarding a determination of eligibility for the B.O.P.'s Residential Drug Abuse Program (RDAP).  In the Regional Director's response dated February 5, 2007, he stated that "inmates must be within 36 months of release to be interviewed for admission to the RDAP."  See  Part B Response, at page one. "A review of your appeal revealed that you have a good conduct time projected release date of January 2011." Id.  "Accordingly, your appeal is denied." Id. Petitioner now asserts that the BOP's use of Program Statement 5330.10, wherein a 36 month from release requirement for RDAP determination is contained to deny me an immediate evaluation for RDAP violates my right to consideration under [continued]

2/10/07

DATE

_Harry Nuckols_

SIGNATURE OF REQUESTER

**Part B—RESPONSE**



DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: _____

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____

| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|---|

SUBJECT: _____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL.

BP-231(13)

USP LVN

CENTRAL OFFICE ADMINISTRATIVE REMEDY APPEAL                    Continuation Page


18 U.S.C. § 3621(e)(2)(B).  "BOP rules require an eligibility determination
to be made when a prisoner request admission into DAP, **and there are no re-
strictions on when that request can be made**." WADE v. DANIELS, 373 F. Supp.2d
1201, 1202 (D.Or.2005) (emphasis added); McCOMB v. WAMBAUGH, 934 F.2d 474,
481 (3rd Cir. 1991)("[I]n any conflict between a statute and a reulation
purporting to implement the statutes provisions, the regulation must, of
course, give way."); RENO v. KORAY, 515 U.S. 50, 61 (1995)("Bureau of Prisons
Program Statement's entitled to less deference because not promulgated under
APA").

According to the case law cited above and the plain language of 18 U.S.C.
§ 3621(b) and (e)(2)(B), the regional response should be corrected and my
remedy granted in the interest of justice. Therefore, I submit this
grievance appeal at this time.


DATED: 2/10/07

HARRY NUCKOLS    # 05521-082

**Administrative Remedy No. 437986-A1**
**Part B -- Response**

This is in response to your Central Office Administrative Remedy
Appeal in which you request to be interviewed for a determination
as to your eligibility for early release following successful
completion of the Residential Drug Abuse Program.

Program Statement 5330.10, <u>Drug Abuse Programs Manual, Inmate</u>,
stipulates an inmate must have a verifiable, documented drug or
alcohol abuse problem to be eligible for participation in the
Residential Drug Abuse Program (RDAP) and subsequent early
release incentive eligibility under 18 U.S.C. § 3621(e).   P.S.
5330.10 further stipulates that ordinarily, the inmate must be
within 36 months of release to be eligible for the RDAP.   Inmates
are selected for admission to residential programs based upon the
time remaining on their sentence.

Records indicate your current projected release date is
January 24, 2011, via Good Conduct Time release.   Your
eligibilities for the RDAP and early release under the provisions
of 18 U.S.C. § 3621(e) have not been officially determined to
date.   Such determinations will be made when you are within 36
months of your projected release date.   If you are not satisfied
with the written notification of the determination when issued,
you may initiate a Request for Administrative Remedy at your
local institution.

Based on the foregoing, your appeal is denied.


April 19, 2007
_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

HARRY T. NUCKOLS, Petitioner

FCI FAIRTON-CAMP

P.O. BOX 420

FAIRTON NEW JERSEY 08320

RECEIVED

MAY 17 2007

AT 8:30_____M
WILLIAM T. WALSH
CLERK

CLERK OF COURT

UNITED STATES DISTRICT COURT

P.O. BOX 2797

CAMDEN, NEW JERSEY 08101

May 18, 2007

Dear Clerk of Court:

This letter is a formal request for your office to credit the
enclosed money order for the amount of five dollars to the
civil case Harry T. Nuckols v. Paul Schultz(Warden), a
Petition filed under 28 U.S.C. § 2241 (Writ of Habeas Corpus).

Thank you for your time in this matter it will be greatly
appreciated.

Sincerely,

Harry T. Nuckols

