UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HARRY T. NUCKOLS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1181 (RJL) |
| ) | |
| **FEDERAL BUREAU OF PRISONS, et al.** ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR, IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT OR TO TRANSFER**

Defendants, through counsel, the United States Attorney for the District of Columbia, respectfully files this reply memorandum in response to Plaintiff *pro se*'s "Response in Opposition to Motion to Dismiss, Motion for Summary Judgment, Motion for Transfer." (Pltf's Opp."). Plaintiff's claim must fail for lack of subject matter jurisdiction, improper venue and failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(1), (b)(3) and (b)(6). Accordingly, for reasons stated in Defendants' motion and herein, Defendants respectfully reiterate their request that the Court dismiss this suit or enter summary judgment in Defendants' favor. Should the court deny Defendants' motions, Defendants request that the Court transfer this action, pursuant to 28 U.S.C. § 1404(a), because transfer would promote the interests of justice and an alternative Court would be a more convenient forum.

# ARGUMENT

**I.  No Issue of Statutory Construction Need Be Resolved.**

On February 2, 2006, Plaintiff submitted a request to the FCI-Fairton Drug Program Coordinator requesting that a determination be made regarding whether he was eligible for the Residential Drug Abuse Program ("RDAP").[1]  See Plaintiff's Complaint Memo at 4.  The request was denied because such eligibility determinations are made when an inmate is within thirty-six months of his projected release date.  See id.; see also Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer ("Defendants' Motion") Exhibits A, D, F.  Plaintiff's scheduled release date is January 24, 2011.  Therefore, his eligibility for the RDAP would be determined on or about January 24, 2008, within thirty-six months of his release date.  Plaintiff, nevertheless, argued that he was entitled to an immediate determination of his eligibility pursuant to Bureau of Prisons ("BOP") Program Statement 5330.10, Section 2.3.1.

In Plaintiff's opposition to Defendants' Motion, Plaintiff argues that his complaint did not challenge the duration of his confinement.  Rather, it "raised issues of statutory construction."  Pltf's Opp. at 2.  He contends that, because the BOP incorrectly interpreted 18 U.S.C. § 3621(b) and 18 U.S.C. § 3621(e) as well as Program Statement 5330.10, Section 2.3.1 and Program Statement Section 5.4.1, the Court has jurisdiction to review his claims under the Administrative Procedures Act ("APA").  Id. at 2.

---

[1] As an incentive for prisoners who seek treatment, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year . . . ."  18 U.S.C. § 3621(e)(2)(B).

A.  The Statutes

Title 18, United States Code, Section 3621(b) provides that:

> The Bureau of Prisons shall designate that place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable . . . The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addition or abuse.

Title 18, United States Code, Section 3621(e) provides that:

> In order to carry out the requirement of the last sentence of subsection (b) of this section, that every prisoner with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment, the Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment (and make arrangements for appropriate aftercare) . . .
>
> > (C) for all eligible prisoners by the end of fiscal year 1997 and thereafter, with priority for such treatment accorded *based upon an eligible prisoner's proximity to release date.*

(emphasis added).  In denying Plaintiff's entry into the RDAP until he was within thirty-six months of his release date, the BOP did not incorrectly interpret these statutes.  In fact, from the plain language of 18 U.S.C. § 3621(e), it is clear that priority for such treatment is based upon an eligible prisoner's proximity to release date.

B.  The Program Statements

In the above statutes, Congress did not define when eligibility interviews should be conducted. The BOP's implementing regulation at 28 C.F.R. § 550.56 lists criteria for eligibility but does not specify when an eligibility interview "shall" take place.  See 28 C.F.R. § 550.56. Because the statutes and regulations were silent on the issue, the BOP issued Program Statements

3

to define when eligibility interviews should be conducted.

Plaintiff argues that the BOP incorrectly interpreted Program Statement 5330.10, Section 2.3.1[2] and Program Statement 5330.10, Section 5.4.1 and this raises issues of statutory construction for the Court to resolve.[3]  However, despite Plaintiff's contention, the BOP's interpretation of Program Statements cannot "raise issues of statutory construction." See Pltf's Opp. at 2.  Moreover, the BOP's interpretation of its Program Statements is reasonable, and should not be disturbed.  See infra at 9-10.

**II. Review is Precluded Under the Administrative Procedures Act**

Plaintiff also argues that because he is challenging BOP's alleged incorrect interpretation of its statutes not the duration of his confinement, 18 U.S.C. § 3625 does not preclude review of this matter.  Plaintiff is incorrect.

Title 18, United States Code, Section 3625 precludes the court from reviewing

---

[2]Program Statement 5330.10, Section 2.3.1, provides that "once an inmate requests residential drug abuse treatment programming, the drug abuse staff shall determine the inmates eligibility for the program." See Defendants' Motion, Exhibit H (Program Statement 5330.10, Chapter 2, Orientation, Screening and Referral).

[3]Program Statement 5330.10, Section 5.4.1, provides that, in order to be considered eligible for placement in a Residential Drug Abuse Program:
>    (1) The inmate must have a verifiable documented drug abuse problem . . .
>    (2) The inmate must have no serious mental impairment which would substantially interfere with or preclude full participation in the program . . . .
>    (3) The inmate must sign an agreement acknowledging his/her program responsibility . . .
>    (4) Ordinarily, the inmate must be *within thirty-six months of release*.  Inmates are selected for admission to residential programs based upon the time remaining on their sentence . . .
>    (5) The security level of the residential program institution must be appropriate for the inmate.

See id., Exhibit G (Program Statement 5330.10, Chapter 5, Residential Drug Abuse Treatment Programs) (emphasis added).

programming decisions under the APA.  Specifically, Section 3625 states that:

> [t]he provisions of sections 554 and 555 and 701 through 706 of Title 5, United States Code, do not apply to the *making of any **determination, decision***, or order under this subchapter.

(emphasis added).  Determinations or decisions concerning eligibility in the RDAP, and the timing of eligibility interviews for that program, fall directly within the purview of 18 U.S.C. § 3625.  See Richmond v. Scibana, 387 F.3d 602, 605 (7th Cir. 2004)("A placement decision itself is not open to challenge under the APA"); Fristoe v. Thompson, 144 F.3d 627, 630-631 (10th Cir. 1998)(noting that § 3625 precludes review of the BOP's substantive decision in an individual case); Landry v. Hawk-Sawyer, 123 F.Supp.2d 17, 19 (D.D.C. 2000)(same); Tanner v. BOP, 433 F. Supp.117, 122, n.5 (D.D.C. 2006) (noting that "the APA is inapplicable to matters of imprisonment").  Therefore, BOP's decision to deny Plaintiff's request for an eligibility interview until he reaches thirty-six months prior to his release date is not reviewable by the Court.

**III. Assuming *Arguendo* that Review is Permissible Under the APA, Plaintiff's Claim Would, Nevertheless, Fail.**

Assuming *arguendo* that the BOP's decision to deny Plaintiff's request for an eligibility interview was reviewable under the APA, the requirement that Plaintiff wait until thirty-six months of his release date should not be set aside.

A) Standard of Review

Under the Administrative Procedures Act ("APA"), the court shall set aside an agency action that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); see also Am. Pub. Commc'ns Council v. FCC, 215 F.3d 51, 55 (D.C. Cir. 2000).  When reviewing an agency action, "the court must afford

deference to the agency decision and may not substitute its judgment for that of the agency. See Ethyl Corp. v. EPA, 541 F.2d 1, 34 (D.C. Cir. 1976). Moreover, the court affords its "greatest deference" to the agency when the agency exercises "special competence" in the subject matter delegated to its regulation. Am. Ship Bldg. Co. v. NLRB, 380 U.S. 300, 316 (1965). Because the ultimate standard of review is highly deferential, to uphold an agency action the court need not find that the agency's decision is "the only reasonable one, or even that it is the result [the court] would have reached . . . ." Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp., 461 U.S. 402, 422 (1983). Indeed, the arbitrary and capricious standard presumes the agency action to be valid and the burden is on the plaintiff to overcome that presumption. Md. Nat. Capital Park & Planning Comm'n v. Lynn, 514 F.2d 829, 834 (D.C. Cir. 1975).

Importantly, under the APA, for "[a] court [to have] subject-matter jurisdiction to review an agency action . . . the agency action [must] be final." See 5 U.S.C. § 704 ("Final agency action for which there is no other adequate remedy in a court [is] subject to judicial review"). The District of Columbia Circuit Court has determined that agency action is final if it is

> definitive and has a direct and immediate . . . effect on the day-to-day business of the parties challenging the action. Final agency action mark[s] the consummation of the agency's decisionmaking process and is one by which rights or obligations have been determined, or from which legal consequences flow.

Reliable Automatic Sprinkler Co., Inc. v. Consumer Prod. Safety Comm'n, 324 F.3d 726, 731 (D.C. Cir. 2003)(internal quotation marks and citations omitted). "It must mark the consummation of the agency's decision-making process, not be merely interlocutory in nature . . . ." Gem County Mosquito Abatement Dist. v. EPA, 398 F.Supp.2d 1 (D.D.C. 2005).

B) <u>Plaintiff's Claim is Not Ripe for Review Under the APA.</u>

Plaintiff's request for a RDAP eligibility interview was denied because he was not within thirty-six months of his release date. Importantly, Plaintiff was not determined to be ineligible for a RDAP eligibility interview. Rather, Plaintiff was required to wait until he was within thirty-six months of his release date - - January 24, 2008 - - before the interview would be conducted.

As a result of the denial, Plaintiff availed himself of BOP's administrative remedy procedures and appealed. <u>See</u> Defendants' Motion, Exhibit B (Request for Administrative Remedy); Exhibit C (Regional Administrative Remedy Appeal); Exhibit E (Central Office Administrative Remedy Appeal). In response to each appeal, Plaintiff was informed that inmates must be within thirty-six months of release to be considered for RDAP participation. <u>See</u> <u>e.g.</u> <u>id.</u>, Exhibit F (Response to Central Office Administrative Remedy Appeal)("eligibilities for the RDAP and early release under the provisions of 18 U.S.C. § 3621(e) have not been officially determined to date. Such determinations will be made when [plaintiff is] within 36 months of [his] projected release date.")

Because Plaintiff's eligibility to participate in the RDAP has not been determined, but merely postponed until thirty-six months before his release date, the denial of an eligibility determination at this point cannot fairly be determined to "mark the consummation of the agency's decision-making process." <u>Gem County Mosquito Abatement Dist.</u>, 398 F.Supp.2d at 1. Moreover, by postponing the time in which Plaintiff will be granted an eligibility interview, the BOP has not "'impose[d] an obligation, denie[d] a right, or fixe[d] some legal relationship . . . .'" <u>Bannum, Inc. v. Sawyer</u>, 251 F.Supp.2d 7, 11 (D.D.C. 2003). <u>Cf</u>. <u>Nuckols v. Schultz</u>, No.

07-2319, 2007 WL 1723409, *3 (D.N.J. June 8, 2007)(the need to wait for a determination does not constitute a violation of one's constitutional rights.)(internal quotation marks omitted); Venegas v. Henman, 126 F.3d 760, 765 (5th Cir.1997) ("The loss of the mere opportunity to be considered for discretionary early release [under § 3621(e)(2)(B)] is too speculative to constitute a deprivation of a constitutionally protected liberty interest."). Rather, within a mere six weeks, when plaintiff is within thirty-six months of his release date, such rights can be determined. Assuming arguendo that review under the APA were available for such decisions (which it is not), if Plaintiff is otherwise eligible, denied an eligibility interview, and properly exhausts his administrative remedies, at that time Plaintiff's claim could be ripe for any review that would be available.

      C) **BOP's Decision Was Not Arbitrary or Capricious, an Abuse of Discretion, or Otherwise Contrary to Law.**

When courts review legal challenges to an agency's interpretation of its authorizing statute, they must use the two-part test adopted by the Supreme Court in Chevron, USA, Inc. v. Natural Res. Defendant. Counsel, Inc., 467 U.S. 837, 842-43 (1984). Under the first part of this test, the court must determine whether Congress has directly spoken to the precise question at issue. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id.

Under the second part of the test, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. In reviewing an agency's interpretation of its authority under a statute it administers, the court will uphold that interpretation as long as it is a reasonable

interpretation of the statute.  See EPA v. Nat'l Crushed Stone Ass'n, 449 U.S. 64, 83 (1980)("When construing statutes, we show 'great deference to the interpretation given the statute by the officers or agency charged with its administration.").

Ambiguities in statutes within an agency's jurisdiction to administer are delegations of authority to the agency to fill the statutory gap in reasonable fashion.  Filling these gaps involves difficult policy choices that agencies are better equipped to make than courts.  Chevron, 467 U.S. at 865-866.  If a statute is ambiguous, and if the implementing agency's construction is reasonable, Chevron requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation.  Id. at 843-844.

### 1) First Step of the Chevron Test

Congress enacted 18 U.S.C. § 3621(e) to provide "every inmate with a substance abuse problem . . . [with] the opportunity to participate in appropriate substance abuse treatment."  18 U.S.C. § 3621(e).  While the statute defines the term "eligible inmates," see §3621(e)(5)(B), it does not set forth when, during the incarceration, the eligibility interview should occur.  Because the statute does not address the precise question at issue, one must proceed to the second part of the Chevron test.

### 2) Second Step of the Chevron Test

Program Statement 5330.10, Section 5.4.1 states that to be determined eligible for placement in the RDAP, "[o]rdinarily the inmate must be within thirty-six months of release." 28 C.F.R. § 550.56(a)(4).  Program Statement 5330.10, Section 2.3.1 states that "[o]nce an inmate requests residential drug abuse treatment programming, the drug abuse treatment staff

shall determine the inmate's eligibility for the program." One may argue that the intent of the Program Statements is ambiguous. However, if statutes are "ambiguous with respect to [a] specific issue, the . . . court [must determine if] . . . the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843.

In reviewing an agency's interpretation of its authority under a statute it administers, the court must grant great deference to the agency's interpretation and uphold that interpretation as long as it is reasonable. See Nat'l Crushed Stone Ass'n, 449 U.S. at 83. Moreover, "[t]o the extent Congress left a gap in § 3621(e)(2)(B) for the BOP to fill, . . . deference is owed the BOP's interpretation under Chevron . . . so long as the interpretation is a permissible construction of the statute." Lopez v. Davis, 531 U.S. 230, 231 (2001)(citing Chevron, 467 U.S. at 843-845, 866).

Here, BOP regulations clearly state that "[i]nmates are selected for admission to residential programs based upon the time remaining on their sentence." 28 C.F.R. § 550.56(a)(4); Program Statement 5330.10, Section 5.4.1. In addition, the BOP has interpreted its Program Statements to mean that an inmate must be within thirty-six months of his release date before he may granted an eligibility interview for placement in a RDAP. In light of the explicit language of Section 5.4.1, the BOP's interpretation is reasonable and based upon a permissible construction of the statute. See Rust v. Sullivan, 500 U.S. 173, 184 (1981)(an agency's statutory construction will not be disturbed if it "reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' express intent.")

Plaintiff states that the "statutes are not ambiguous[,]" and the BOP has "refused to give effect to the plain language in Section 2.3.1." Pltf's Opp. at 7, 8. However, Plaintiff provides no basis for his assertion that the language of Section 2.3.1 should be applied rather than the

language of Section 5.4.1. Clearly, the BOP, as the entity with special competence in the subject matter, has interpreted its own statutes and program statements to mean that an inmate must be within thirty-six months of release to be determined eligible for placement in the RDAP. The Court must grant great deference to that interpretation.

Moreover, courts have supported the BOP's interpretation that eligibility interviews ordinarily occur when an inmate is within thirty-six months of release. In Norwood v. Stine, the court stated,

> A simple reading of the provisions of PS 5330.10 reveals that it does not address when a request for eligibility determination is to be made, but describes who is eligible to participate in the RDAP. . . The scope of Chapter 2 was not to set out a timetable but to instruct staff on deciding which requests may be granted. . . Petitioner was denied eligibility based on the 36-month rule, it was a decision based upon a properly-promulgated regulation, valid since 2000.

No. 6: 06-144, 2006 WL 1207712, *5 -6 (E.D.Ky. May 3, 2006)(unpublished opinion).[4] In Womack v. Peterson, the court stated that "Womack would have been ineligible for the RDAP in 1996, when he first applied, because of *the length of time remaining on his sentence*.")(emphasis added). No. 06-2218, 2006 WL 3841778 (W.D.Tenn. Dec. 26, 2006). Likewise here, BOP properly has delayed an eligibility interview until Plaintiff is within thirty-six months of his release date. Therefore, Plaintiff's claim should be dismissed. See Fed. R. Civ. P. 12(b)(6).

---

[4]Plaintiff states that "defendant's reliance on Norwood . . . is misplaced because that court did not take into consideration the entire text of Section 2.3.1 of P[rogram] S[tatement] § 5330.10. See Norwood v. Stine, 2006 WL 1207712, at *5. Plaintiff is wrong. In Norwood, the court noted that, in support of his position, the petitioner cited Program Statement 5330.10, Chapter 2 at page 2, which includes Section 2.3.1. Id. at *2; see Defendants' Motion, Exhibit H. The court stated that Chapter 2 "describes the screening process which staff must administer [and] . . . [t]here is no indication in the instant allegations that any portion of Chapter 2 was violated by the BOP." Id. at *5.

**IV. Plaintiff's Claim is Barred by the Doctrine of <u>Res</u> <u>Judicata</u>.**

In <u>Nuckols v. Schultz</u>, Plaintiff challenged the decision of the BOP denying his request that the BOP "conduct a determination as to whether [he was] eligible to participate in the residential drug treatment program . . . ." 2007 WL 1723409, at *1. <u>See</u> Defendants' Motion, Exhibit I (Memorandum in Support of Harry T. Nuckols['] Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241) at 4. In that matter, plaintiff styled his complaint as a <u>habeas corpus</u> petition under 28 U.S.C. § 2241. Plaintiff argued that the denial of his immediate evaluation of his eligibility for the RDAP violated his rights. <u>See id</u>.

The District Court for the District of New Jersey found that Plaintiff's claim was "unripe and may never ripen[,]" because the only violation Plaintiff allegedly suffered was "his need to wait for BOP's determination" until he was within thirty-six months of his release date. <u>Id</u>. at 3-4. There was no denial of an eligibility interview. Rather, that interview was merely postponed. <u>See id</u>. at 2. Therefore, the Court determined that Plaintiff lacked standing to bring the action.

In his opposition, Plaintiff argues that the same claim is not barred in the instant action because the action in New Jersey was a <u>habeas corpus</u> action, and he did not challenge the BOP's rulemaking decisions. Pltf's Opp. at 6. Plaintiff is incorrect. After dismissing Plaintiff's <u>habeas corpus</u> petition, the court quite clearly stated that Plaintiff's "[p]etition would still be subject to dismissal on the merits." 2007 WL 1723409, at * 4. The Court stated that the question in the case was "when an inmate becomes eligible for a RDAP determination and reduction of sentence[,]" <u>id</u>., which is precisely the question plaintiff raises in the instant matter. The court determined that:

> the language used [in the BOP's Program Statement] appears to mean exactly

12

> what it says: (a) ordinarily, inmates must be within 36 months of release to be interviewed for admission to the RDAP, and (b) the BOP retains discretion to administer RDAP interviews and reach RDAP determinations at an earlier stages (sic) of confinement, for example, in extraordinary cases or for any other reason which the BOP deems sufficient.

Id.   The court noted that, under Chevron, Congress

> left it to the discretion of the BOP to determine when prisoners could be deemed conclusively eligible for the RDAP. Therefore, this Court is obligated to uphold . . . BOP's permissible construction of applicable statutory mandates.

Id. at *3.  See Chevron, 467 U.S. at 837.

While plaintiff incorrectly states that the New Jersey court "never considered plain language of Section 2.3.1[,]"[5] the Court also stated that "Petitioner[] suggested [a] scheme []under which the BOP would be obligated to provide any inmate with a 'definitive decision as to RDAP eligibility' immediately upon the inmate's demand[.]'" Id. at *4.  This is precisely the "scheme" Plaintiff asserts should be applied in the instant matter pursuant to Program Statement 5330.10, Section 2.3.1.  However, the New Jersey court properly stated that such a scheme "would strip the BOP of any discretionary power statutorily granted to the agency by Congress . . . ."  Id.  The Court continued:

> [w]hile petitioner reads into the language of P[rogram] S[tatment] 5330.10 and related provisions constraints incompatible with BOP's practice to make, ordinarily, RDAP determinations within thirty-six months of the inmate's date of projected release, the actual language of the agency's policy indicates that BOP's application of P.S. 5330.10 is reasonable and, therefore, should not be disturbed.

Id. at *5.  Hence, the Court held that plaintiff's argument was without merit, and his Petition was dismissed.  Id.

---

[5]Any errors the Plaintiff believes the New Jersey court made would properly be the subject of a direct appeal, not a new action in a sister court.

Pursuant to the rule of issue preclusion or collateral estoppel, the judgment on the merits in the District Court for the District of New Jersey bars relitigation of the same issue in the instant lawsuit. The District Court in New Jersey considered the matter on the merits and dismissed the suit. Therefore, this Court cannot relitigate the matter, and Plaintiff's claim here is barred. See Milton S. Kronheim & Co. v. District of Columbia, 91 F.3d 193, 197 (D.C. Cir. 1996); Fed. R. Civ. P. 12(b)(1).

**V. Plaintiff is Not Entitled to Injunctive Relief.**

Plaintiff argues that he is entitled to injunctive relief because a program statement "may create a protected liberty interest." Pltf's Opp. at 9. Section 3621(e)(2)(B), however, does not create a liberty interest because it "states that the inmate's sentence '*may* be reduced by the Bureau of Prisons.'" Fristoe, 144 F.3d at 630. "A statute which allows a decisionmaker to deny the requested relief within its unfettered discretion does not create a constitutionally-recognized liberty interest. Id. (citing Olim v. Wakinekona, 461 U.S. 238, 249 (1983)). Therefore, Plaintiff is not entitled to injunctive relief.[6]

**VI. This Matter Should Be Transferred to the United States District Court for the District of South Dakota.**

If the Court determines that litigation of this matter is not precluded under the doctrine of res judicata, and decides that the other grounds explained above are insufficient to dismiss the case, this matter should be transferred to the United States District Court for the District of South

---

[6]Moreover, court interference with the time of eligibility determinations would work an adverse impact on the function of the federal prison system to protect staff and inmates, and service the public interest.

Dakota, pursuant to 28 U.S.C. § 1404(a).[7]  In his opposition, Plaintiff states that he was transferred out of the state of New Jersey to South Dakota on November 2, 2007.  See Pltf's Opp. at 10.  However, this does not strengthen Plaintiff's argument for litigation of this matter in the District of Columbia.

The District of Columbia Circuit in Starnes v. McGuire, set out a number of factors for a District Court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside of the District of Columbia.  512 F.2d 918 (D.C. Cir. 1974) (en banc).  The factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C.  Starnes, 512 F.2d at 929-33.

These factors strongly support the appropriateness of transferring this case to South Dakota.[8]  Here, plaintiff is acting pro se.  He would have to be transferred to the District of Columbia for litigation of this matter.  The files related to the matter are now located in Yankton, South Dakota.  Given that Plaintiff's files are located in South Dakota, there is no indication that resolution would be quicker if the matter were litigated in the District of Columbia.  The case does not require the testimony of high-level administrators located in Washington, D.C.  See Levitan v. U.S. Dep't of Justice, No. 03-1916, slip op. at *4 (D.D.C. Aug. 12, 2004).  Moreover,

---

[7] Title 28, United States Code, Section 1404(a) provides that:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

[8] Alternatively, the case can be transferred to the District of New Jersey because the action about which Plaintiff complains took place in New Jersey.

the case has no factual connection to the District of Columbia.

Plaintiff makes the unsupported allegation that "his case requires the testimony of Harrell Watts, Administrator National Inmate Appeals [,] and Harley G. Lappin, Director of Federal Bureau of Prisons. Pltf's Opp. at 10. However, neither individual was involved in the decisions that led to Plaintiff's complaint.[9] See Meyer v. Fed. Bureau of Prisons, 929 F.Supp. 10, 14 (D.D.C. 1996)(where alleged incident took place in Springfield, Missouri; defendant resides in Missouri as do other prison officials; there is no factual connection between the plaintiff's claim and Washington, D.C.; and plaintiff has not set forth any reason why Washington, D.C. is a more convenient venue for the case, transfer to the Western District of Missouri is in order.). Cf. Montgomery v. U.S., No. 97-2514, 1998 WL 1749286, at * 2 (D.D.C. June 16, 1998)(not an abuse of discretion to transfer action challenging a BOP Program Statement to district where prisoner is incarcerated "where jurisdiction and venue would lie whether the case arises under the Administrative Procedure Act, 28 U .S.C. § 2241, or both.")(citing In re Daves, No. 98-8019, 1998 WL 1749249 (C.A.D.C., May 29, 1998). Hence, it is clear that transfer, pursuant to § 1404(a), would preserve resources and serve the interests of justice.

---

[9]Harrell Watts, as the National Inmate Appeals Administrator, has signatory authority for all administrative remedies filed by inmates at the Central Office level.

**CONCLUSION**

For the foregoing reasons, and those stated in Defendants' Motion, Plaintiff's Complaint should be dismissed because the Court lacks subject matter jurisdiction and Plaintiff has failed to state a claim upon which relief may be granted.  In the alternative, summary judgment should be granted in Defendants' favor.  Should the Court deny Defendants' dispositive motions, this matter should be transferred from the District of Columbia.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendants

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on this 13th day of December, 2007, a copy of the foregoing was sent by First-Class Mail, postage prepaid, to:

Harry T. Nuckols
Fed. Reg. No. 05521-082
FCI Fairton-Satellite Camp
P.O. Box 420
Fairton, New Jersey 08320

Harry T. Nuckols
Fed. Reg. No. 05521-082
FPC Yankton
P.O. Box 680
Yankton, South Dakota 57078

/s/
MARIAN L. BORUM
Assistant United States Attorney